**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | Case No. 22-cr-00612 |
| | § | |
| MITCHELL HENNESSEY, | § | |
| | § | |
| *Defendant*. | § | |

**MITCHELL HENNESSEY'S MOTION
TO MODIFY CONDITIONS OF RELEASE**

On February 16, 2023, Defendant Mitchell Hennessey was ordered to wear a GPS tracking device after two months of absolute compliance with his previous conditions of release, and without any individualized, statutorily mandated findings of fact supporting that *he* is a flight risk. Instead, the magistrate court's order was based on a generalized finding that all individuals accused of white collar crimes involving allegations of millions of dollars should be required to submit to GPS monitoring. Mr. Hennessey respectfully files this motion to modify his conditions of release pursuant to 18 U.S.C. § 3154(a)(2) and requests that the Court remove the requirement that Mr. Hennessey wear a GPS tracking device.

## I.     BACKGROUND

Mr. Hennessey was indicted in the Southern District of Texas on one count of conspiracy to commit securities fraud, 18 U.S.C. § 1349, and two counts of securities fraud, 18 U.S.C. §§ 1348 & 2 on December 7, 2022. ECF 1. Mr. Hennessey was arrested on December 13, 2022, at his apartment in New Jersey. He made his initial appearance in New Jersey, and was released that same day on a $250,000 unsecured appearance bond with various conditions of release recommended by Pretrial Services and agreed to by the government. *See* Ex. A, Transcript of Initial Appearance in *United States v. Hennessey*, No. 2:22-mj-10339-MAH (D.N.J.), at 7–9; Ex.

B, Order Modifying Conditions of Release in No. 2:22-mj-10339-MAH (D.N.J.). Neither Pretrial Services nor the government suggested that Mr. Hennessey was a flight risk or that he should be required to wear a GPS tracking device, and no such condition was imposed. *See id.*

On January 9, 2023, nearly a month after Mr. Hennessey was released on bond without a GPS monitor, the government filed an opposed motion for GPS monitoring to be imposed on Mr. Hennessey. ECF 99. Mr. Hennessey filed his opposition on January 10, 2023. ECF 107.

Mr. Hennessey filed an opposed motion for a speedy trial on January 27, 2023. ECF 124. The government filed a superseding indictment on February 8, 2023, containing three new counts (Counts 8, 9, and 11) of securities fraud 18 U.S.C. §§ 1348 & 2 against Mr. Hennessey, but no new factual allegations. ECF 134. On February 13, 2023, Mr. Hennessey moved to dismiss the new counts in the superseding indictment. ECF 159. Mr. Hennessey's motion for a speedy trial and motion to dismiss are pending.

On February 16, 2023, Mr. Hennessey appeared by Zoom for his arraignment on the superseding indictment. After pleading not guilty, the magistrate court held a hearing on the government's request to subject Mr. Hennessey to GPS monitoring. ECF 168. The government argued that although Mr. Hennessey was appearing by Zoom, there was no way to know where he actually was located. *See* Ex. D, Transcript of Arraignment & Motions Hearing (ECF 180) at p. 14:8–16. The government also claimed for the first time, *and contrary to its allegations in the superseding indictment*, that Mr. Hennessey "is alleged to have made millions on this scheme" and, consequently, could easily flee without GPS monitoring. *Id.* at p. 14:12.

The government did not address the facts that Mr. Hennessey was on bond with no GPS monitor for more than two months between his arrest and the February 16 hearing and that he had fully and completely complied with all bond conditions, including appearing for all hearings in

this case and continuously checking in with his Pretrial Services Officer in New Jersey. Pretrial Services has never recommended GPS monitoring for Mr. Hennessey. ECF 75. And the same Washington, DC-based prosecuting unit—the Criminal Division Fraud Section—that is prosecuting this case never suggested that Mr. Hennessey was a flight risk or should be required to wear a GPS tracking device. *See* Ex. A at 7:16–17. ███████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

*See* Ex. D at p. 15:2–6; *id.* at p. 16:5–9.

Despite Mr. Hennessey's absolute adherence to his conditions of release for over two months, the magistrate court ordered that Mr. Hennessey wear a GPS tracking device. In support of its findings, the court stated that while Mr. Hennessey may have a "compelling argument, which, [] in the abstract [it] wouldn't have a problem with," *id.* at p. 16:19–21, whenever the magistrate court has "financial fraud cases where there's an allegation of millions of dollars" that the government has not yet seized, it "require[s] a GPS monitor, because to [the court] it's a flight risk situation." *Id.* at p. 19:2–7. The magistrate court entered its order on March 1, 2023. ECF 186.

The magistrate court apparently put considerable weight on the government's statement in the hearing that Mr. Hennessey "is alleged to have made millions on this scheme." Ex. D at p. 14:11-12. When counsel for Mr. Hennessey pointed out that there has never been an allegation that Mr. Hennessey made millions and "the only allegations against Mr. Hennessey amount to just a few hundred thousand . . . [and the government] has not demonstrated any evidence that [Mr.

Hennessey] actually has received millions of dollars," *id.* at p. 18:6-10, the magistrate court noted, "Mr. Carter did just say millions of dollars . . . ." *Id.* at p. 18:14.

## II.    LEGAL STANDARD

### A.    Standard of Review

A person ordered released by a magistrate judge may file, with the court having original jurisdiction of the offense, a motion to amend the conditions of release. 18 U.S.C. § 3154(a)(2). A "district court reviews a magistrate court's release order de novo." *United States v. Stanford*, 630 F. Supp. 2d 751, 754 (S.D. Tex.) (citing *United States v. Rueben*, 974 F.2d 580, 585–86 (5th Cir. 1992)). A district court "must make an independent determination of the proper pretrial detention or conditions of release." *Id.* (citation omitted).

### B.    Conditions of Release

Before imposing a bond condition restricting a defendant's constitutionally protected rights, the Court must find that a condition imposes "the 'least restrictive . . . condition, or combination of conditions' that 'will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Green*, 793 F. App'x 223, 225 (5th Cir. 2019) (quoting 18 U.S.C. § 3142(c)(1)(B)). To make this determination, the Court should consider a variety of factors, including: (1) "the history and characteristics of the person"; (2) "the nature and circumstances of the offense charged"; (3) "the weight of the evidence against the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

## III.    ARGUMENT

The government has made no showing, and the magistrate court made no findings, that the § 3142(g) factors support requiring Mr. Hennessey to wear a GPS tracking device. The magistrate court did not do so, and instead adopted a per se rule that anyone accused of financial fraud

involving an allegation that millions of dollars were taken must wear a tracking device. And the government apparently did not do so because it cannot establish that requiring Mr. Hennessey to wear a GPS tracking device is "the 'least restrictive . . . condition, or combination of conditions' that 'will reasonably assure'" his appearance and the safety of others. *See Green*, 793 F. App'x at 225 (quoting 18 U.S.C. § 3142(c)(1)(B)).

**A.    The magistrate court's order should be vacated because it is not based on particularized findings regarding Mr. Hennessey.**

The magistrate court did not make an individualized, statutorily-required finding to justify subjecting Mr. Hennessey to GPS monitoring. On the contrary, it adopted a per se rule that anyone accused of financial fraud involving allegations of millions of dollars should be required to submit to a GPS tracking device, regardless of the individual facts of the case. But that is not the law. The magistrate court's order should be vacated because it was based on: (1) an incorrect statement by the government that Mr. Hennessey "is alleged to have made millions"; and (2) the magistrate judge's per se rule that GPS monitoring is required in any financial fraud cases where there is an allegation involving millions of dollars.

*First*, apparently sensing that it could not otherwise satisfy the § 3142(g) factors to establish that Mr. Hennessey is a flight risk, the government incorrectly stated that Mr. Hennessey "is alleged to have made millions on this scheme." Ex. D at p. 14:12. This statement was not true. No such allegation has ever been made against Mr. Hennessey—not in the first indictment, not in the government's motion for GPS monitoring, and not in the superseding indictment. The indictment and superseding indictment contain identical factual allegations. Both allege that over the nearly two-and-a-half years of the alleged conspiracy (January 2020 to April 2022 (ECF 134, at ¶ 1)), Mr. Hennessey profited $292,100.30, a figure not even close to the "millions" the government threw out in what appeared to be an off-the-cuff statement at the hearing. *See* ECF 1,

at ¶ 38 and ECF 134, at ¶ 39 (alleging that Mr. Hennessey profited approximately $166,274.40 from TRCH); *see* ECF 1, at ¶ 60 and ECF 134, at ¶ 61 (alleging that Mr. Hennessey profited approximately $125,825.90 from SURF). ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████

Regardless of how much Mr. Hennessey allegedly profited, the most relevant inquiry for determining whether Mr. Hennessey is a flight risk is his *current* financial condition. While Mr. Hennessey made money on some trades, not surprisingly, he lost money on other trades. The government has access to Mr. Hennessey's trading records, so the government knows that Mr. Hennessey does not have substantial financial resources. ██████████████████████

████████████████████████████████████████████████████████

██████████ ECF 46. Mr. Hennessey's current financial condition is completely ignored by the government and was not addressed by the magistrate court.

To be sure, the indictment and superseding indictment allege that Mr. Hennessey was a part of a conspiracy that collectively profited approximately $114 million—though that figure itself finds no support in the superseding indictment. *See* ECF 1 & 134, ¶ 1. But for purposes of determining the conditions necessary to assure *Mr. Hennessey's* appearance for proceedings in this case, the amount his *co-defendants* allegedly profited is irrelevant. The only relevant consideration is *Mr. Hennessey's* current financial condition.

*Second*, notwithstanding Mr. Hennessey's total compliance with his conditions of release, strong community ties, and rebuttal to the government's new, unsupported claim that he "made millions," the magistrate court ordered GPS monitoring because the government alleged that Mr.

Hennessey committed a white collar crime and "made millions." Ex. D at p. 19:3–4. When Mr. Hennessey's counsel again objected that the superseding indictment alleges only that Mr. Hennessey made at most "a few hundred thousand [dollars]," *id.* at p. 18:7, the magistrate court acknowledged that its decision was not based on the facts of this case,[1] but instead based on its own general practice of imposing GPS monitoring in all "financial fraud cases where there's an allegation of millions of dollars" being made. *Id.* at p. 19:3–4.

      The order imposing this new condition of release should be vacated because it is unsupported under the law and facts of this case. The factors set forth in § 3142(g) are mandatory. *See* 18 U.S.C. § 3142(g) ("The judicial officer *shall*," consider the factors Congress codified). They cannot be bypassed, nor can a per se rule be adopted. Furthermore, a § 3142(g) analysis is an inherently factual inquiry, but because no such inquiry occurred here, the government was able to simply claim that there is an allegation that Mr. Hennessey made millions in illicit gains, even though no such allegation exists. The magistrate court's order cannot stand absent particularized findings under § 3142(g). Mr. Hennessey respectfully requests that the Court remove the condition requiring him to wear a GPS monitoring device.[2]

**B.**    **Neither the law nor the facts of this case support subjecting Mr. Hennessey to a GPS tracking device.**

      *First*, bond conditions must be based on a defendant's individualized characteristics, not based on other co-defendants' characteristics. The government did not initially request GPS

---

[1] *See* Ex. D at p. 18:13–22 ("I appreciate that. Mr. Carter did just say millions of dollars, but, you know, I understand that the allegations might not be as specific as to all the money that he's come into. I don't have the details of that. This is not my case, so I am not as familiar with it as you all are and as Judge Hanen will be by the time that this case is over, so I am not infused in the nitty-gritty details of this case or how it applies to each and every one of these Defendants.").

[2] ████████████████████████████████████████████████

monitoring of Mr. Hennessey. Instead, the government only requested GPS monitoring after it was ordered for Mr. Hennessey's co-defendants—not based on Mr. Hennessey's individual characteristics.

*Second*, the § 3142(g) factors weigh heavily against imposing the significant and unnecessary burden of requiring Mr. Hennessey to wear a GPS tracking device.

*Third*, a tracking device is not only unnecessary for Mr. Hennessey, but it also imposes an undue burden on him that is punitive in nature and subjects him to an unnecessary and unwarranted stigma.

### 1. The government's request for GPS tracking is based on Mr. Hennessey's co-defendants' bond conditions, not on Mr. Hennessey's individual characteristics.

Pretrial Services has never recommended GPS tracking for Mr. Hennessey, and the government did not request GPS tracking at either Mr. Hennessey's initial appearance and bond hearing or his initial arraignment. The government has not cited a single fact that has changed to justify asking for GPS monitoring now *other than* that GPS monitoring was "included in [Mr. Hennessey's] co-defendants' conditions, and such modifications would bring [Mr. Hennessey] into parity with others similarly situated." ECF 99 at 2. *But see United States v. Goldstein*, No. 1:15-CR-22-LMM-JFK-2, 2016 WL 11717712, at *3 (N.D. Ga. Mar. 18, 2016) (refusing to grant government's request to impose GPS monitoring in addition to the original conditions requested by the government where the government "failed to provide a persuasive response" to explain why it changed its position regarding GPS monitoring).[3] The argument that Mr. Hennessey must wear

---

[3] The government was represented at Mr. Hennessey's initial bond hearing by the same Washington, DC-based prosecuting unit—the Criminal Division Fraud Section—that is prosecuting this case. Neither the government nor Pretrial Services requested GPS monitoring at that hearing.

a tracking device because that is a condition of release for *other* defendants is an express contradiction of the law. *See* 18 U.S.C. § 3142(g); *Green*, 793 F. App'x at 225.

Mr. Hennessey may be named in an indictment with others, but that does not mean that he is similarly situated to them. ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████ (ECF 134 at ¶¶ 99 & 107). Thus, even according to the allegations in the superseding indictment, Mr. Hennessey is not "similarly situated" to his codefendants.

**2. 18 U.S.C. § 3142(g)'s factors all weigh *against* requiring Mr. Hennessey to wear a GPS tracking device.**

All the 18 U.S.C. § 3142(g) factors weigh *against* requiring Mr. Hennessey to wear a GPS tracking device, including: (1) Mr. Hennessey's "history and characteristics"; (2) "the weight of the evidence against" him; (3) "the nature and circumstances of the offense charged"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by" Mr. Hennessey not being required to wear a GPS tracking device. *See* 18 U.S.C. § 3142(g).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

   ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

   ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

*Second*, the weight of the evidence against Mr. Hennessey appears weak. When the superseding indictment's merely conclusory allegations against Mr. Hennessey are set aside, the substantive allegations—which fail to include a single new *fact* supporting three new charges—boil down to four tweets in total about two different companies. The government alleges that the following purported tweets were false: (1) "Long TRCH for merger" and (2) "New swing $TRCH[.] They HAD to do an offering to get to the level of cash they needed[.] NOW the merger is full steam ahead baby . . . ." ECF 134, Superseding Indictment at ¶ 34. The government also alleges that the following two tweets were false: (1) "I am long $SURF – have been stalking this company and would be shocked if acquisition deal was not done by EOY . . . ." and (2) "[w]on't

need to post about her much. $Surf already tons of dd out there[.] Unless new DD comes out. Only way I'll be out of this one is if bad catalyst. Long and strong babyyy . . . ." *See id.* at ¶¶ 57 and 61. The government alleges that the purported tweets were false because sometime after them Mr. Hennessey allegedly sold his shares in the companies. *See id.* at ¶¶ 39 and 61.

Mr. Hennessey has requested that the government provide a witness list and exhibit list, but the government has not yet identified a single exhibit or witness against Mr. Hennessey. Mr. Hennessey has also requested that government provide a "reverse proffer" so that Mr. Hennessey may learn what evidence the government thinks implicates him in the alleged scheme. The government has refused. While the government maintains that it will continue to produce discovery on a rolling basis, the discovery produced to date and the allegations contained in the superseding indictment suggest that the government's case against Mr. Hennessey is weak.

*Third*, Mr. Hennessey is not a threat to anyone. He has no previous criminal record, he is not accused of committing any violent crimes, and he has demonstrated that he will comply with his conditions of release.

*Fourth and finally*, the crime alleged is not one of violence or terrorism, it does not involve a minor victim, and it does not involved controlled substances, firearms, explosives, or the like.

### 3.    A tracking device would pose an undue, unwarranted burden on Mr. Hennessey.

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████



## IV.   <u>CONCLUSION</u>

The government has made no showing, and the magistrate court made no findings, that the § 3142(g) factors support requiring Mr. Hennessey to wear a GPS tracking device. A review of those mandatory factors evidences that Mr. Hennessey is not a flight risk, and requiring him to wear a tracking device is unwarranted and unduly burdensome.

Mr. Hennessey respectfully requests that the Court remove the condition of release requiring him to wear a GPS tracking device.

Respectfully submitted,

**JACKSON WALKER LLP**

*/s/ Laura Marie Kidd Cordova*
Laura Marie Kidd Cordova
State Bar No. 24128031
lcordova@jw.com
Michael J. Murtha
State Bar No. 24116801
mmurtha@jw.com

1401 McKinney St, Suite 1900
Houston, Texas 77010
(713) 752-4449
(713) 752-4221 (Facsimile)

**ATTORNEYS FOR DEFENDANT
MITCHELL HENNESSEY**

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel for the government about the relief requested herein on February 27, 2023. The government is opposed to the requested relief.

*/s/ Laura Marie Kidd Cordova*
Laura Marie Kidd Cordova

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2023, a true and correct copy of the foregoing was served electronically on all persons via the Court's CM/ECF system.

*/s/ Laura Marie Kidd Cordova*
Laura Marie Kidd Cordova
