UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | CASE NO. 4:22-CR-612-1 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| V. | . | HOUSTON, TEXAS |
| | . | FRIDAY, DECEMBER 16, 2022 |
| EDWARD CONSTANTINESCU, | . | 10:12 A.M. TO 02:11 P.M. |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . . .

ARRAIGNMENT AND COUNSEL DETERMINATION HEARING

BEFORE THE HONORABLE CHRISTINA A. BRYAN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:                    SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: SHANNON HOLDEN

CASE MANAGER:                   MELISSA MORGAN-FAIRCLOTH

OFFICIAL INTERPETER:            NONE PRESENT

TRANSCRIPTION SERVICE BY:

**TRINITY TRANSCRIPTION SERVICES**
**1081 Main Street**
**Surgoinsville, TN 37873**
**281-782-0802**
trinitytranscripts@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

TRINITY TRANSCRIPTION SERVICES

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF TEXAS

### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | CASE NO. 4:22-CR-612-1 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| v. | . | HOUSTON, TEXAS |
| | . | FRIDAY, DECEMBER 16, 2022 |
| EDWARD CONSTANTINESCU, | . | 10:12 A.M. TO 02:11 P.M. |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . .

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | CASE NO. 4:22-CR-612-8 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| v. | . | |
| | . | |
| DANIEL KNIGHT, | . | |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . .

### ARRAIGNMENT AND COUNSEL DETERMINATION HEARING

#### BEFORE THE HONORABLE CHRISTINA A. BRYAN
#### UNITED STATES MAGISTRATE JUDGE

Appearances:

**For the GOVERNMENT:**    **THOMAS CARTER, III, ESQ.**
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, TX 77002

**For DEFENDANT KNIGHT:**    **CORDT AKERS, ESQ.**
The Akers Firm
3401 Allen Parkway, Suite 101
Houston, TX 77019

Transcription Service:    Cheryl L. Battaglia
Trinity Transcription Services
1081 Main Street
Surgoinsville, TN 37873

1

1        **Houston, Texas; Friday, December 16, 2022; 10:12 a.m.**

2        **(All parties appearing telephonically)**

3             **THE COURT:**  All right.  *United States versus Edward*

4    *Contantinescu and Daniel Knight.*

5        **(Pause in the proceeding.)**

6             **THE COURT:**  All right.  Let's start with Mr. Knight.

7             Mr. Knight, you are here for a counsel determination

8    hearing.  I told you you did not qualify to receive court-

9    appointed counsel and instructed you to appear today with

10   retained counsel or to inform me of the status.  And have you

11   regained counsel?

12            **DEFEDANT KNIGHT:**  Yes, I have.

13            **MR. AKERS:**  Cordt Akers for Daniel Knight, your

14   Honor.

15            **THE COURT:**  Thank you, Mr. Akers.

16            And you've been retained, sir?

17            **MR. AKERS:**  I have, your Honor.

18            **THE COURT:**  All right.

19            And have you filed a notice of appearance yet,

20   Mr. Akers?

21            **MR. AKERS:**  I have.

22            **THE COURT:**  You have?

23            **MR. AKERS:**  Yes, your Honor.

24            **THE COURT:**  Okay.  Great.

25            I don't think that there's anything else we need to

1    address with Mr. Knight.

2              **MR. AKERS:**  We -- we haven't done the arraignment.

3              **THE COURT:**  You have not.

4              **MR. AKERS:**  And we're ready to proceed on that.

5              **THE COURT:**  Oh, and you need the Brady Order, too.

6         **(Pause in the proceeding.)**

7              **THE COURT:**  Mr. Knight is charged in Count One only?

8              **MR. AKERS:**  He is, your Honor.

9              **THE COURT:**  All right.

10        So, first, under Rule 5(f), counsel for the United

11   States is ordered to comply with its disclosure obligations

12   under *Brady versus Maryland* and its progeny.  The failure to do

13   so may result in the dismissal of charges exclusive of

14   evidence, adverse jury instructions, contempt proceedings and

15   sanctions.

16        **(Pause in the proceeding.)**

17             **THE COURT:**  Mr. Knight, you are -- I know you have a

18   copy of the indictment because you received on at your Initial

19   Appearance, correct?

20             **DEFEDANT KNIGHT:**  Yes, ma'am.

21             **THE COURT:**  And I have told you that you are charged

22   in Count One with conspiracy to commit securities fraud, in

23   violation of 18 United States Code §1349.  Do you understand

24   that charge?

25             **DEFEDANT KNIGHT:**  Yes, your Honor.

3

1          **THE COURT:**  Have you had a copy to go over the entire

2  indictment and ask any questions that you have of the charges

3  to your lawyer?

4          **DEFEDANT KNIGHT:**  Yes, your Honor.

5          **THE COURT:**  And are you waiving formal reading of the

6  indictment?

7          **MR. AKERS:**  We are, your Honor.

8          **THE COURT:**  And do you understand that if you're

9  convicted on Count One, you face up to 25 years in prison, a

10  fine of up to $250,000, a 5 year term of supervised release,

11  and a $100 mandatory Special Assessment?

12          **DEFEDANT KNIGHT:**  Yes, your Honor.

13          **THE COURT:**  All right.  Are you ready to enter your

14  formal plea to the charge in Count One of the indictment?

15          **DEFEDANT KNIGHT:**  Yes.

16          **THE COURT:**  And how do you plead?

17          **DEFEDANT KNIGHT:**  Not guilty.

18          **THE COURT:**  We'll enter a not guilty plea on your

19  behalf.

20          The case is assigned to Judge Hanen.  It is set for

21  trial on February 13th at 9:00 a.m.  Motions are due January

22  3rd.  Responses, January 17.  Pretrial conference is February

23  6th at 8:30.  And we've got an estimate of three weeks of

24  trial.

25          Is there anything else we need to cover with

4

1  Mr. Knight?

2          **MR. AKERS:**  The Brady order.

3          **THE COURT:**  I did it.

4          **MR. AKERS:**  Or did I miss that?  I'm sorry.

5          **THE COURT:**  Yeah.  That's okay.

6          **MR. AKERS:**  Thank you for your time, your Honor.

7          **THE COURT:**  All right.  Thank you.  You're excused.

8  Thank you.

9      **(Pause in the proceeding.)**

10          **THE COURT:**  All right.  Mr. Contantinescu, are you

11  represented by counsel?

12          **DEFENDANT CONTANINESCU:**  I'm still -- I'm still

13  dealing with that.  I should have him by early next week.

14      **(Pause in the proceeding.)**

15          **THE COURT:** Okay.

16      **(Pause in the proceeding.)**

17          **THE COURT:**  We're going to have to set you for a

18  hearing.  I guess we'll do it on, what day can we do that?

19      **(Pause in the proceeding.)**

20          **THE COURT:**  Okay.  For his counsel determination

21  hearing.  It's very important that you get your counsel

22  retained as soon as possible.  Because there are things that --

23          **DEFENDANT CONTANINESCU:**  I -- I do.  They just

24  couldn't make it.

25          They're -- they're based in New York.  So they just

1    couldn't -- it just happened so quick.  They'll be here Monday.

2              **THE COURT:**  Okay.  So your counsel is available to

3    appear on Monday.

4              **DEFENDANT CONTANINESCU:**  That's what they -- I don't

5    want to --

6              **THE COURT:**  Okay.

7              **DEFENDANT CONTANINESCU:**  By -- by next week.  They

8    said they're coming to see me, I'm sorry, Tuesday and

9    Wednesday.

10             **THE COURT:**  All right.

11             **MR. CARTER:**  Your Honor, if I may.

12             **THE COURT:**  Yes, Mr. Carter.

13             **MR. CARTER:**  That leaves the Government in a very

14   awkward position.  There are some significant bond restrictions

15   we would ask for now immediately.  And I can get into them and

16   the reasons why.

17             But if he does not have determination, I'm going to

18   have to move for detention.

19        **(Pause in the proceeding.)**

20             **DEFENDANT CONTANINESCU:**  I can get him on a Zoom

21   call.

22             **THE COURT:**  Let's reset this for -- I've got hearings

23   all the way through.

24             Let's reset it -- do we have new arrests yet?

25             **CASE MANAGER MORGAN-FAIRCLOTH:**  Six.

1          **THE COURT:**  Six.

2       **(Pause in the proceeding.)**

3          **THE COURT:**  Let's reset it for 12:30.  There's some

4    chance that I may not be able to reach you at 12:30, in which

5    case I'll reset you for 2 o'clock.

6          **DEFENDANT CONTANINESCU:**  I'll be here, Judge.

7          **THE COURT:**  You need to contact your attorney.  We

8    can do it -- we could do this -- you can appear in a criminal

9    case remotely or by Zoom.

10          I think in this instance what would be better is to

11   have your counsel appear by telephone in the courtroom, because

12   everyone else is going to be in the courtroom.

13          I'm not going to have an opportunity to get a Zoom

14   camera set up in here.  And I don't do hybrid in-person and

15   Zoom hearings.  But I'm going to set you for 12:30.  Talk to

16   your counsel.  They need to file an appearance.  If -- if -- if

17   you've retained counsel, they need to file an appearance.

18          **DEFENDANT CONTANTINESCU:**  Thank you.

19          **THE COURT:**  And we'll come back later this afternoon

20   at 12:30.

21          If we can't get to you -- can't reach you by 12:30,

22   we'll set you on the 2 o'clock docket.  And you'll -- we'll

23   address it after the initial arrests.

24          **DEFENDANT CONTANINESCU:**  Sure.

25          **THE COURT:**  All right.

1          **THE COURT:**  Thank you.

2          **MR. CARTER:**  Thank you, your Honor.

3          **THE COURT:**  All right.  You're excused.  Thank you.

4      **(Recess taken from 10:18 a.m. to 01:47 p.m.)**

5          **THE COURT:**  All right.  Mr. Ford, we have

6  Mr. Constantinescu in the courtroom and present at the bench.

7  We have Mr. Carter present in the courtroom at the bench.  And

8  we are ready to proceed.

9          I've reviewed the Pretrial Services Report that was

10 completed in the Western District of Texas.  And, based on this

11 Pretrial Services Report, I definitely think there needs to be

12 an adjustment in the no bond conditions of release, the --

13 the -- his net worth and monthly income pose a significant, and

14 his ties to a foreign country, and property ownership in two

15 foreign countries, all of that poses serious risk of flight.

16         And it can be addressed with conditions, but we -- I

17 don't think the current conditions appropriately address those

18 issues.

19     **(Pause in the proceeding.)**

20         **THE COURT:**  Are you with us, Mr. Ford?

21         **MR. FORD:**  We -- we are, your Honor, amenable to -- a

22 bond.  But if we cannot, you know, we -- we -- we haven't been

23 able to determine by talking with Mr. Carter, what is the

24 amount.

25         I -- I -- I will say from our perspective, I -- I

1  don't think the client has been living for ten years in -- in

2  Houston, or around ten -- ten years in the Houston area.

3        I -- I -- I don't think he's -- he has significant

4  connections to a foreign country.  Certainly doesn't have a

5  foreign passport.  His -- his passport does have, you know,

6  has -- has been surrendered.

7        Obviously, he has the ankle bracelet on now.  In

8  addition, you know, as you saw this morning, he willing walked

9  himself into the Court to participate in the counsel

10  determination hearing.

11        So from our perspective, we just don't see

12  Mr. Constantinescu as a -- as -- as having a very significant

13  risk of flight.

14        **THE COURT:**  Well I appreciate your perspective.  And

15  I'm looking at the information showing he owns property in

16  Mexico and Columbia.  He is originally from Bucharest, Romania.

17  He's a naturalized United States citizen.  And he has a very

18  high net worth and a very high, you know, monthly income.

19        His monthly income may exceed my annual income as a

20  public employee.  So those are all factors that we look at

21  regarding risk of flight, including the charges and the -- the

22  amount of prison time that someone might be facing if

23  convicted.

24        So I do believe there's risk of flight.  It can be

25  addressed, obviously.  And I've already said we're not looking

9

1   at an issue of detention, we're just looking at appropriate

2   conditions of release and bringing these conditions for

3   Mr. Constantinescu in line with what we do in this District and

4   in this Court with individuals who have the access to the types

5   of resources that he has.

6          And I mean, property ownership in a foreign country,

7   more than one foreign country, those are all things I have to

8   consider.  So --

9          **DEFENDANT CONSTANTINESCU:**  Ma'am, it's just one

10  country.  I don't have anything in Columbia.

11         **THE COURT:**  Okay.

12         Mr. Carter, what are you asking for in terms of a

13  bond?

14         **MR. CARTER:**  Your Honor, I think you -- you've hit on

15  the main part.  My -- my -- my -- my request would be higher

16  than what you gave Mr. Rybarczyk yesterday.  This is the

17  ringleader in terms of loss amounts.  He's -- far exceeds the

18  rest to his credit.

19         I would say two million with ten percent down.

20         **THE COURT:**  Did you heard that Mr. Ford?

21         **MR. FORD:**  Yeah.

22         I -- I mean, one thing.  I, certainly based on what --

23  what the allegations are in the indictment, there's nothing to

24  suggest that Mr. Constantinescu could be, you know, decently

25  described as a ringleader.

1          And I -- I will just say, for -- for, you know, your

2    consideration that he is -- he's only been charged with 3 of

3    the 12 counts.  And I believe at least one co-Defendant

4    received a -- a $1 million bond who's been charged with -- with

5    more counts that Mr. Constantinescu.

6          The -- the -- the nature of the purported statements

7    that he made, we don't find them to be particularly, you know,

8    what we'll -- what I -- truthfully, we're -- we're a little

9    baffled as how they could constitute securities fraud to begin

10   with.  But I'll -- I'll leave it with that with saying that he

11   has only had -- had the three -- the -- the three counts

12   against him.

13         Whereas, you know, a co-Defendant received a 1

14   million bond.  So we -- we would propose that that same amount,

15   $1 million, 10 percent.

16         **THE COURT:**  Okay.  Well, I -- I'm -- I look at each

17   individual's net worth, and assets.  And obviously, the purpose

18   of the bond is to put assets at risk to prevent the risk of

19   flight.

20         So I am going to impose the $2 million bond, secured

21   by a $200,000 cash deposit.

22         **(Pause in the proceeding.)**

23         **THE COURT:**  I'm going to impose the same conditions

24   that Mr. Constantinescu not sell or transfer assets without

25   giving notice to the United States, and an opportunity to the

 1  United States to object to the transfer of those assets.

 2      **(Pause in the proceeding.)**

 3          **THE COURT:**  That would include the --

 4          **MR. FORD:**  If, your Honor --

 5          **THE COURT:**  That would include the vehicles.  I saw,

 6  I think, a Bentley.  I can't remember what was all -- what all

 7  was on the list.

 8      **(Pause in the proceeding.)**

 9      **(Voices whispering.)**

10          **THE COURT:**  Hang on just one second.

11      **(Pause in the proceeding.)**

12          **THE COURT:**  Okay.  Now I have the list.

13          That would include a 2018 black Rolls Royce Don, a

14  2022 Rolls Royce Cullinan, 2021 black Lamborghini Urus, and a

15  2020 silver Mercedes Benz jeep.

16          However, there is one condition of the -- of bond

17  which I think needs to be relaxed.  And that condition is that

18  Mr. -- the Western District said he could not trade in

19  securities at all.

20          What is -- he lists his employment as self-employed.

21  Is his self-employment work as a day trader, Mr. Ford?

22          **MR. FORD:**  Yes.  That is his only source of --

23          **THE COURT:**  All right.  So, yeah.  Go ahead.

24          **MR. FORD:**  The only thing I would say as -- as far

25  as, you know,  his self-employment, that's what -- that's what

12

 1   it is.

 2              **THE COURT:**  Okay.

 3              **MR. FORD:**  His only source.

 4              **THE COURT:**  And do you -- do -- are you aware that

 5   under the conditions of release he was given in the Western

 6   District of Texas, he's not allowed to do any trading in

 7   securities whatsoever?

 8              **MR. FORD:**  Yeah.  And we -- we have -- we -- we very

 9   strongly object to that condition.

10              **THE COURT:**  Okay.

11              So I'm going to modify that condition by saying he

12   may trade as a day trader.  He may not communicate with others

13   about his trading, his trades, his trading position.  He may

14   not post on social media.  And I'm just going to say, "May not

15   post on social media."  Because we've already had an issue with

16   another Defendant in this case about whether something -- there

17   were postings on social media and I'm just -- it's much easier

18   for each Defendant to understand what their obligations are

19   under their conditions of release to say no posting on social

20   media.

21              So he may work as a day trader.  Obviously, a part of

22   his conditions that he not violate any federal, state, or local

23   law while on conditions of release.

24              So, obviously, he must legally trade in securities.

25   But he may not communicate with anyone regarding those trades.

1          **(Pause in the proceeding.)**

2          **THE COURT:**  Mr. Carter raised an issue about drug

3     testing.  And I thought drug testing was recommended in the

4     Western District of Texas, but it was not included on the bond

5     conditions.  There is information in the Pretrial Services

6     Report which would indicate the need for that.

7          So I'm going to say, to the extent it is recommended

8     by Pretrial Services, he will have to submit to drug testing.

9     They will do an intake, because he's going to be -- well, do

10    you -- where do you reside?

11         **DEFENDANT CONSTANTINESCU:**  It's like five minutes

12    away.

13         **THE COURT:**  Okay.

14         **DEFENDANT CONSTANTINESCU:**  But also I have --

15         **THE COURT:**  Okay.

16         **DEFENDANT CONSTANTINESCU:**  -- my house in Montgomery.

17         **THE COURT:**  Okay.

18         So he resides in the Southern District of Texas.

19    He's going to be supervised here.

20         So they'll do an intake interview with him regarding

21    any alcohol -- the drug or alcohol substance issues.  And, to

22    the extent they think it's necessary, he will be required to

23    submit to any testing that they think needs to be done.

24         **(Pause in the proceeding.)**

25         **THE COURT:**  I think that that covers everything that

14

1    we discussed earlier.

2            **MR. CARTER:**  Briefly, your Honor.

3            Restriction to the Southern District of Texas.  Is

4    that included as well?

5            **THE COURT:**  Does Mr. Constantinescu have any -- I

6    think that was already in his bond conditions.  But let me see.

7            **MR. CARTER:**  Yes.

8            **THE COURT:**  Does he have the need to travel outside

9    the Southern District of Texas for work or?

10           **MR. FORD:**  No.  It's my -- my understanding is that

11   he does not.

12           **THE COURT:**  Okay.  So his travel's going to be

13   restricted to the Southern District of Texas unless pre-

14   approved by Probation.  If there's some sort of family trip for

15   a vacation or something that is pre-approved, then that's a

16   different issue.

17           But without pre-approval, restriction to the Southern

18   District of Texas.

19           **MR. FORD:**  And -- and just to clarify, your Honor,

20   will that include the standard carve-outs of if he has -- has

21   to leave the Southern District, for example, for a medical

22   appointment, to meet with legal counsel, and so forth?

23           **THE COURT:**  Yes.  But it needs to be pre-arranged

24   with Probation.

25           I mean, does he not live in --

1          **MR. FORD:**  Okay.

2          **THE COURT:**  -- this District?  I understand --

3          **MR. FORD:**  No, he does.

4          **THE COURT:**  -- you're in a different district, so

5     maybe there might be a meeting with you.  But our -- does he

6     have medical appointments outside this District?

7          **MR. FORD:**  Not necessarily, but I was just really

8     just, you know, seeking clarification for the benefit of --

9     of -- of my client.

10          **THE COURT:**  All right.

11          **MR. FORD:**  -- on behalf of my client.

12          **THE COURT:**  All right.  As -- it's got to be pre-

13     approved and I think there should be -- well, it's got to be

14     pre-approved by U.S. Probation.

15          **(Pause in the proceeding.)**

16          **THE COURT:**  Yes.

17          **MR. FORD:**  Understood.  Thank you.

18          **MR. CARTER:**  Not to belabor the point, your Honor,

19     but Agent Dylan has graciously agreed to pick up the guns.

20     Which we do not know where they are at this point.

21          If the Court would be interested in having FBI Agent

22     Dylan arrange that.  Because at this point, I'm not sure where

23     they are.

24          **THE COURT:**  I don't know that I have any authority to

25     do that.  If you and Mr. Ford and Mr. Constantinescu want to

16

1    agree with that --

2              **MR. CARTER:**  I'll talk to Mr. Ford.

3              **THE COURT:**  -- that's fine.

4              But I don't have any authority to tell someone that

5    the FBI can take their weapons.  As long as they are not in the

6    place where he -- any location where he is, as long as he is

7    never in the same place as weapons, he's in compliance with his

8    conditions of release.  Okay?

9              **MR. CARTER:**  We'll -- we'll -- we'll take care of

10   that one.  Thank you.

11             **THE COURT:**  Okay.  That means if you go to someone's

12   house, if they have weapons, you're out of compliance.

13             **MR. CARTER:**  Gotcha.

14             **THE COURT:**  All right.  Anything else?

15             **MR. CARTER:**  When should the cash bond be -- be made

16   by, Judge?

17             **THE COURT:**  Can you -- oh, today's Friday.  Can you

18   make the deposit by close of business on Monday?

19             **DEFENDANT CONSTANTINESCU:**  I need to start working

20   again.  Because, like I said, I'm a day trader.  And I haven't

21   been able to trade.  And that's why I -- I don't believe --

22             **THE COURT:**  I know, but I'm looking at your report.

23   And I -- I see the accounts that are identified and the amounts

24   there in them.

25             So it's just a --

1          **DEFENDANT CONSTANTINESCU:**  But those are -- I can't

2  sell those assets.

3          **THE COURT:**  -- question of --

4          **DEFENDANT CONSTANTINESCU:**  I can't do anything.  On

5  Monday we'll do it.

6          **THE COURT:**  Hold on.  Hold on.

7          **DEFENDANT CONSTANTINESCU:**  Sorry.

8          **THE COURT:**  Your attorney doesn't want you to --

9          **DEFENDANT CONSTANTINESCU:**  Okay.

10          **THE COURT:**  Go.

11          **MR. FORD:**  Mr. Constantinescu, let's -- let's just

12  hold on.

13          We were going to request ten days for us to obtain

14  the -- to obtain the bond.

15          **(Pause in the proceeding.)**

16          **THE COURT:**  Well I'm looking at his personal checking

17  account and his personal savings account.  Those are obviously

18  not encumbered by his --

19          **DEFENDANT CONSTANTINESCU:**  Those are wrong.

20          **THE COURT:**  Look --

21          **MR. FORD:**  Yeah.  That -- that -- not -- not --

22          Your -- your Honor, if I -- if I may.  The -- the

23  reason -- the reason we raised this question, I'm not sure what

24  documents you're looking at, cause I don't have them in front

25  of me.  So I don't know if they accurately reflect current

1    account balances.

2           I -- I do understand that at least some of my

3    client's accounts have restrictions on them where the wires,

4    you know, can -- can take some time before they can leave.

5    And -- and I think that's a standard thing where it could take

6    three days.

7           So even if we -- it -- it could be that if we

8    initiate Mr. Constantinescu he won't be able to transfer even

9    on Monday.  It could be, you know, it could be until the end of

10   the week that he's able to actually get access to the money

11   after the transfer.

12          I -- I -- I don't that (telephonic static)

13   (indiscernible) this call, but I do know there's been

14   restrictions, especially on a transfer of that size.  So that's

15   why I'm requesting the ten days.

16          There's the additional potential caveat.  I didn't

17   know that there is, you know, this is a timing on -- on bank

18   transfers impacted by the holidays.

19          I don't know if that's the case.  I'm speculating.

20   But I -- I am concerned that about not being a Friday has the 3

21   p.m. putting that condition on him to apply -- to comply with

22   it by Monday.

23          I just don't see it as a practical matter that is

24   feasible.  And that's why I asked for ten days.

25          **(Pause in the proceeding.)**

1          **THE COURT:**  Can he make half of the deposit by

2  Monday?

3       **(Pause in the proceeding.)**

4          **MR. FORD:**  I just -- I -- I -- I think we're going to

5  run into the same --

6          **THE COURT:**  All right.

7          **MR. FORD:**  -- system as being difficulty with --

8          **THE COURT:**  All right.

9          **MR. FORD:**  -- the size of the -- and the three day

10  restriction.  I -- I -- I'm not certain, but it's my

11  understanding as it stands, at least some of his accounts, and

12  it -- it could potentially be up to three business days before

13  he would be able to use --

14          **THE COURT:**  Okay.

15          **MR. FORD:**  -- that's money if that's the latest we --

16          **THE COURT:**  All right.

17          **MR. FORD:**  Absolute earliest I think would be

18  Thursday that we could -- we could -- I -- I think the ten

19  days, I would feel more comfortable just having that buffer.

20          **THE COURT:**  Here -- here's what I'm going to do.

21          I'm going to give him until the close of business on

22  the 23rd.  If he absolutely can't get it done by then, file a

23  notice to the Court explaining the problem.  And we'll address

24  it at that time.

25          **MR. FORD:**  Okay.  Absolutely, Judge.

1          **THE COURT:**  All right.  Anything else that we need to

2   cover with Mr. Constantinescu?

3          **MR. CARTER:**  Not for the Government, your Honor.

4          **CASE MANAGER MORGAN:**  Brady.

5          **THE COURT:**  Oh, we'll do the Brady Order not that you

6   have appeared, Mr. Ford.

7          Under Rule 5(f), counsel for the United States is

8   ordered to comply with its disclosure obligations under *Brady*

9   *versus Maryland* and its progeny.  The failure to do so may

10  result in the dismissal of charges, exclusion of evidence,

11  adverse jury instructions, and sanctions, and contempt

12  proceedings.

13         All right.  Mr. Constantinescu, you're under all of

14  the same conditions that were entered in the Western District,

15  plus -- well, you're under the same conditions that were

16  entered in the Western District with the exception that I am

17  eliminating the condition that you not be allowed to do any

18  trading in securities.

19         I'm going to allow you to trade securities as a day

20  trader.  You may not communicate with anyone about those

21  trades.  I'm maintaining the condition that you not post on

22  social media.

23         **DEFENDANT CONSTANTINESCU:**  Thank you.

24         **THE COURT:**  In addition, by December 23rd at close of

25  business, you must deposit the $200,000 for your $2 million

1    bond.  You must submit to any drug testing that is recommended

2    by Pretrial Services.

3           And you may not transfer or sell assets with a value

4    of over $5,000 without providing notice to the United States

5    and giving them an opportunity to object.  You may not obtain

6    any new passport.

7           And those are the -- those are the conditions.  Were

8    you informed in the Western District of the consequences of

9    violating conditions of release?

10          **DEFENDANT CONSTANTINESCU:**  Yes.

11          **THE COURT:**  All right.  Those same consequences

12   apply.

13          **MR. FORD:**  Excuse me, your Honor.  If I --

14          **THE COURT:**  Yes, Mr. Ford.

15          **MR. FORD:**  I -- I apologize (indiscernible.)

16          If I heard you correct -- correct, there was a

17   restriction on -- on transfers above $5,000.  Is there a way we

18   could get a carve out for the payment of legal fees?

19          **THE COURT:**  Yes, you may -- legal fees are excepted.

20   And when I say no transfers, I'm excluding fixed, regular

21   monthly expenses.

22          So to the extent there's a mortgage, or regular

23   payments, those may continue to be made.  The $5,000 limit just

24   occurs to any unusual transfer other than legal fees.

25          So that the purpose of the condition is to prevent

1    the sale or transfer of assets that --

2              **MR. FORD:**  Okay.

3              **THE COURT:**  So is that clear --

4              **MR. FORD:**  Understood.

5              **THE COURT:**  Is that clear enough?

6              **MR. FORD:**  Yes.  Thank -- thank you.

7              **THE COURT:**  All right.  All right.

8              You're under the same -- you -- the same warnings

9    about violating your conditions apply.  All right.

10             **DEFENDANT CONSTANTINESCU:**  Thank you.

11             **THE COURT:**  Yes, Mr. Thomas?  Anything else?

12             **MR. CARTER:**  No, your Honor.

13             **THE COURT:**  Okay.  I mean, Mr. Carter.  I'm sorry.

14             All right.  Unless there's -- has he been arraigned?

15   All right.

16             **MR. CARTER:**  He has not.

17             **THE COURT:**  All right.

18             **MR. FORD:**  He has not been.

19             **THE COURT:**  Has he met with you in person, Mr. Ford?

20             **MR. FORD:**  We -- we've been able to meet over Zoom.

21   We have not met in person.  I -- I'm going to be on a flight

22   headed back to Texas this evening.

23             **THE COURT:**  Okay.  Then --

24        **(Pause in the proceeding.)**

25             **THE COURT:**  -- it sounds like he, perhaps, is not

1   ready for arraignment, because he hasn't had sufficient time to

2   meet with you regarding the charges in the indictment.

3          **MR. FORD:**  We -- we -- if -- we are -- we are

4   prepared to move forward with you with the arraignment.

5          **THE COURT:**  With the arraignment?  All right.

6          Do you waive a formal reading of the indictment,

7   Mr. Ford?

8          **MR. FORD:**  Yes.

9          **THE COURT:**  All right.  Mr. Constantinescu, were you

10  given a copy of the indictment when you appeared in the Western

11  District of Texas?

12         **DEFENDANT CONSTANTINESCU:**  Yes.

13         **THE COURT:**  And so you have a copy of the indictment.

14         Have you had the chance to read the entire indictment

15  and discuss the charges that have been brought against you in

16  the indictment with your attorney?

17         **DEFENDANT CONSTANTINESCU:**  Yes.

18     **(Pause in the proceeding.)**

19         **THE COURT:**  You are charged in Counts, I believe it's

20  Counts One, Nine, Ten, Eleven, and Twelve.  Is that correct,

21  Mr. Carter?

22         **MR. CARTER:**  If the Court so represents.

23         **THE COURT:**  Well the -- the charging sheet says

24  Counts One through Twelve.  But when I looked at the

25  indictment, it looked like several of those counts are --

1      **MR. CARTER:**  That charging sheet's incorrect.

2      **THE COURT:**  Okay.

3      **MR. CARTER:**  I think it's --

4      **THE COURT:**  I think he's charged in One, Nine, Ten,

5  Eleven, and Twelve.

6      **MR. CARTER:**  That's correct.

7      **THE COURT:**  All right.

8      Mr. Constantinescu, you are charged in Count One with

9  conspiracy to commit securities fraud in violation of 18 United

10  States Code §1329.  You are charged in Count Nine with

11  securities fraud, in violation of Title 18 United States Code

12  §1348 and §2.  You're charged with other co-Defendants in both

13  Count One and Counts Nine, Ten, and Eleven.  Those co-

14  Defendants are Perry "PJ" Matlock, John Rybarczyk, Gary Deel,

15  Stefan Hrvatin, Tim Cooperman, and Mitchell Hennessey.  And you

16  are charged in Count Twelve.

17      You're the sole Defendant charged in Count Twelve.

18  And you are charged with engaging in monetary transactions in

19  property derived from specified unlawful activity, in violation

20  of 18 United States Code §1957.

21      And if you are convicted -- do you understand all the

22  charges that have been brought against you in the indictment.

23      **DEFENDANT CONSTANTINESCU:**  Yes.

24      **THE COURT:**  In Count One if you are convicted, you

25  face up to 25 years in prison, a fine of up to $250,000, a 5

1    year term of supervised release and a $100 mandatory Special

2    Assessment.

3              If you are convicted on Counts Nine, Ten, and Eleven,

4    as to each count you face up to 25 years in prison, a fine of

5    up to $250,000, a 5 year term of supervised release, and a $100

6    mandatory Special Assessment per count of conviction.

7              And if you are convicted on Count Twelve, you face up

8    to 10 years in prison, the same $250,000 fine, a 3 year term of

9    supervised release, and the same mandatory $100 Special

10   Assessment per count of conviction.

11             Do you understand all the penalties?

12             **DEFENDANT CONSTANTINESCU:**  Yes.

13             **THE COURT:**  All right.  Are you ready to enter your

14   formal plea to the charges in Counts One, Nine, Ten, Eleven,

15   and Twelve?

16             **DEFENDANT CONSTANTINESCU:**  Yes.

17             **THE COURT:**  How do you plead, sir?

18             **DEFENDANT CONSTANTINESCU:**  Not guilty.

19             **THE COURT:**  We're going to enter a not guilty plea on

20   your behalf.

21             This case is assigned to Judge Hanen.  And somewhere

22   here I have a scheduling order.  The trial setting is currently

23   February 13th of 2023 at 9:00 a.m.  The motions are due by

24   January 3rd, 2023, responses by January 17th, 2023, Pretrial

25   Conference is February 6th, 2023 at 8:30 a.m., and I believe we

1   had -- did you tell me three weeks for trial?

2            **MR. CARTER:**  That's approximately, yes, your Honor.

3            **THE COURT:**  Roughly three weeks for trial.

4            Is there anything else that we need to cover?  And

5   Mr. Ford, the scheduling order has specific instructions that

6   Judge Hanen requires.  So you'll be able to see that on the --

7   on the docket after this arraignment.

8        **(Pause in the proceeding.)**

9            **THE COURT:**  Can you hear me?

10           **MR. FORD:**  Yes, your Honor, just a -- there's a

11  schedule that you have just given.  We -- we will not be

12  prepared for -- for trial at that time.

13           **THE COURT:**  That -- you'll address that with Judge

14  Hanen.  I'm -- I suspect there will be other Defendants in the

15  same position.

16           **MR. FORD:**  I -- yes.

17           **THE COURT:**  Okay.  All right.  Anything else that we

18  need to cover with Mr. Constantinescu before he fills out the

19  additional bond paperwork here.

20           **MR. FORD:**  Nothing further.

21           **THE COURT:**  All right.  You're all excused.  Thank

22  you.

23           You'll fill out additional bond paperwork over here,

24  Mr. Constantinescu.

25           **DEFENDANT CONSTANTINESCU:**  So I just stay here?

1          **THE COURT:**  Yes.  Right there at that table.

2          **DEFENDANT CONSTANTINESCU:**  Okay.  Thank you.

3          **MR. CARTER:**  Thank you, your Honor.

4          **THE COURT:**  All right.  Thank you.

5          Thank you, Mr. Ford.  You're excused.

6      **(This proceeding was adjourned at 02:11 p.m.)**

7

8

9                    * * * * * * * *

10

11

12                    CERTIFICATION

13

14   I certify that the foregoing is a correct transcript from the

15   electronic sound recording of the proceedings in the above-

16   entitled matter.

17

18

19     _/s/Cheryl L. Battaglia_              March 18, 2023

20       Transcriber                              Date

21   4:22-CR-612-1

22   12/16/22 - 03/18/23