**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Case No. 4:22-cr-612** |
| | § | |
| **CONSTANTINESCU**, *et al.* | § | **The Honorable Andrew S. Hanen** |
| | § | |
| **Defendants.** | § | |

**United States' Response in Opposition to Defendant Constantinescu's Second Motion to Dismiss**

## Table of Contents

Relevant Background…………………………………………………………………………1

Legal Standard………………………………………………………………………………...6

Argument……………………………………………………………………………7

I.    **Defendants' alleged false and fraudulent statements are precisely the sort of misleading "half truths" or material omissions proscribed by Section 1348**……...7

    A.  It is beyond dispute that misleading "half-truths" that omit or conceal material facts are "false" or "fraudulent" as a matter of law. …………………………………7

    B.  Defendants' at-issue statements were false or fraudulent because, as alleged, they constituted just the sort of misleading half-truths or omissions proscribed by the fraud laws and Defendants had the intent to defraud…………………………..11

    C.  Opinions may be objectively false or fraudulent under Supreme Court precedent..16

    D.  The cases cited by Defendants do not change the conclusion that the Superseding Indictment adequately alleges securities fraud and its allegations must go to the jury. …………………………………………………………………………...19

II.    **Section 1348 plainly prohibits schemes to defraud involving securities, the statute requires fraudulent intent, and such fraud schemes have long been prohibited, raising no Due Process issues here**……………………………………………24

    A.  Legal Standard…………………………………………………………………24

    B.  The statute's plain text proscribes the alleged conduct and Section 1348 requires proof of fraudulent intent…...……………………………………………………24

    C.  Defendants' reference to an incomplete smattering of securities laws does not establish that his conduct "falls outside the scope of established securities laws" such that schemes to commit securities fraud like the one alleged are permitted…29

    D.  The Superseding Indictment adequately pleads a conspiracy to commit securities fraud under Section 1349 and Defendants had fair notice that their alleged conduct was prohibited…..………………………………………………………..…34

        1.  *Legal Standard*………………………………….……………………34

        2.  *The Superseding Indictment adequately alleges a securities fraud conspiracy and Defendants had fair notice of that crime such that the allegations must go to a jury.* …………………………………………………………...35

Conclusion…………………………………………………………………………38

## Table of Authorities

### Cases

*Blachly v. United States*, 380 F.2d 665 (5th Cir. 1967)..................................................... 9

*Chapman v. United States*, 500 U.S. 453 (1991)........................................................ 25

*Costello v. United States*, 350 U.S. 359 (1956) .......................................................... 6

*Durland v. United States*, 161 U.S. 306 (1896) ........................................................ 28

*Gonzales v. Carhart*, 550 U.S. 124 (2007) ......................................................... 24, 25

*Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657 (5th Cir. 2004) ........................... 17

*In re: BP p.l.c.. Sec. Litig.*, No. 4:10-MD-2185, 2016 WL 3090779 (S.D. Tex. May 31, 2016)18

*Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186 (5th Cir. 1988).................... 19, 23

*Johnson v. CBD Energy Ltd.*, No. CV H-15-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016) .................................................................................................................. 18

*Kolender v. Lawson*, 461 U.S. 352 (1983) ................................................................. 24

*McFadden v. United States*, 576 U.S. 186 (2015)............................................ 24, 25, 31

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015) ....
.................................................................................................................. 16, 17, 18

*Poulterer's Case*, 77 Eng. Rep. 813 (K.B. 1611) ....................................................... 37

*Rubenstein v. Collins*, 20 F.3d 160 (5th Cir. 1994) .................................................... 23

*SEC v. Huttoe*, 96-cv-2543, 1998 WL 34078092 (D.D.C. Sept. 14, 1998) ............... 29

*SEC v. Life Partners Hldgs., Inc.*, 41 F. Supp. 3d 550 (W.D. Tex. 2013) ................... 23

*United States v. Allen*, 554 F.2d 398 (10th Cir. 1977) ................................................. 9

*United States v. Autouori*, 212 F.3d 105 (2d Cir. 2000)............................................. 31

*United States v. Bailey*, 444 U.S. 394 (1980)............................................................... 7

*United States v. Bases*, No. 18-cr-48, 2020 WL 2557342 (N.D. Ill. May 20, 2020).25, 26, 27, 36

*United States v. Biesiadecki*, 933 F.2d 539 (7th Cir. 1991) ....................................... 31

*United States v. Burton*, 126 F.3d 666 (5th Cir. 1997)............................................... 35

*United States v. Campbell*, 64 F.3d 967 (5th Cir. 1995) ........................................... 22

*United States v. Chanu*, 40 F.4th 528 (7th Cir. 2022) ............................................. 8, 10

*United States v. Cheng*, No. 4:20-cr-455, 2022 WL 112026 (S.D. Tex. Jan. 12, 2022).......*passim*

*United States v. Colton*, 231 F.3d 890 (4th Cir. 2000 .............................................. 9, 30

*United States v. Coscia*, 866 F.3d 782 (7th Cir. 2017)........................................ 8, 26, 27

*United States v. De La Pava*, 268 F.3d 157 (2d Cir. 2001)......................................... 6

*United States v. Enger*, 427 F.3d 840 (10th Cir. 2005)............................................. 29

*United States v. Frame*, 236 Fed. App'x 15 (5th Cir. 2007) ...................................................... 23

*United States v. Franco*, 632 F.3d 880 (5th Cir. 2011) ............................................................... 7

*United States v. Goldblatt*, 813 F.2d 619 (3d Cir. 1987)............................................................ 31

*United States v. Goodman*, 984 F.2d 235 (8th Cir. 1993) ............................................................ 9

*United States v. Grant*, 683 F.3d 639 (5th Cir. 2009) ......................................................... 35, 37

*United States v. Harra* 985 F.3d 196 (3d Cir. 2021).................................................... 20, 21, 22

*United States v. Hogue*, 132 F.3d 1087 (5th Cir. 1998) ............................................................... 7

*United States v. Jensen*, 41 F.3d 946 (5th Cir. 1994).................................................................. 35

*United States v. Kay*, 359 F.3d 738 (5th Cir. 2004) ........................................................ 7, 16, 33

*United States v. Keplinger*, 776 F.2d 678 (7th Cir. 1985)........................................................... 30

*United States v. Lucas*, 516 F.3d 316 (5th Cir. 2008) .................................................................. 9

*United States v. Mahaffy*, No. 05-cr-613, 2006 WL 2224518 (E.D.N.Y 2006) .................... 8, 37

*United States v. Martino*, 648 F.2d 367 (5th Cir. 1981) ............................................................... 9

*United States v. Matthews*, 31 Fed. App'x 838, 2002 WL 261421 (5th Cir. 2002) ........ ...*passim*

*United States v. Medeles*, 916 F.2d 195 (5th Cir. 1990) ............................................................. 20

*United States v. Molinaro*, 11 F.3d 853 (9th Cir. 1993) ............................................................... 9

*United States v. Morris*, 80 F.3d 1151 (7th Cir. 1996) ............................................................... 30

*United States v. Moser* 123 F.3d 813 (5th Cir. 1997).................................................................. 9

*United States v. Motz*, 652 F. Supp. 2d 284 (E.D.N.Y. 2009)......................................... 8, 16, 26

*United States v. Mutuc*, 349 F.3d 930 (7th Cir. 2003)................................................................ 23

*United States v. Nai Fook Li*, 206 F.3d 56 (1st Cir. 2000) ........................................................... 6

*United States v. Neder*, 527 U.S. 1 (1999) ................................................................................ 10

*United States v. Olatunji*, 872 F.2d 1161 (3d Cir. 1989)............................................................. 9

*United States v. Phillips*, 219 F.3d 404 (5th Cir. 2000) ............................................................. 35

*United States v. Rafoi*, No. 21-20658, 2023 WL 1811921 (5th Cir. Feb. 8, 2023)..................... 6

*United States v. Ramsey*, No. 19-cr-268, 2022 WL 596378 (E.D. Pa. Feb. 28, 2022 ............... 16

*United States v. Resendiz-Ponce*, 549 U.S. 102 (2007)................................................................ 6

*United States v. Sawyer*, 799 F.2d 1494 (11th Cir. 1986) ............................................................ 9

*United States v. Schmidt*, 229 F.3d 1148, 2000 WL 1239189 (5th Cir. 2000)............................ 9

*United States v. Simpson*, 741 F.3d 539 (5th Cir. 2014) ............................................................ 34

*United States v. Smith*, 555 F. Supp. 3d 563 (N.D. Ill. 2021) ............................... 8, 26, 28, 30

*United States v. Stephens*, 421 F.3d 503 (7th Cir. 2005)............................................................ 10

*United States v. Steven Gallagher*, No. 1:22-cr-122 (S.D.N.Y. July 6, 2022) ........................... 29

iv

*United States v. Stringer*, 730 F.3d 120  (2d Cir. 2013) ................................................ 7

*United States v. Swenson*, 25 F.4th 309 (5th Cir. 2022) ............................................. 30

*United States v. Townley*, 665 F.2d 579 (5th Cir. 1982) ................................... 9, 31, 32

*United States v. Vorley*, 420 F. Supp. 3d 784 (N.D. Ill. 2019) ............................. 28, 30

*United States v. Walker*, 871 F.2d 1298 (6th Cir. 1989) ............................................. 9

*United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016) ........................................... 30

*United* States *v. Wey*, 15-cr-611, 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) .......................... 8

*Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) ............................... 16, 17, 18

*Williams v. United States*, 458 U.S. 279 (1982) ....................................................... 19

*Wooden v. United States*, 142 S. Ct. 1063 (2022) ................................................... 25

*Zweig v. Hearst Corp.*, 594 F.2d 1261 (9th Cir. 1979) ............................................. 29

## Statutes

15 U.S.C. § 80b-1 *et seq.* ........................................................................................ 32

18 U.S.C. § 1348 ................................................................................................ *passim*

18 U.S.C. § 1349 ................................................................................................ *passim*

18 U.S.C. § 1957 ...................................................................................................... 2

## Other Authorities

148 Cong. Rec. S7420–21 (daily ed. July 26, 2002) .................................... 16, 26, 27

Albet J. Harno, *Intent in Criminal Conspiracy*, 89 U. Pa. L. Rev. 624, 624–25 (1941) ........... 37

Black's Law Dictionary (11th ed. 2019) ................................................................. 10

Fifth Circuit Pattern Jury Instructions. ............................................................ 10, 13

W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts § 109.
.................................................................................................................... 22

The Constitution and laws of the United States do not countenance fraud. Engaging in a fraudulent scheme to deprive victims of money or property through false and misleading representations and material omissions is against the law and has been for generations. The Superseding Indictment adequately alleges such a fraud scheme involving securities and a conspiracy to commit the same. Defendants were on notice that such schemes were prohibited. And the Superseding Indictment alleges that Defendants had fraudulent intent while they executed the scheme—in other words, they knew *exactly* what they were doing. As such, the Court should deny Defendants' Motion to Dismiss (ECF No. 261).[1]

The United States, by and through its undersigned counsel, respectfully submits this brief in opposition to Defendants' Motion. After preliminaries, the United States explains that: (1) Defendants' alleged false and fraudulent statements are precisely the sort of misleading "half-truths" or omissions of material fact proscribed by Section 1348; and (2) Section 1348 expressly prohibits schemes to defraud involving securities, and such fraud schemes have long been prohibited, such that this prosecution comports fully with the Due Process Clause.

## **Relevant Background**

The Superseding Indictment (ECF No. 134),[2] returned by the Grand Jury on February 8, 2023, charges Defendants with a conspiracy to commit securities fraud (Count 1, 18 U.S.C. § 1349), nineteen substantive counts of securities fraud (Counts 2–20, 18 U.S.C. § 1348), and one

---

[1] To the extent the arguments in the Motion apply to other Defendants in this case, either by explicit adoption or implication, the United States intends for its responses to apply to all other relevant Defendants as well. (*See, e.g.*, Br. at n.1; ECF Nos. 266, 268, 271.) Further, in an effort to maximize judicial economy by not restating all facts or arguments in full, the United States intends for all of its responses to Defendants' various motions to dismiss to be read together, to the extent that facts or argument presented in one response are relevant to another.

[2] The United States presumes the Court, by now, is familiar with the allegations of the Superseding Indictment. As such, the United States highlights only pertinent portions here and incorporates the full document by reference.

count of money laundering (Count 21, 18 U.S.C. § 1957). Defendant Constantinescu a/k/a Constantin himself is charged with the conspiracy (Count 1), five substantive counts of securities fraud (Counts 2, 14, 15, 18, & 20), and money laundering (Count 21).

The Superseding Indictment in this case contains 34 pages and 115 paragraphs of introductory allegations preceding the paragraphs containing the charging language. (*See generally* Superseding Indictment ("SI"), ECF No. 134.) Those 115 introductory paragraphs include both general and specific allegations that explain in significant detail how the scheme operated. (*See id.* ¶¶ 1–115.) For example, the first paragraph alleges the scheme generally, stating that Defendants:

> engaged in a scheme to "pump and dump" securities based on false and misleading information and material omissions about those securities that Defendants published on social media platforms, including Twitter, Inc. and Discord, Inc. To carry out the scheme, Defendants (1) purchase shares of a security in their trading accounts; (2) posted messages on social media platforms with false, positive information about the security—including as to, among other things, Defendants' position in the security, how long Defendants intended to hold the security, Defendants' view that the security would increase in price, and the price the security could reach—to induce other investors to buy the security and artificially drive up its price, and (3) secretly sold their own shares of the security at a higher price to secure a profit for themselves, at or around the time they posted messages to induce other investors to purchase the same security and concealed their intent to sell.

(*Id.* ¶ 1.)

After that, paragraphs 2 through 9 introduce Defendants and include specific details about their social media accounts and other information relevant to the means by which they executed their scheme. Those details include discussing Defendant Constantinescu's Twitter account with over 500,000 followers, @MrZackMorris; the Atlas Trading Discord with over 250,000 followers; the other Defendants' Twitter accounts with, collectively, hundreds of thousands of followers;

Defendant Hennessey's and Defendant Knight's podcast, Pennies: Going in Raw; and other details relevant to the furtherance of the alleged scheme. (*See id.* ¶¶ 2–9.)

Paragraphs 10 through 19 then provide additional general detail about Defendants' scheme, including specific examples of both the types of social media posts used to execute the scheme and private communications discussing it. (*See id.* ¶¶ 10–19.) For example, paragraph 13 specifically details even more examples of the types of false and misleading statements at the core of this case. Those statements, as laid out in the Superseding Indictment, include:

a. Messages representing that a defendant intended to hold the security, including for a "swing" or a longer-term trade, as opposed to a short-term trade or day trade;

b. Messages representing that a defendant "joined" another defendant in purchasing the security or was "adding" to a position in the security;

c. Messages concerning a purported price target for the security that was significantly higher than the price at which the security was currently trading, and that was higher than Defendants actually valued the security; and

d. Messages concerning "due diligence" about the security and purported catalysts that would increase the security's price over time.

*Id.* ¶ 13. Critically, paragraph 14 further explains the false and fraudulent nature of the scheme:

These messages were false and misleading, and omitted material information because Defendants concealed their intent to use these messages to induce other investors to purchase the securities so that defendants could sell their shares at a higher price at and around the time of the messages. Indeed, because Defendants recognized that their followers on Twitter and members of Atlas Trading Discord frequently purchased securities based on Defendants' social media posts, Defendants sought to conceal from, and further mislead, their Twitter followers and members of Atlas Trading Discord about Defendants' true trading positions and intentions. In this way, Defendants used social media to induce other investors to purchase and hold the same securities that Defendants were selling or dumping so that Defendants could maximize their own profits.

(*Id.* ¶ 14.)

The Superseding Indictment also includes specific allegations that Defendants lied to cover up their scheme, presenting further allegations from which fraudulent intent may be inferred. For example, paragraph 15(d) states: "[o]n or about February 20, 2022, CONSTANTIN falsely claimed in a tweet, 'I never dump on my followers . . . .'" (*Id.* ¶ 15(d).) Paragraph 17 continues: "defendants' efforts to mislead and conceal material information from other investors concerning defendants' true trading activity was critical to the continued success of the scheme . . . ." (*Id.* ¶ 17.) Specifically, the Superseding Indictment includes Defendant Constantinescu's instructions to Defendant Matlock in a private Discord exchange on or about January 20, 2021:

| | |
|---|---|
| CONSTANTIN: | It looks like we are front loading |
| CONSTANTIN: | Yea when you post right after |
| CONSTANTIN: | With [Individual-1] too |
| CONSTANTIN: | Just save yours for a dip |
| CONSTANTIN: | You post when there is a dip and say you joined then |
| CONSTANTIN: | Works better because well save more plays that way |
| CONSTANTIN: | No you're good |
| CONSTANTIN: | Just been seeing a lot of Twitter trash talking about it |
| CONSTANTIN: | So we gotta look less obvious |
| CONSTANTIN: | The dip buy sh*t is the best |

(*Id.* ¶ 18.)[3]

Further still, the Superseding Indictment then provides copious detail about ten specific examples of the scheme in operation, corresponding to ten of the substantive counts of securities

---

[3] Notably, Defendant Matlock's side of the conversation is missing because the United States understands Defendant Matlock's prior Discord messages were deleted at some point before the United States obtained those records. That presents more circumstantial evidence of fraudulent intent.

fraud alleged. (*See id.* ¶¶ 20–121.) These paragraphs include numerous examples of Defendants coordinating the scheme in private before posting publicly. (*See, e.g.*, *id.* ¶¶ 22, 24, 26, 56–61, 65–70.) For example, paragraph 103 details a Twitter private message exchange Defendant Constantinescu had on or about August 13, 2021:

| | |
|---|---|
| CONSTANTIN: | [forwarding a link to a chat room] |
| CONSTANTIN: | That's my secret dat chat |
| CONSTANTIN: | I'm keeping the room locked |
| CONSTANTIN: | We're only buying on float ipos and locking up the float |
| CONSTANTIN: | Without pumping on Twitter |
| CONSTANTIN: | Keep this to yourself. I'm only inviting people I think are good. |
| Individual-2: | I'm in . . . Lips are sealed |
| CONSTANTIN: | We have the dats float locked |
| Individual-2: | YES. I'm holding. In at 4.76 |

(*Id.* ¶ 103.) The Superseding Indictment proceeds to allege the pump-and-dump of the stock DATS in the ensuing paragraphs. (*Id.* ¶¶ 104–110.) The Superseding Indictment also describes how, after that pump-and-dump of DATS, Defendant Constantinescu stated privately that he was not still holding DATS stock, while publicly he continued to express support for the stock. (*Compare id.* ¶ 109 *with id.* ¶ 110.)

The Superseding Indictment also references audio recordings in which certain Defendants are discussing the scheme in private while also trading and commenting on other Defendants' public posts in furtherance of the scheme. (*See, e.g.*, *id.* ¶¶ 45–50.) The Superseding Indictment also includes copious details—far more than constitutionally required in light of all the other allegations—about three of the tickers and time periods forming the basis for substantive securities fraud charges against Defendant Constantinescu. (*See id.* ¶¶ 92–115.)

Finally, all of those initial 115 paragraphs, including both the general facts sections and the ten examples of specific means of execution, are expressly incorporated into the central charging paragraphs for the conspiracy and substantive securities fraud offenses. (*See id.* ¶¶ 116–121.)

On March 31, 2023, the United States, produced to the defense, voluntarily and to maintain the October 23, 2023 trial date, the stock tickers and time periods of trading that may be at issue for trial.[4] By the June 15, 2023 expert disclosure date, the United States will specifically identify— among Defendants' social media records that the United States had produced in January 2023— the full set of Defendants' social media posts that the United States contends are false or fraudulent in furtherance of the scheme and may be at issue as such for trial.

## Legal Standard

It is beyond dispute that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for a trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). "The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (quoting *United States v. Nai Fook Li*, 206 F.3d 56, 61 (1st Cir. 2000) (en banc), *cert. denied*, 531 U.S. 956 (2000)).

An indictment is constitutionally sufficient if it (1) contains the offense elements, (2) fairly informs the defendant of the charge, and (3) enables him to plead an acquittal or conviction as a bar to future prosecutions of the same offense. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). "Apart from meeting this minimum constitutional standard, the government need not describe all evidentiary details establishing the facts of the [allegations.]" *United States v. Rafoi*,

---

[4] Note that the United States reserved the right to make any necessary edits to this voluntary disclosure that may come to light during the expert process by the expert disclosure deadline, which is June 15, 2023. (*See* Scheduling Order, ECF No. 254; Response, ECF No. 234, Exs. 1–2.)

No. 21-20658, 2023 WL 1811921, at *3 (5th Cir. Feb. 8, 2023) (reversing district court's grant of defendants' motion to dismiss because indictment adequately conformed to minimal constitutional standards). An indictment that tracks the language of the statute is generally adequate. *See, e.g.*, *United States v. Bailey*, 444 U.S. 394, 414 (1980); *United States v. Franco*, 632 F.3d 880, 884–885 (5th Cir. 2011) (per curiam). Only in "very rare cases" must an indictment specify in detail "how a particular element of a criminal charge will be met." *United States v. Stringer*, 730 F.3d 120, 125–26 (2d Cir. 2013).

In assessing a motion to dismiss, the Court is "required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (internal quotation and citation omitted). "[A] court only grants a motion to dismiss if, as a matter of law, the 'infirmity' is such that the indictment fails to allege facts that, if true, would constitute a prosecutorial offense." *United States v. Cheng*, No. 4:20-cr-455, 2022 WL 112026, at *5 (S.D. Tex. Jan. 12, 2022). "[A] court must deny a motion to dismiss if it relies on disputed facts." *Id.* (citing *Kay*, 359 F.3d at 742; *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)).

## Argument

**I.    Defendants' alleged false and fraudulent statements are precisely the sort of misleading "half truths" or material omissions proscribed by Section 1348.**

### A. It is beyond dispute that misleading "half-truths" that omit or conceal material facts are "false" or "fraudulent" as a matter of law.

Defendants are charged with securities fraud under both prongs of 18 U.S.C. § 1348, and conspiracy to commit the same under 18 U.S.C. § 1349. As relevant to the issues in this Motion, Section 1348 states:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—

7

(1) to **defraud** any person in connection with any . . . security . . . ; or

(2) to obtain, by means of **false or fraudulent pretenses, representations, or promises**, any money or property in connection with the purchase or sale of any . . . security . . . shall be fined under this title, or imprisoned not more than 25 years or both.

18 U.S.C. § 1348 (emphasis added).[5]

"[B]ecause the text and legislative history of 18 U.S.C. § 1348 clearly establish that it was modeled on the mail and wire fraud statutes, it is useful to be guided by the numerous and well-established precedents on those statutes in construing this statue." *United States v. Mahaffy*, No. 05-cr-613, 2006 WL 2224518, at *11 (E.D.N.Y 2006); *see also United States v. Matthews*, 31 Fed. App'x 838, 2002 WL 261421, at *8 (5th Cir. 2002) ("Modeled after the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, the bank fraud statute is interpreted in the light of the precedent interpreting those statutes.").[6] Thus, Section 1348 imports the meanings of terms—importantly here, "defraud," "false," and "fraudulent," among others—from cases interpreting those terms in the mail, wire, and bank fraud statutes (§§ 1341, 1343, 1344). *See, e.g.*, *United States v. Smith*, 555 F. Supp. 3d 563, 573 (N.D. Ill. 2021) ("'Scheme to defraud' is a legal term of

---

[5] Although Defendant's Motion focuses only on the term "false," both prongs are charged and a fraudulent scheme is alleged. The Court could ignore the term "false" altogether and still find the allegations of the Superseding Indictment should go to a jury.

[6] *See also United States v. Chanu*, 40 F.4th 528, 541 (7th Cir. 2022) ("We note, however, that the commodities fraud statute, 18 U.S.C. § 1348, was modeled on the mail and wire fraud statutes—as evidenced by its text and legislative history."); *United States v. Coscia*, 866 F.3d 782, 799 (7th Cir. 2017) ("Because section 1348 was modeled on the federal mail and wire fraud statutes, the district court certainly was on solid ground in looking to the pattern jury instruction for those offenses."); *United States v. Wey*, 15-cr-611, 2017 WL 237651, at *9, n.6 (S.D.N.Y. Jan. 18, 2017) ("Several courts have recognized that because the text and legislative history of 18 U.S.C. § 1348 clearly establish that it was modeled on the mail and wire fraud statutes, an analysis of Section 1348 should be guided by the caselaw construing those statutes." (internal quotations and citation omitted)); *United States v. Motz*, 652 F. Supp. 2d 284, 296 (E.D.N.Y. 2009) ("The parties agree that because the text and legislative history of 18 U.S.C. § 1348 clearly establish that it was modeled on the mail and wire fraud statutes, the Court's analysis should be guided by the caselaw construing those statutes." (internal quotations and citation omitted)).

art littered throughout federal criminal law. . . . The term has the same meaning across the wire

fraud, bank fraud, and commodities-fraud [§ 1348] statutes.").

The Fifth Circuit has long held that "[a] statement or representation may also be 'false' or

'fraudulent' when it constitutes a half-truth or effectively conceals a material fact, with intent to

defraud." *United States v. Martino*, 648 F.2d 367, 393 (5th Cir. 1981); *see also United States v.

Lucas*, 516 F.3d 316, 341–42 (5th Cir. 2008); *United States v. Schmidt*, 229 F.3d 1148, 2000 WL

1239189, at *7–8 (5th Cir. 2000); *United States v. Moser* 123 F.3d 813, 826 (5th Cir. 1997).

Indeed, "[t]he statements need not be false or fraudulent on their face, and the accused need not

misrepresent any fact . . . ." *United States v. Townley*, 665 F.2d 579, 585 (5th Cir. 1982).

As the Fifth Circuit explained in *United States v. Matthews*, "a scheme may be fraudulent

even though no affirmative misrepresentation of fact be made. The deceitful *concealment of

material facts* may also constitute actual fraud." 2002 WL 261421, at *8 (quoting *Blachly v. United

States*, 380 F.2d 665, 673–74 (5th Cir. 1967)). The court continued:

> Most circuits agree false representations or statements include
> *concealment* of material facts. *See, e.g.*, *United States v. Colton*, 231
> F.3d 890, 901 (4th Cir. 2000) ("deceptive acts or contrivances
> intended to hide information, mislead, avoid suspicion, or avert
> further inquiry into a material matter" sufficient proof for scheme to
> defraud); *United States v. Molinaro*, 11 F.3d 853, 861 (9th Cir.
> 1993), *cert. denied*, 513 U.S. 1059, 115 S. Ct. 668, 130 L.Ed.2d 602
> (1994) (concealment of nature of a financial transaction part of
> scheme to defraud); *United States v. Goodman*, 984 F.2d 235, 240
> (8th Cir. 1993) (scheme to defraud shown by "nondisclosure
> manifesting an intent to defraud"); *United Sates v. Olatunji*, 872
> F.2d 1161, 1167 (3d Cir. 1989) (false representations include
> "deceitful statements of half truths or the concealment of material
> facts") (quoting *United States v. Allen*, 554 F.2d 398, 410 (10th Cir.
> [1977]), *cert denied*, 434 U.S. 836, 98 S. Ct. 124, 54 L.Ed.2d 97
> (1977)); *United Sates v. Walker*, 871 F.2d 1298, 1308 (6th Cir.
> 1989) (statement containing half truths or concealing material fact
> is false); *United States v. Sawyer*, 799 F.2d 1494, 1502 (11th Cir.
> 1986), *cert. denied*, 479 U.S. 1069, 107 S. Ct. 961, 93 L.Ed.2d 1009

(1987) (scheme to defraud includes false representations or concealing material facts).

*Id.* at *8, n.8.

Similarly, the Fifth Circuit Pattern Jury Instructions for wire fraud (§ 1343) make clear that: "[a] representation [pretense] . . . is 'false' if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation [pretense] . . . would also be 'false' if it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with the intent to defraud."[7] Fifth Circuit Committee on Pattern Jury Instructions, Pattern Jury Instructions (Criminal Cases), § 2.57, "Wire Fraud" (2019 ed.).

Thus, it is beyond dispute in the Fifth Circuit and across the nation that half-truths, or concealments of material fact, advanced with the intent to defraud may be "false" or fraudulent under the fraud statutes. *See, e.g.*, *United States v. Neder*, 527 U.S. 1, 24–25 (1999) (holding that a material omission can amount to wire fraud); *United States v. Chanu*, 40 F.4th 528, 541 (7th Cir. 2022) ("Failure to give the whole story may also be fraud, especially when a defendant actively conceals information."); *United States v. Stephens*, 421 F.3d 503, 507 (7th Cir. 2005) ("A half truth, or what is usually the same thing [as] a misleading omission, is actionable as fraud . . . if it is intended to induce a false belief and resulting action to the advantage of the misleading and disadvantage of the misled." (internal quotations and citation omitted)).[8]

---

[7] The instructions for bank fraud (§ 1344) also contain a nearly identical definition of "false." *See* Fifth Circuit Pattern Crim. J. Instrs., § 2.66, "Bank Fraud."

[8] Black's Law Dictionary defines a "fraudulent misrepresentation" as "[a] false statement that is known to be false or is made recklessly—without knowing or caring whether it is true or false—and that is intended to induce a party to detrimentally rely on it." Misrepresentation, Black's Law Dictionary (11th ed. 2019).

**B. Defendants' at-issue statements were false or fraudulent because, as alleged, they constituted just the sort of misleading half-truths or omissions proscribed by the fraud laws and Defendants had the intent to defraud.**

That entire body of fraud law—almost completely ignored by Defendants—makes clear the Superseding Indictment is legally sufficient and its allegations must go to the jury.

Defendants' at-issue statements are so numerous and diverse that they are not all alleged to be false, fraudulent, or misleading in precisely the same way and they do not permit easy categorization. But they all do fall squarely under the umbrella of fraud: they are exactly the quintessential "half-truths," implied misrepresentations, or omissions that paint a public perception of doing one thing, while concealing the privately harbored fraudulent intent to do another. *Compare* (SI ¶¶ 103–10) *with Matthews*, 2002 WL 261421, at *8.

For example, by posting on social media as alleged, Defendants would publicly purport an intent to hold a stock to a certain price target or "swing" a stock for several days. In so doing, Defendants are alleged to have concealed that the statements were objectively false because Defendant's privately harbored a fraudulent intent that was contrary to their public display—they intended to sell the stock into the volume and hopeful price spike generated by their social media messages and omitted that critical objective fact from their false representations and pretenses. (*See, e.g.*, SI ¶¶ 1, 13–14, 103–10.)

The Court already seems to understand this, as evidenced by its comments at the April 12, 2023 hearing. (Apr. 12, 2023 Hr'g Tr. ("Tr.") at 23:22–24 ("When you say one thing and do another, isn't that what the jury, ultimately the fight is going to be over in front of the jury?")).[9]

---

[9] The Court made other similar statements:

> THE COURT:          If I have a zillion followers on Twitter and I say,
>                     "Man, this is the greatest thing since sliced bread,"
>                     that's a statement I would think of opinion, but at

Saying one thing while doing another, all with fraudulent intent: that is what is alleged in the Superseding Indictment, it must be taken as true, and a jury should decide whether or not it in fact is so. *Cheng*, 2022 WL 112026 at *5. It's that simple.

Take the two purportedly distinct categories of statements Defendant raises in his motion: (1) "speculations" about Defendants' intent to hold (or not sell) a security; and (2) "speculations" about the future price of a stock.[10] (Def.'s Br. (ECF No. 262 ("Br.")) at 2.) Statements in "category one"—statements about Defendants' present trading intentions—are statements of falsifiable fact. When Defendant posted publicly, for example, "$DATS I'm holding shares LT [long term]," that is a fact he represented to the world about his intention at the time—that he in fact planned to hold shares long term. But, as alleged, that statement is false within the meaning of the fraud laws, because he omitted and concealed that he in fact planned to sell shares into the volume and hopeful price spike generated by his post, all with fraudulent intent. Such allegations state a quintessential fraud. It is up to the jury to decide what is true. *See, e.g.*, *Cheng*, 2022 WL 112026 at *5.

---

|  |  |
|---|---|
|  | the same time I'm saying that, I'm dumping my shares, is that actionable? |
| MS. CORDOVA: | Your Honor, I believe it would be in certain circumstances, . . . my understanding generally is that you have to prove both objective and subjective falsity in those instances, both that it is not as great as sliced bread and that you did not believe it was as great as sliced bread at the time. |
| THE COURT: | And both of those sound like jury issues to me. |

(Tr. at 55:21–56:11.)

[10] The United States disagrees both that these two categories of statements are entirely distinct, and that all at issue statements fall squarely into only these two categories. For example, stating a future price target may also reasonably be understood as a statement of the trader's intention to hold shares until the stock reaches that price target, collapsing Defendant's two categories. But precisely categorizing each and every at-issue statement is unnecessary for the Court to reach the proper conclusion that the Superseding Indictment adequately alleges the crimes charged.

12

Statements in "category two"—statements about a stock's price like "$DATS $30+ maybe $50 or $100" or "$CEI is going to 10"—present numerous bases on which the statements may be false or fraudulent.[11] How and if they are false are core questions of disputed fact that must go to a jury. Critically, for example, such statements may be fairly understood actually as statements in the first category: statements of pure fact about Defendants' present intentions. For example, the first statement above may fairly be understood as: "I am holding DATS until it gets to $30+ per share, maybe even $50 or $100." Indeed, nowhere in the post itself does it make clear in any way that those were Defendant's "speculations" as he now maintains in his self-serving papers. That word—"speculations"—was completely absent until it showed up in Defendant's brief. It is a classic, impermissible attempt to contest the allegations in the indictment by introducing facts outside the four corners of the indictment. Such an effort must wait for trial. *Cheng*, 2022 WL 112026 at *5.

And that information likely would have been important for followers to know: these supposedly successful stock traders who held themselves out to the public as wealthy due to their trading skill were simply speculating with no sound basis in fact and no intent themselves to follow those speculations. That itself may constitute a material omission or render the statement a fraudulent pretense, and it is precisely the sort of representation proscribed by the fraud law as laid out in the Fifth Circuit Jury Instructions. Pattern Jury Instr. § 2.57 ("A representation [pretense] . . . is 'false' if it is known to be untrue or is *made with reckless indifference as to its truth or falsity*." (emphasis added)). Such statements also are objectively false statements of fact because it is alleged Defendants did not actually intend to hold the stock to those price targets—they both lied

---

[11] As noted, the defense makes category mistakes in its attempted delineation and sorting of the at-issue statements, which the United States only adopts in argument and to respond to the Motion. The categories Defendant presents are not wholly analytically distinct, as demonstrated.

about their intent (objectively false) and had fraudulent intent while so doing (subjectively false). Defendants cannot reach outside the indictment to inject concepts that such statements were mere harmless speculation as a matter of law—that is not what is alleged and that is an argument only proper for a jury.

Such statements also may be understood as opinions that are similarly objectively falsifiable. Reasonable readers could understand those statements as conveying, "I believe DATS will go to $30 per share," or "I believe the fair value of $DATS as the company stands today is $30 per share."[12] Understood in this way, these are squarely the types of false and misleading statements or fraudulent pretenses prohibited by the fraud laws when made with fraudulent intent. *See supra* at 7–10. In making such statements, Defendants painted a public perception that *they in fact believed in those price predictions*, while omitting and concealing the alleged truth that they did not so believe, all with fraudulent intent, *i.e.*, to induce others to part with money or property to Defendants' benefit. Thus, it is the defense arguments (not the Superseding Indictment) that conflate the two distinct elements of fraud: (1) objectively false or fraudulent pretenses and (2) subjective fraudulent intent. It is up to the jury to consider if and how the at-issue statements are false or fraudulent as alleged *and* whether Defendants had fraudulent intent in making them.

---

[12] These sorts of statements may be fairly understood as a statements that the stock itself is either intrinsically a good investment, as it will rise to those levels, or that it will be trading at those levels within a reasonable proximity to the statement. Although these are short-hand statements, they could fairly be understood as statements of Defendants' belief in the company's current valuation: with this many shares outstanding and today's balance sheet, income statement, cash flow statement, and future prospects of the company, a fair price per share today is $10. Defendants allegedly held themselves out to the public as being skilled, wealthy stock traders to bolster their credibility and the effectiveness of their false pretenses, all of which supports the implication that there is some reasonable basis for their public statements about stocks. But it's unnecessary to even reach that level of detail because Defendants made the public statements as if it was their actual belief, the stock was not in fact trading at or anywhere near that price target, Defendants sold well prior to that target, and Defendants made the statement at the same time concealing the alleged truth both that it was not in fact their beliefs and their fraudulent intent. That is what is alleged and must be taken as true. Whether or not Defendants did so believe those predictions is an issue of fact for the jury. *See, e.g.*, *Cheng*, 2022 WL 112026 at *5.

And the jury must consider those questions with the context of *all* relevant evidence. Underscoring Defendants' impermissible efforts to dismiss the case, Defendants repeatedly (and erroneously) speculate about how the United States intends to prove this case at trial. (*See, e.g.*, Br. at 2.) Defendant states in his brief no fewer than five italicized times that the Superseding Indictment relies "*solely*" on Defendants' public posts and trading records as evidence of intent. That is another false statement. The Superseding Indictment does not, as Defendant suggests, "ask the jury to infer falsity of the 21 tweets based *solely* on Constantinescu's subsequent sales of the securities." (Br. at 2.) Rather, it is clear from a cursory read that there are myriad types and sources of evidence that form distinct bases to infer that Defendants did not, in fact, believe what they were saying publicly.

Even if public posting and contrary trading records were the only basis in the Superseding Indictment from which to infer falsity, that would be sufficient circumstantial evidence of a disputed intent for a jury to decide the truth. But comparison of the trade and tweet records is only one of the many types of intent evidence in the Superseding Indictment that the defense *completely ignores*. Other intent evidence that is clearly laid out within the four corners of the Superseding Indictment include:

- Private communications coordinating the scheme, including Defendant Constantinescu's own (*e.g.*, SI ¶¶ 18, 22, 24, 26, 56–61, 65–70, 103);

- Private communications that are contrary to Defendant's publicly declared sentiments (*compare id.* ¶ 109 *with id.* ¶ 110);

- Public messages attempting to cover up the scheme that differ from Defendants' private sentiments or trading activity (*e.g.*, *id.* ¶¶ 15, 17–18);

- Recorded conversations in which several Defendants discuss their scheme and demonstrate their fraudulent intent (*e.g.*, *id.* ¶¶ 45–50);

15

- All along with both the trading and social media records and the general allegations of the details of the scheme (*e.g.*, *id.* ¶¶ 1, 13–14, 20–121).

*See supra* at 1–6. This all must be accepted as true. *Kay*, 359 F.3d at 742. And there will be far more at trial. The defense takes a different view of the evidence. But, as this very Court has recognized, "a court must deny a motion to dismiss if it relies on disputed facts." *Cheng*, 2022 WL 112026 at *5; *see also* (Tr. at 23:22–24).

*     *     *

In short, the Superseding Indictment sufficiently alleges that Defendants made false and misleading statements with the requisite fraudulent intent in furtherance of their securities fraud scheme such that a jury should decide what is true. *See id.*

### C. Opinions may be objectively false or fraudulent under Supreme Court precedent.

Defendants' arguments that the at-issue statements cannot be objectively false because they are opinions or they rely on Defendants' states of mind are incorrect statements of law and logic. The Court need not (indeed, should not) look beyond the relevant law of Title 18 fraud to reach that decision.[13]

---

[13] The Court should not, as Defendants consistently invite it to do, give preference to Title 15 and cases interpreting its provisions over cases interpreting the Title 18 fraud statutes. As demonstrated by courts that have interpreted Section 1348, as well as its legislative history, Section 1348 was passed precisely to avoid becoming ensnared in the "psychic thicket" of concepts developed in the context of wholly different, hyper-technical securities law language and requirements developed in response to wholly different concerns (*e.g.*, vexatious civil litigation). *See, e.g.*, *United States v. Ramsey*, No. 19-cr-268, 2022 WL 596378, at *9 (E.D. Pa. Feb. 28, 2022) ("[N]umerous courts have recognized that Congress drafted § 1348 to be broader and less technical than the existing criminal prohibitions within the Securities Exchange Act."); *Motz*, 652 F. Supp. 2d at 294 (citing 148 Cong. Rec. S7420–21 (daily ed. July 26, 2002) (statement of Sen. Leahy), *available at* 2002 WL 1731002); *infra* at 26 n.19; *see also Omnicare v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 185 n.2 (2015); *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1092, 1109 (1991). Further, the Court in both *Omnicare* and *Virginia Bankshares* consistently and repeatedly stated that its rulings in those cases were made in the context of the securities law sections at issue. *See, e.g.*, *Omnicare*, 575 U.S. at 184; *Va. Bankshares*, 501 U.S. at 1087. This Court

16

If the Court even superficially engages with Defendants' argument, it will see that the Supreme Court of the United States has previously explained unequivocally that opinions may be objectively false in the context of even hyper-technical securities laws. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184–85, (2015); *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1087 (1991).

As the Court wrote in *Omnicare* regarding "expressions of opinion[,] . . . every such statement explicitly affirms one fact: that the speaker actually holds the stated belief." 575 U.S. at 185 (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts § 109, p. 755 (5th ed. 1984) ("[A]n expression of opinion is always a statement of . . . the fact of the belief, the existing state of mind, of the one who asserts it.")). When the speaker does not, in fact, sincerely hold that opinion at the time of expressing it, the stated opinion is a false statement of fact about that opinion or belief. *See id.* As the Court wrote:

> [T]he CEO's statements about product quality ("I believe our TVs have the highest resolution available on the market") would be an untrue statement of fact—namely, the fact of her own belief—if she knew that her company's TVs only placed second. And so too the statement about legal compliance ("I believe our marketing practices are lawful") would falsely describe her own state of mind if she thought her company was breaking the law. In such cases, [the false-statement provision] would subject the issuer to liability (assuming the misrepresentation were material).

*Id.*

Both the Fifth Circuit and this Court have easily adopted this reasoning. *See, e.g.*, *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 670 (5th Cir. 2004) ("A statement of belief is only open to objection where the evidence shows that the speaker did not in fact hold that belief

---

needs nothing more than the law of criminal fraud, plain and simple, to determine that the disputed facts of this case should go to a jury. *See supra* at 7–19.

and the statement made asserted something false or misleading about the subject matter." (citing *Va. Bankshares*, 501 U.S. at 1095–96)); *Johnson v. CBD Energy Ltd.*, No. CV H-15-1668, 2016 WL 3654657, at *9 (S.D. Tex. July 6, 2016) ("Statements of pure opinion are only false if the speaker did not sincerely hold such opinion at the time of the statement." (citing *Omnicare*, 575 U.S. at 185–86)); *In re: BP p.l.c.. Sec. Litig.*, No. 4:10-MD-2185, 2016 WL 3090779, at *9 (S.D. Tex. May 31, 2016) ("[A] speaker may be held liable for a statement of opinion if the plaintiff can prove 'that the speaker did not hold the belief she professed. This proposition is relatively uncontroversial and was already widely accepted by federal courts, including the Fifth Circuit." (quoting *Omnicare*, at 185–86)).

This does not "collapse" subjective intent with objective falsity as Defendants claim. Those concepts go to two different elements: (1) objective falsity as part of the fraudulent scheme, and (2) subjective fraudulent intent. It is objectively false to assert "my opinion is 'x'" when the speaker's opinion is, in fact, "not 'x.'" The speaker did not in fact hold that opinion at the time of the statement and it was either wrong or made without sound basis (objectively false) and he knew that he did not so hold that opinion and stated it to fraudulently induce others (subjectively false), *i.e.*, he had subjective fraudulent intent in making the objectively false statement. These are no doubt odd questions of logic—Justice Scalia aptly referred to them as a "psychic thicket." *Va. Bankshares*, 501 U.S. at 1109. But that makes them no less true and no less clear when properly considered.[14]

---

[14] The Court in *Virginia Bankshares*, and in a footnote in *Omnicare*, briefly speculates about situations in which a speaker is "unintentionally accurate": the speaker intends to lie but it turns out that what he says is in fact true. *See Omnicare*, 575 U.S. at 185 n.2; *Va. Bankshares*, 501 U.S at 1095–96. The Court in both cases carves these situations out from civil liability under the two relevant subsections of the Title 15 securities laws in an effort to avoid vexatious civil litigation in those contexts. *See, e.g.*, *Omnicare*, 575 U.S. at 185 n.2; *Va. Bankshares*, 501 U.S. at 1095–96. The fraud laws should not be read under those

In effect, Defendants made their "opinions" facts by stating them, which carries with it the implication that they are sincerely held. *See, e.g.*, *Omnicron*, 575 U.S. at 185. It is alleged, and must be accepted as true at this stage, that those opinions were not, in fact, sincerely held such that the statements themselves were false or fraudulent elements of Defendants' securities fraud scheme under the fraud laws. *See, e.g.*, *supra* at 7–10; (SI ¶¶ 13–14). Defendants dispute these issues of fact, so it is up to the jury to decide what is true. *See, e.g.*, *Cheng*, 2022 WL 112026 at *5.

**D. The cases cited by Defendants do not change the conclusion that the Superseding Indictment adequately alleges securities fraud and its allegations must go to the jury.**

The check-kiting cases Defendants cite are inapposite because, as the cases state, the checks themselves are not statements that make factual assertions, whereas Defendants at-issue statements are just that for the reasons explained. For example, the Court in *Williams v. United States* explained that "technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.' Petitioner's bank checks served only to direct the drawee banks to pay the face amounts to the bearer while committing petition to make good the obligations if the banks dishonored the drafts. Each check did not, in terms, make any representation as to the state of petitioner's bank balance." 458 U.S. 279, 284–85 (1982). Here, in contrast, Defendants statements were assertions and representations for all the reasons stated and

---

hyper-technical limitations of Title 15, as vexatious civil litigation is not a concern and fraudulent pretenses may on their face be true. *See supra* at 7–19, 16 n.13.

Moreover, even in the civil context the Fifth Circuit has made clear that the question over whether predictions are "false" under "the antifraud provisions of the securities laws. . . . does not turn on whether the prediction in fact proved to be wrong; instead, falsity is determined by examining the nature of the prediction—with the emphasis on whether the prediction suggested reliability, bespoke caution, was made in good faith, or had a sound factual or historical basis." *Isquith for and on Behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 203–04 (5th Cir. 1988). Many, if not all of those conditions are absent here, as alleged. It is for a jury to decide.

are alleged to be just the sort of "half-truths" and misleading omissions that are the core of proscribed conduct under the fraud laws.[15] *See supra* at 10–18.

The Third Circuit's opinion in *United States v. Harra* does not counsel otherwise. 985 F.3d 196 (3d Cir. 2021). *Harra* dealt at the post-trial stage with the question of what the United States must prove when pursuing false statements based charges in the face of potentially ambiguous reporting requirements. *Id.* at 204. The court held the United States must prove both that Defendant subjectively intended to lie and that the statement in question was objectively false under the reporting requirement at issue, which was whether the loans in question were "contractually past due." *Id.*

There, the United States advanced two theories of liability: (1) a "waiver practice" theory in which, under the bank's ordinary internal practices, defendants treated waived loans as current and, thus, did not report them under the requirement; and (2) an "extend and pretend" theory where defendants would issue short term extensions of loans approaching maturity so as not to have to report them. The court rejected the "waiver practice" theory as false under the ambiguous reporting requirement, because "contractually" could be fairly understood to include the bank's ordinary practices of not counting waived loans as past due. *Id.* at 218–221. Critically, however, the court held that there was sufficient evidence to support securities fraud liability under the "extend and pretend" theory, writing that "a rational juror could conclude that Defendants had knowingly caused maturing loans to be extended in order to push them off the books for 2009 and conceal the poor financial health of the Bank from investors . . . ." *Id.* The court remanded for retrial on the "extend and pretend" theory alone. *Id*. at 225.

---

[15] Defendants' reliance on *United States v. Medeles*, a Fifth Circuit case asserting the same proposition that a "check is not an assertion," is inapposite for the same reasons. *Compare United States v. Medeles*, 916 F.2d 195, 199–200 (5th Cir. 1990), *with, e.g.*, *supra* at 7–19.

*Harra* is obviously inapposite insofar as it was concerned entirely with false statements in the context of interpretating potentially ambiguous reporting requirements. *See id.* Nevertheless, to the extent concepts in *Harra* do fairly analogize here, this case is entirely consistent with *Harra*'s relevant pronouncements. *First*, the "extend and pretend" theory the court found viable for securities fraud was premised on a literally true statement: the loans at issue were not "contractually past due" under the same interpretation that ousted the "waiver" theory. *See id.* at 218–221. But, reporting them as such rested not on the ordinary practices of the bank, but on the material omission that defendants had pushed them off the books to "conceal the poor financial health of the Bank from investors." *Id.* at 223. That ruling is entirely consistent with, and demonstrates the illegality of, the fraud alleged here. *See id.*

*Second*, the intent to defraud and the fraudulent scheme itself are separate elements of Section 1348, and the United States has alleged and intends to prove them as such, as already discussed at length. *See supra* at 7–19. In *Harra*, the question of falsity under either theory of the case turned on temporal and empirical factors—whether loans were contractually past due—that were entirely independent of those defendants' intent or opinions or states of mind. *See id.* In contrast, here there were no reporting requirement to which Defendants were responding when they chose to speak fraudulently on the subject of their stock trading, all with fraudulent intent, as alleged. Defendants put their trading intentions at issue by speaking on them, which necessarily concerns Defendant's states of mind both for the question of the objective falsity of the representation and the question of subjective fraudulent intent. Referencing Defendants' mental states as premises from which to conclude their public messages were objectively false or misleading is different from saying that Defendant made that false statement with the requisite fraudulent intent to induce others with that statement and deprive them of money or property.

*See, e.g.*, *Omicron*, 575 U.S. at 185. The United States has alleged both. (*See, e.g.*, SI ¶ 121.) Thus, the allegations in the Superseding Indictment are completely consistent with all relevant points in *Harra*.

Nor do the cases the defense cites for the proposition that fraud claims must be based on fact, not opinions, counsel for a different outcome. (*See* Br. at 12.)[16] Notably, Defendants cite cases from every domain *except cases involving the criminal fraud laws* to support these propositions, and instead rely on cases under different statutes criminalizing false statements with different elements.[17] There is no dispute that the expression of a *sincerely held opinion* is not a false or fraudulent statement. That is not what is alleged in the Superseding Indictment for all the reasons explained. *See supra* at 7–19.

The defense cites numerous additional civil cases on the notion of objective indicia of falsity for predictive statements or opinions. As those cases make clear "a defendant does not place itself beyond the reach of the securities laws merely by disclosing information that is predictive in nature . . . whether liability is imposed depends on whether the predictive statement was false when

---

[16] The defense's parenthetical description of (and pin citation to) *United States v. Campbell* are wrong and misleading and should give the Court pause about facial reliance on defense parentheticals. *Compare United States v. Campbell*, 64 F.3d 967, 977–78 (5th Cir. 1995) *with* (Br. at 12). That opinion held that the trial evidence was sufficient to support Defendant's conviction for making a false entry in bank records under 18 U.S.C. § 1005, but insufficient to sustain the convictions for bank fraud (18 U.S.C. § 1344) and conspiracy to commit the same (18 U.S.C. § 371) because there was not sufficient trial evidence of "*material* misrepresentations . . . ." *Campbell*, 64 F.3d at 977–78. The opinion said nothing with respect to the fraud counts about the proposition for which the defense cites it and erroneously describes in their parenthetical, *i.e.*, the distinction between objective and subjective falsity in the context of bank fraud. *Compare id. with* (Br. at 12). Defendants' pin citation, and the quoted language in the parenthetical, references the portion of the opinion simply *reciting the elements of the Section 1005 charge*, the count of conviction that court affirmed, not the bank fraud charges the defense misleadingly describes as relating to that quoted language. *Compare id. with* (Br. at 12).

[17] To be fair, the Defendants cite the single line of dicta in *Matthews*, where the Fifth Circuit wrote that "fraud claims must be based on misrepresentations of material fact, not opinion." *Matthews*, 2002 WL 261421, at *9. But, again, there is no dispute that *sincerely held opinion* is not false or fraudulent under the fraud laws. That is not what is alleged here.

made." *SEC v. Life Partners Hldgs., Inc.*, 41 F. Supp. 3d 550, 560 (W.D. Tex. 2013) (quoting *Rubenstein v. Collins*, 20 F.3d 160, 166 (5th Cir. 1994)); (Br. at 13). And as the Fifth Circuit has explained: "the answer to this inquiry [whether a predictive statement is 'false' when made,] does not turn on whether the prediction in fact proved to be wrong; instead, falsity is determined by examining the nature of the prediction—with emphasis on whether the prediction suggested reliability, bespoke caution, **was made in good faith**, or had a sound factual or historical basis." *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 203–04 (5th Cir. 1988) (emphasis added). It is impossible to act in good faith while at the same time committing fraud. *See, e.g.*, *United States v. Frame*, 236 Fed. App'x 15, 18 (5th Cir. 2007) (affirming denial of good faith jury instruction in fraud case where the instructions made clear that "the jury was required to acquit [defendant] if, because of his good faith, he lacked specific intent" to defraud); *United States v. Mutuc*, 349 F.3d 930, 936 (7th Cir. 2003) ("[I]t is impossible to intend to deceive while simultaneously acting in good faith.").

Even though the correct place to look for these standards is the criminal fraud laws, *see supra* at 7–10, the Superseding Indictment adequately alleges Defendants had no such good faith, *i.e.* they had fraudulent intent, when making the at-issue statements such that the statements are alleged to be objectively false or fraudulent as a matter of law and must go to the jury.

\*     \*     \*

At base, the defense arguments set forth a fundamentally mistaken understanding of the law of fraud. It is beyond dispute that statements may be false or fraudulent for purposes of the fraud statutes when they are misleading half-truths or omissions made with fraudulent intent. *See surpa* at 10–15. That is what the Superseding Indictment alleges. A jury must decide if it is so. *See, e.g.*, *Cheng*, 2022 WL 112026 at \*5.

II.    **Section 1348 plainly prohibits schemes to defraud involving securities, the statute requires fraudulent intent, and such fraud schemes have long been prohibited, raising no Due Process issues here.**

    A.  **Legal Standard**

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). A vagueness challenge not premised on the First Amendment is evaluated as-applied, rather than facially. *Chapman v. United States*, 500 U.S. 453, 467 (1991)).

Critically, "[u]nder our precedents, a scienter requirement in a statute alleviates vagueness concerns, narrows the scope of its prohibition, and limits prosecutorial discretions." *McFadden v. United States*, 576 U.S. 186, 197 (2015) (internal quotation and citations omitted). "This follows from the general principle that where scienter is required no crime is committed absent the requisite state of mind." *Gonzales v. Carhart*, 550 U.S. 124, 148 (2007).

    B.  **The statute's plain text proscribes the alleged conduct and Section 1348 requires proof of fraudulent intent.**

The text of Section 1348 is clear in its scope and application. It prohibits schemes (1) to defraud in connection with any security; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of any security.[18] *See* 18 U.S.C. § 1348. This is understandable to any ordinary person: the statute prohibits schemes to defraud involving securities.

---

[18] This excerpt omits statutory language for ease and on the presumption that the Court is familiar with the text. Note, however, that the omitted language supplies further particularity, requiring the securities covered to be those "of an issuer with a class of securities registered under section 12 of the Securities

24

Critically, Section 1348 has "a scienter requirement" which "alleviate[s] vagueness concerns." *McFadden*, 576 U.S. at 197 (internal quotations and citation omitted). To obtain a conviction, the United States must prove (and has alleged) that Defendants had the specific intent to defraud—in other words, they knew *exactly* what they were doing when they were doing it. *Compare Gonzales*, 550 U.S. at 148 *with* (SI ¶ 40 ("We're robbing f*cking idiots of their money."), ¶ 18 ("we gotta look less obvious")).

The rule of lenity does not apply because the statute is not ambiguous. *See, e.g.*, *Wooden v. United States*, 142 S. Ct. 1063, 1075 (2022) (Kavanaugh, J., concurring) ("Importantly, the rule of lenity does not apply when a law merely contains some ambiguity or is difficult to decipher. As this Court has often said, the rule of lenity applies only when 'after seizing everything from which aid can be derived,' the statute is still grievously ambiguous." (internal quotations and citations omitted)); *United States v. Bases*, No. 18-cr-48, 2020 WL 2557342, at *12 (N.D. Ill. May 20, 2020) (finding, with respect to Section 1348, that "because the statute is not ambiguous as applied to Defendants' conduct, the rule of lenity does not apply").

Courts have denied vagueness challenges to Section 1348 with ease. For example, as one court denying such a challenge wrote:

> [Defendant] does not articulate why a person of ordinary intelligence would be unable to understand the conduct prohibited by 18 U.S.C. § 1348. In other words, [Defendant] has failed to show that the language of 18 U.S.C. § 1348 is so vague as to create a trap for the unwary and permit arbitrary enforcement. The statute's language is intentionally broad because congress sought to create a mechanism by which prosecutors could combat the myriad of ever-evolving securities fraud schemes.
>
> With regard to the second prong of the analysis—whether the law provides explicit standards to be applied—the Court notes that the

---

Exchange Act of 1934 (15 U.S.C. § 78*l*) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78*o*(d)) . . . ." 18 U.S.C. § 1348.

> requisite elements of the statute are straightforward. In order to
> prove a violation of 18 U.S.C. § 1348, the Government must show:
> (1) fraudulent intent; (2) a scheme or artifice to defraud; and (3) a
> nexus with a security. The Court finds that this standard is
> sufficiently clear to prevent the arbitrary or discriminatory
> application of 18 U.S.C. § 1348. Accordingly, [Defendant's] "as
> applied" challenge is denied.

*United States v. Motz*, 652 F. Supp. 2d 284, 295 (E.D.N.Y. 2009) (internal quotations and citations

omitted); s*ee also United States v. Smith*, 555 F. Supp. 3d 563, 577–79 (N.D. Ill. 2021); *Bases*,

2020 WL 2557342, at *11–13; *United States v. Coscia*, 100 F. Supp. 3d 653, 659–61 (N.D. Ill.

2015), *aff'd*, 866 F.3d 782 (7th Cir. 2017). That court also noted that "[a]ccording to the legislative

history, the overarching purpose of the statute was to broaden the range of conduct proscribed by

existing federal securities laws." *Motz*, 652 F. Supp. 2d at 294 (citing 148 Cong. Rec. S7420–21

(daily ed. July 26, 2002) (statement of Sen. Leahy), *available at* 2002 WL 1731002).

Nor does any absence of authority interpreting Section 1348 under facts precisely such as

these fail to provide Defendants notice that their fraudulent scheme was prohibited.[19] That is

---

[19] In discussing the advent of Section 1348, Senator Leahy made clear the law's scope and
application was specifically intended to provide the flexibility to encompass novel schemes. The Senator
also expressly explained that Section 1348 was necessary to ensure a technical Title 15-based defense,
precisely like the one Defendants advance here, would not stand in the way of justice:

> Currently, unlike bank fraud or health care fraud, there is no generally
> accessible statute that deals with the specific problem of securities fraud.
> In these cases, federal investigators and prosecutors are forced either to
> resort to a patchwork of technical Title 15 offenses and regulations, which
> may criminalize particular violations of securities law, or to treat the cases
> as generic mail or wire fraud cases and to meet the technical elements of
> those statutes, with their five year maximum penalties.
>
> This bill, then, would create a new 25 year felony for securities fraud—a
> more general and less technical provision comparable to the bank fraud
> and health care fraud statutes in Title 18. It adds a provision to Chapter 63
> of Title 18 at section 1348 which would criminalize the execution or
> attempted execution of any scheme or artifice to defraud persons in
> connection with securities of publicly traded companies or obtain their
> money or property. **The provision should not be read to require proof**

26

simply not the law. Multiple courts facing this question with respect to Section 1348 already have

rejected such challenges in the arguably more novel circumstances of spoofing prosecutions. As

one court wrote:

> The same challenge to [Section 1348] was rejected by the district
> court in *Coscia*. Like Defendants here, Coscia claimed an absence
> of authority "that could have provided reasonable notice that [his]
> trading activity might be considered a form of fraud at the time of
> that activity." But the district court "declin[ed] to conclude, based
> solely on the scarcity of cases interpreting [Section 1348] that the
> statute fails to provide a person of ordinary intelligence fair notice
> of the conduct that it prohibits," finding that the indictment, which
> alleged false impressions, fraudulent inducement, and tricking
> others, was "consistent with [a] scheme to defraud . . . ."
>
> Similarly, the present indictment alleges that Defendants presented
> false and misleading information to market participants, inducing
> them to execute transactions that inured to Defendants' financial
> benefit. . . . Regardless of the novelty of the conduct, so long as it
> falls within the statute's plain language, as is the case here, there is
> fair notice. . . . For these reasons, Defendants' motions to dismiss
> the indictment on vagueness grounds is denied.

*Bases*, 2020 WL 2557342, at *11–13 (quoting *Coscia*, 100 F. Supp. 3d at 661) (internal citations

omitted). Like the indictments in *Bases* and *Coscia*, the Superseding Indictment alleges that

---

> **of technical elements from the securities laws, and is intended to
> provide needed enforcement flexibility in the context of publicly
> traded companies to protect shareholders and prospective
> shareholders against all the types scheme and frauds which inventive
> criminals may devise in the future.** The intent requirements are to be
> applied consistently with those found in 18 U.S.C. §§ 1341, 1343, 1344,
> 1347.
>
> By covering all "schemes and artifices to defraud" (*see* 18 U.S.C. §§ 1344,
> 1341, 1343, 1347), new § 1348 will be more accessible to investigators
> and prosecutors and will provide needed enforcement flexibility and, in
> the context of publicly traded companies, **protection against all types
> schemes [sic] and frauds which inventive criminals may devise in the
> future.**

148 Cong. Rec. S7420–21 (daily ed. July 26, 2002) (statement of Sen. Leahy), *available at* 2002 WL
1731002 (emphasis added).

Defendants presented false and misleading information to their followers, inducing them to execute securities transactions that inured to Defendants' financial benefit, all with the specific intent to defraud. *See id.*; (SI ¶¶ 1, 13–14, 116–21).

Still another court persuasively dispelled the same challenge to Section 1348 in a different spoofing prosecution:

> Federal fraud statutes are regularly deployed—without vagueness concerns—to prosecute conduct that could also be prosecuted under other criminal statutes. . . .
>
> [T]he relative recency of spoofing prosecutions . . . does not justify dismissal. Although due process bars courts from applying a novel *construction* of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope, it permits a statute's application to novel *conduct* so long as it [is] within the statute's plain language. . . . [F]ederal fraud statutes have long been used to prosecute implied misrepresentations . . . . This is nothing new, at least in terms of a surprise interpretation of a statute. Defendants had fair notice that federal fraud statutes could criminalize their alleged conduct.

*Smith*, 555 F. Supp. 3d at 577–79 (internal quotations and citations omitted).

As these courts have recognized, schemes to defraud are nothing new. In its most basic elements as a scheme to defraud, the conduct alleged in the Superseding Indictment has been proscribed for generations. *See, e.g.*, *Durland v. United States*, 161 U.S. 306, 313 (1896) ("It is common knowledge that nothing is more alluring than the expectation of receiving large returns on small investments. . . . In the light of this the [mail fraud] statute must be read, and, so read, it includes everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future. The significant fact is the intent and purpose."). The fact that this charged scheme was perpetrated on social media makes the scheme novel as to the means of execution, but not the scheme's core elements as a fraud, which is the proper level of generality for the vagueness analysis. *See, e.g.*, *Vorley*, 420 F. Supp. 3d at 806–07 (noting, in rejecting a

28

vagueness challenge to Section 1348, that "[t]he novelty of this prosecution, however, is in larger measure a function of the novelty of the scheme").

And pump-and-dump schemes themselves—saying one thing publicly about a stock and trading another way privately—have long been prohibited under numerous laws proscribing fraud. *See, e.g.*, *United States v. Steven Gallagher*, No. 1:22-cr-122 (S.D.N.Y. July 6, 2022) (ECF Nos. 1, 11, 28) (securities fraud guilty plea for social media-based pump and dump); *United States v. Enger*, 427 F.3d 840, 854 (10th Cir. 2005) (affirming securities fraud conviction where "[t]he record show[ed] that at the same time as Wenger had been advising readers to buy PanWorld stock, Wenger himself was selling his shares"); *SEC v. Huttoe*, 96-cv-2543, 1998 WL 34078092, at *7 (D.D.C. Sept. 14, 1998) (the "practice of selling when . . . recommending buying has long been understood to operate as a fraud or deceit upon investors"); *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1265–66 (9th Cir. 1979) (finding that financial columnist's failure to reveal to readers his practice of "scalping" the stocks of companies he wrote about was a material nondisclosure creating liability).

### C. Defendants' reference to an incomplete smattering of securities laws does not establish that his conduct "falls outside the scope of established securities laws" such that schemes to commit securities fraud like the one alleged are permitted.

Defendants' curious reasons for expounding at length on a random smattering of irrelevant securities laws are not stated fully and clearly in Defendants' brief. It seems, though, that the defense wastes paper cataloguing those unrelated laws in the hopes of making two points: (1) because these irrelevant laws do not themselves impose upon Defendants a duty to disclose their securities transactions, no such duty existed and their charged fraudulent scheme was lawful (*see* Br. at 24, 27–28); and (2) because the irrelevant laws in the self-selected set do not themselves prohibit Defendants' conduct, Defendants were not on notice that their charged conduct was

29

prohibited (*see* Br. at 18–23).[20]  Those arguments are utter nonsense.

*First*, as to the question of disclosure, the law is clear that the "fraud statutes do not require a duty to disclose imposed by statute or regulation." *Mathews*, 2002 WL 261421, at *9 (5th Cir. 2002). Unlike Defendants, courts recognize that "[i]t requires no extended discussion of authority to demonstrate that omissions or concealment of material information can constitute fraud . . . without proof of a duty to disclose the information pursuant to a specific statute or regulation." *United States v. Keplinger*, 776 F.2d 678, 697–98 (7th Cir. 1985); s*ee also United States v. Swenson*, 25 F.4th 309, 318 n.3 (5th Cir. 2022) (quoting and citing *Keplinger* for this proposition); *United States v. Colton*, 231 F.3d 890, 904 (4th Cir. 2000) ("[T]he government need not demonstrate that defendants who successfully and intentionally engaged in a fraudulent scheme to actively conceal material facts . . . had an independent duty to disclose such facts. Rather, evidence of such a scheme in and of itself suffices."); *United States v. Morris*, 80 F.3d 1151, 1161 (7th Cir. 1996) ("[T]he [fraud] statutes apply not only to false or fraudulent representations, but also to the omission or concealment of material information, even where no statute or regulation imposes a duty of disclosure."); *Smith*, 555 F. Supp. 3d at 576 (explaining, in the context of Section 1348, that "[t]he 'concept of misrepresentation . . . can also include the omission or concealment of material information, *even absent an affirmative duty to disclose*, if the omission was intended to induce a false belief and action to the advantage of the scheme and the disadvantage of the victim.'" (quoting *United States v. Weimert*, 819 F.3d 351, 355 (7th Cir. 2016) (emphasis added)); *Vorley*, 420 F. Supp. 3d at 801 ("[T]he existence of a fiduciary, regulatory, or statutory duty to disclose

---

[20] It is noteworthy that Defendants' self-selected subset of securities laws omits numerous laws concerning *securities fraud*, which is *all this case is about*. That flagrant omission alone belies the incredibility and insincerity of the defense arguments. At the very least, it demonstrates that the defense has not taken the allegations of the Superseding Indictment as true, as required at this stage. It is *impossible* to do that as well as to maintain that laws proscribing securities fraud are irrelevant.

material information is not required to make an omission actionable under the mail and wire fraud statutes."). That is so because "the scheme to defraud is a 'departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community.'" *Matthews*, 2002 WL 261421, at \*9 (quoting *United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir. 1987)).

In this particular case, the duty to disclose arose when Defendants chose to speak on the subject of their stock trades. *See, e.g.*, *United States v. Townley*, 665 F.2d 579, 585 (5th Cir. 1982), *cert. denied*, 456 U.S. 1010 (1982) ("[I]t is just as unlawful to speak 'half truths' or to omit to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading."); *see also United States v. Autouori*, 212 F.3d 105, 119 (2d Cir. 2000) ("A duty to disclose can also arise in a situation where a defendant makes partial or ambiguous statements that require further disclosure in order to avoid being misleading."). This is not a case of "mere omissions," but "affirmative misrepresentations." *See, e.g.*, *United States v. Biesiadecki*, 933 F.2d 539, 543 (7th Cir. 1991). At the point Defendants chose to speak about their stock trading, they assumed the duty to speak fully and truly, not falsely or fraudulently with fraudulent intent. *See, e.g.*, *Townley*, 665 F.2d at 585. As alleged, they did not speak fully and truly, but falsely and fraudulently with requisite intent. The Superseding Indictment pleads that plain as day. It is up to a jury to decide what is true.

*Second*, as already discussed at length, Section 1348 clearly prohibits the charged securities fraud scheme. *See supra* at 7–19. Thus, the fraud laws and their interpretation provided Defendants adequate notice that their conduct was proscribed. *See id.* That is particularly so because Section 1348 requires that they acted with the specific intent to defraud. *See McFadden*, 576 U.S. at 197; *supra* at 24.

Instead of engaging with any of this relevant law (likely because it's fatal to their cause), the defense smatters page after page with absolutely irrelevant securities laws hoping something will stick. Simply because Defendant is not a securities issuer or registered investment advisor or insider or whatever else does not mean he cannot be liable for securities fraud. The text of Section 1348—the *only* relevant securities statute—makes that crystal clear. The Court should ignore these portions of Defendants' brief that are replete with red herrings; they present textbook irrelevance fallacies and nothing more. (*See* Br. at 14–18, 20–28.) Those statutes are not charged and have no bearing on the case, as Section 1348 is not interpreted in light of them.

For example, Defendant points to certain provisions restricting buying and selling for insiders and then points out that "[n]either rule places restrictions on non-insider's sale of non-restricted registered securities." (Br. at 16.) The United States has not alleged that they do. The United States has alleged that Defendant participated in a fraudulent scheme with fraudulent intent and it is precisely that involvement that created the alleged securities fraud liability under Section 1348. References to laws restricting sales for insiders are wholly irrelevant.

As to the notion that Defendant was not compensated for his advice, so cannot be subject to the restrictions of the Investment Advisers Act of 1940 (IAA), 15 U.S.C. § 80b-1 *et seq.*, again, this is not alleged. Defendant is, however, restricted from participating in a scheme to defraud involving securities by the express terms of Section 1348. The duty not to commit securities fraud exists in the plain language of Section 1348 applicable to all. And any duty not to make false, misleading, or otherwise fraudulent statements about securities arose when Defendant chose to make statements about and trade in those securities. *See, e.g.*, *Townley*, 665 F.2d at 585; *supra* at 29–31. References to the IAA, or compensation for investment advice, have no place in this case and do nothing to change the scope covered by the plain language of Section 1348.

32

As to the notion that the securities laws permit coordinated group trading of securities, the defense itself states a critical limitation absent here: that "the trading is not done for an unlawful purpose." (Br. at 16 (citing 15 U.S.C. § 78i(a)(2), (a)(6), (d); Regulation 13D/13G).) Obviously, here, coordinated trading and/or social media posting is alleged to have been done as part of a fraudulent scheme and a conspiracy to commit securities fraud. Those allegations must be taken as true. *See, e.g.*, *Kay*, 359 F.3d at 742. It is up to the jury to decide. *See, e.g.*, *Cheng*,  2022 WL 112026, at *5. As such, this point is also irrelevant.

As to Defendants' repeatedly expressed notion of the "unworkability" of Section 1348 and their puzzling confusion over when someone who speaks publicly about stocks may ever safely sell them: there are no allegations that merely tweeting subjects someone to liability for securities fraud. (*See generally* SI.) Nor are there allegations that merely trading subjects one to liability for securities fraud. (*See generally id.*) Nor are there even allegations that honest tweeting and trading subjects someone to securities fraud. (*See generally id.*)

The allegations are that one incurs liability for securities fraud when one meets the elements of Section 1348 by engaging in a scheme to defraud in making false and fraudulent public statements, omitting and concealing the truth, and doing so with fraudulent intent, all in connection with securities. More concretely, do not engage in a blatant, repeated fraudulent scheme, coordinated by private communications among many participants, to front load stocks and then tell followers one thing while actually doing another, all with fraudulent intent. More succinctly: don't commit fraud. It isn't as complicated as the defense wants it to seem. The Court should reject these ill-founded, slippery-slope sophistries.

*       *       *

At base, Defendants point to all these irrelevant securities fraud provisions in order to make the point that they could not have known what they are alleged to have done was wrong. Nonsense. Defendant Knight (the youngest Defendant in the case) understood exactly what the Defendants were doing and why it was illegal. (*See* SI ¶ 40 ("We're robbing f*cking idiots of their money.").) And if they didn't intend that, then they didn't have the requisite fraudulent intent anyway. That is an issue for the jury.

Defendants also point to these irrelevant laws to say that they did not have a duty under those irrelevant provisions to disclose their stock sales. We agree. The relevant duty arose when they chose to post about and trade in the stocks. At that point, they had a duty to speak truthfully or without fraudulent intent, to not engage in the charged fraudulent scheme. In other words, they had a duty once they chose to speak not to post false, misleading, or otherwise fraudulent information publicly in the hopes of inducing their followers to enter the stock they already held so that they had the liquidity and hopefully price movement in order to sell their shares at a profit, while concealing that true intent and plan from their followers by omitting it in their public posts, as alleged. That is the essence of the fraud. And that has long been prohibited.

### D. The Superseding Indictment adequately pleads a conspiracy to commit securities fraud under Section 1349 and Defendants had fair notice that their alleged conduct was prohibited.

#### 1. *Legal Standard*

To allege a count of conspiracy under Section 1349, the United States must state facts showing that "(1) two or more persons made an agreement to commit an unlawful act; (2) the defendant knew the unlawful purpose of the agreement; and (3) the defendant joined the agreement willfully, with the intent to further the unlawful purpose." *United States v. Simpson*, 741 F.3d 539, 547 (5th Cir. 2014).

As the Fifth Circuit has made clear, "[t]he jury may infer from circumstantial evidence the existence of a conspiracy." *Matthews*, 2002 WL 261421, at *7 (citing *United States v. Burton*, 126 F.3d 666, 670 (5th Cir. 1997)). "The agreement between conspirators may be silent and need not be formal or spoken. An agreement may be inferred from concert of action, voluntary participation may be inferred from a collection of circumstances, and knowledge may be inferred from the surrounding circumstances." *United States v. Grant*, 683 F.3d 639, 643 (5th Cir. 2009) (internal quotations and citations omitted).

"And, once the Government produces evidence of a conspiracy, only slight evidence is needed to connect a defendant to it." *Matthews*, 2002 WL 261421, at *7 (citing *United States v. Jensen*, 41 F.3d 946, 954–55 (5th Cir. 1994), *cert. denied*, 514 U.S. 1101 (1995)). "If found to be a member of a conspiracy, a defendant is liable for all substantive offenses committed in furtherance of it, even if he is unaware of those specific offenses." *Id.* (citing *United States v. Phillips*, 219 F.3d 404, 417 (5th Cir. 2000); *Jensen*, 41 F.3d at 955).

> 2. *The Superseding Indictment adequately alleges a securities fraud conspiracy and Defendants had fair notice of that crime such that the allegations must go to a jury.*

The defense appears to make three arguments with respect to the Section 1349 conspiracy charge:

    (i)    there can be no conspiracy because Defendants' actions were lawful;

    (ii)    whether or not Defendants' actions were lawful, they did not have sufficient notice that they could be prosecuted for the charged scheme and, thus, conspiracy; and

    (iii)    a smattering of factual contentions about the Superseding Indictment's allegations that very clearly belong in the province of the jury.

(Br. at 23–28.) The Court should swiftly reject each of these specious claims.

*First*, Defendants' contention that there can be no conspiracy because their actions were lawful is utterly wrong for all the reasons discussed. *See supra* at 7–34. The Superseding

Indictment precisely alleges that "Defendants agreed to do something unlawful under the securities laws [and] that they concealed something they were required to disclose." *Compare id. with* (Br. at 24).

As to the question of the lawfulness of the charged conduct, Defendants list numerous acts they are alleged to have engaged in and note that "the securities laws permit these alleged activities," including:

(i)   Making *bona fide* market purchases of non-restricted securities at prevailing market prices;

(ii)  Recommending and encouraging others to buy those securities;

(iii) Speculating about the price those securities might reach;

(iv)  Sharing truthful information about the companies on social media, and

(v)   Making *bona fide* sales at prevailing market rates of those non-restricted securities without disclosing the sales.

(Br. at 24.) The United States agrees that those activities alone or even in some combination, when done in a lawful manner without fraudulent intent, do not implicate Section 1348 or a related Section 1349 charge. But when done in a scheme to defraud with the requisite fraudulent intent—all of which is fully alleged in the Superseding Indictment—such a scheme involving some or all of these activities absolutely may generate securities fraud liability under Section 1348 and liability for conspiracy to commit the same under Section 1349. Stripped bare, Defendants' contentions involve core factual issues that must go to a jury. *See, e.g.*, *Cheng*, 2022 WL 112026 at *5.

*Second*, because Defendants were on notice that their charged fraudulent conduct was proscribed by Section 1348 for all the reasons discussed, *see supra* at 7–19, they were certainly on notice that a conspiracy to commit that fraud was also proscribed. Section 1349 has been used to prosecute securities fraud conspiracies since shortly after the statute became effective in 2002, and numerous such prosecutions have since ensued. *See, e.g.*, *Bases*, 2020 WL 2557342, at *1;

36

*Mahaffy*, 2006 WL 2224518, at *1. And prosecution for conspiracies with unlawful objects are almost as old as the law itself. *See, e.g.*, *Poulterer's Case*, 77 Eng. Rep. 813 (K.B. 1611); Albet J. Harno, *Intent in Criminal Conspiracy*, 89 U. Pa. L. Rev. 624, 624–25 (1941).

*Third*, with an unlawful object established, the Superseding Indictment need only allege sufficient facts to meet the elements of Section 1349, which it certainly does in alleging the securities fraud conspiracy among Defendants. The Superseding Indictment does so through reference to voluminous and varied types of evidence that—frankly, are rare to have together in a single case—and sufficiently alleges knowing and willful agreement among Defendants to join in the unlawful conspiracy with the requisite intent.

For example, Defendant Constantinescu's conversation with Defendant Matlock in which he plots improvements to the execution of the securities fraud scheme is, alone, enough to infer knowing and willful agreement. *See* (SI ¶ 18 ("we gotta look less obvious")); *supra* at 4. And that is but one of many examples included in the Superseding Indictment of various of Defendants coordinating, discussing, and even admitting to the scheme in private discussions. *See, e.g.*, (SI ¶¶ 18, 22, 24, 26, 56–61, 65–70, 103). That is more than sufficient to establish the knowing and willful agreement. *See, e.g.*, *Grant*, 683 F.3d at 643.

And once the agreement itself is established, "only slight evidence is needed to connect a defendant to it." *Matthews*, 2002 WL 261421, at *7. That additional evidence itself is alleged in various forms. The allegations that every Defendant posted about and/or traded in the same stocks at the same time of at least one other Defendant is sufficient to infer involvement in the agreement—it demonstrates the common goal and purpose of the conspiracy. Particularly coupled with the express coordination communications alleged, such evidence is a basis to infer illicit coordination. And even beyond that, the Superseding Indictment references how Defendants held

themselves out together to the investing public, presenting images of success as evidence of credibility and encouraging investors to join their group. (*See, e.g.*, SI, ¶ 10–12.) It references Defendants Hennessey's and Defendant Knight's podcast on which they discussed their trading. (*See id.* ¶¶ 8–9, 12.) And so on and so forth. There simply is no question here whether the Superseding Indictment adequately alleges the charged conspiracy.

Defendants' arguments on this point are yet another attempt to make factual contentions wholly inappropriate in this procedural posture. The Court should disregard these flagrant forays into the fiefdom of the jury. Pointing out for example that, as alleged, Defendants did not all buy or sell or post about all the same stocks at all the same times are factual arguments about what inferences *a jury* should or should not make from the evidence. *Compare Cheng*, 2022 WL 112026, at *5 *with* (Br. at 24–28). And as discussed, there are many facts alleging concert of action, both in trading and posting together and in privately planning the scheme. The Superseding Indictment adequately alleges a securities fraud conspiracy. It is for the jury to say what is so. *See, e.g.*, *Cheng*, 2022 WL 112026 at *5.

## Conclusion

The allegations of the Superseding Indictment sufficiently allege a securities fraud scheme and conspiracy. Those allegations charge Defendants with conducting their pump and dump scheme repeatedly, across years, through innumerable false and misleading statements and omissions. The fraudulent nature of these statements is laid bare by comparing them with the trading records, as well as private communications among coconspirators that further demonstrate Defendants' orchestrating the scheme and confirm both the objective falsity of their public representations as well as their privately harbored fraudulent intent. A jury must be permitted to consider that, as alleged, Defendants knew exactly what they were doing: committing securities fraud.

Dated: June 9, 2023                  Respectfully submitted,

                                     GLENN S. LEON
                                     Chief, Fraud Section
                                     Criminal Division, Department of Justice

                          By:        */s/ John J. Liolos*
                                     Scott Armstrong, Assistant Chief
                                     John J. Liolos, Trial Attorney
                                     Fraud Section, Criminal Division
                                     United States Department of Justice
                                     1400 New York Ave. NW
                                     Washington, DC 20005
                                     Tel.: (202) 768-2246

                                     ALAMDAR HAMDANI
                                     United States Attorney
                                     Southern District of Texas

                          By:        */s/ Thomas Carter*
                                     Thomas H. Carter
                                     Assistant United States Attorney
                                     State Bar No.:  TX24048387
                                     1000 Louisiana Street, 25th Floor
                                     Houston, Texas 77002
                                     Tel.: (713) 567-9470

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2023, I will cause the foregoing motion to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

        */s/ John J. Liolos*
        John J. Liolos, Trial Attorney
        U.S. Department of Justice
        Criminal Division, Fraud Section