IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD CONSTANTINESCU,<br>PERRY "PJ" MATLOCK,<br>JOHN RYBARCZYK,<br>GARY DEEL,<br>STEFAN HRVATIN,<br>TOM COOPERMAN,<br>MITCHELL HENNESSEY,<br>DANIEL KNIGHT. | No. 4:22-CR-00612-S |

**DEFENDANT EDWARD CONSTANTINESCU'S
REPLY IN SUPPORT OF JOINT[1] MOTION TO DISMISS**

Now, six months after the government issued a press release in the name of the U.S. Attorney for the Southern District of Texas accusing Constantinescu of "orchestrat[ing]" "pump and dumps" by "disseminat[ing] false and misleading information about the securities" on Twitter and Atlas Trading Discord, it has still failed to identify *a single false statement by Constantinescu* about the securities. Indeed, on June 15, the government produced a purportedly "trial ready" spreadsheet of all the allegedly false statements attributable to Constantinescu related to the stock tickers in the Superseding Indictment. Not even one of these statements is false: they are all either speculations about the future price of a stock, statements of future intent, or empirically truthful statements. The government has alleged no objectively false statements about these companies by Constantinescu nor any objective indicia of their falsity. None.

---

[1] The arguments set forth in the Joint Motion [ECF 262] and this reply are approved and adopted by the following Defendants, who join as to Count 1 and to the extent the arguments apply to their respective securities fraud counts: Stefan Hrvatin (Counts 14, 15); Tom Cooperman (Counts 10, 12, 16, 17, 19), Perry "PJ" Matlock (Counts 3, 4, 5, 7, 10, 11), and Gary Deel (Counts 3, 5, 10, 11, 12, 16, 17).

As such, the government has walked back on its theory that Constantinescu "disseminated false" information about the securities—now taking the position that Constantinescu's tweets were "misleading half-truths that omit[ed] or conceal[ed]" his "present trading intentions." Opp. Br. at 7, 12. That is, the government now maintains that Constantinescu committed securities fraud solely "because he omitted and concealed that he in fact planned to sell shares." *Id*. at 12. In disavowing its original theory, the government goes so far as to suggest "the Court could ignore the term 'false' [in the Superseding Indictment] altogether." *Id.* at 8.

In its 45-page opposition brief, the government cites to just three examples of statements it believes "omit or conceal" Constantinescu's "present intention" to "sell shares," rendering his tweets "half-truths." *Id.* at 12–13. It cites to Constantinescu's empirically truthful after-market tweet on October 13, 2021, "$DATS I'm holding shares LT." *Id.* at 12.[2] In addition, it points to Constantinescu's tweets "$DATS 30+ maybe $50 or $100" and "$CEI is going to 10." *Id*. In classic Orwellian Newspeak, the government now takes the stance that the tweet "may be fairly understood as 'I am holding DATS until it gets to $30+ per share, maybe even $50 or $100'." *Id.* at 13. These three statements are purportedly "false" based on Constantinescu's "privately harbored fraudulent intent" (*Id.* at 11–38): he "did not actually intend to hold the stock to those price targets—[he] both lied about [his] intent (objectively false) and had fraudulent intent while so doing (subjectively false)." *Id.* at 13–14. That is, the government references solely Constantinescu's "*mental state*[] as premises from which to conclude [his] public messages were objectively false." *Id*. at 21. It wants to have a jury trial on Constantinescu's thoughts.

---

[2] According to the Superseding Indictment, at the time of this tweet, Constantinescu had been holding shares of DATS uninterrupted for two months and continued to hold approximately half a million dollars in DATS shares. (Ind. ¶ 107(h)). Constantinescu even purchased millions of dollars more worth of DATS shares the following day. (Ind. ¶ 107(i)).

But the U.S. constitution will not entertain such a theory: "Allowing a defendant's subjective intent to stand in for 'a complete failure of proof' on the falsity element . . . would collapse the two elements and relieve the prosecution of its constitutional burden to prove each and every element of the offense." *United States v. Harra*, 985 F.3d 196, 211–212 (3d Cir. 2021). The civil standards cited by the government do not disturb this principal, since the constitution does not demand civil claims contain a distinct scienter element. *See* Opp. Br. at 16–19 (citing *Omnicare, Inc. v. Laborers Dist. Counsil Constr. Indus. Pension Fund*, 575 U.S. 175 (2015); *Va. Bankshores, Inc. v. Sandberg*, 501 U.S. 1083, 1087 (1991); *Greenberg v. Crossroads Sys. Inc.*, 364 F.3d 657, 670 (5th Cir. 2004); *Johnson v. CBD Energy Ltd*. 2016 WL 3654657, at *9 (S.D. Tex. July 6, 2016); *In re: BP p.l.c. Securities Litig.*, 2016 WL 3090779 (S.D. Tex. May 31, 2016)).

The government attempts to salvage this defect by distancing itself from subsection (2) of 1348, now urging that it alleges "a scheme to defraud" under subsection (1). Opp. Br. at 24. But this is a distinction without a difference. As a factual matter, the government alleges "a fraudulent scheme to deprive victims of money or property through false and misleading representations and material omissions." Opp. Br. at 1. This tracks exactly the language of § 1348(2) (making unlawful "a scheme . . . to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase of sale of" a registered security).

Regardless, as a legal matter, even under subsection (1) a "scheme to defraud" must have "employed false material representations." *United States v. Baker*, 2017 WL 4853811, at *3 (W.D. Tex. Oct. 26 2017) (citing Fifth Circuit Pattern Jury Instruction 2.57). In fairness, the government is correct that half-truths or omissions may render a statement false, as in the insider cases to which it cites. Opp. Br. at 11. But even if the Court permits the unreasonable inference that when Constantinescu retweeted "$CEI 10+" on October 5, 2021 he actually meant he would not sell a

3

single CEI share until CEI reached $10, the government still has failed to allege any objective indicia that the statement was false. And the cases cited by the government to support its "half-truth" and "concealment" of "privately harbored [thoughts]" theories, all involve some verifiable or provable assertion.³ None relied on a defendant's purported subjective intent *without* objective indicia of falsity.

And here, no objective indicia has been alleged that any of Constantinescu's statements were objectively false. In reality, *at that exact same moment in time NASQAQ itself was pumping CEI. See* Motion at 25–26, n.17 (quoting October 22, 2021 article titled "Camber Energy Stock Is A Speculative Bet that Could Pay Off Handsomely").⁴ In that Nasdaq.com article, the nation's largest exchange by volume says "in light of [CEI's] multiple positive catalysts . . . patient investors could profit a great deal from the shares." *Id.* One can remember a time when the government did not have unfettered authority to determine *who is allowed to make such statements*. Apparently, things have changed.

By the way, two weeks earlier, on October 5, 2021, Nasdaq.com had published an article shortly after the release of a 10:00 a.m. short and distort report, listing CEI as one of "7 Popular Penny Stocks That You Shouldn't Touch With a 10-Foot Pole."⁵ Apparently, NASDAQ can change its mind about whether a stock may "pay off handsomely" but Constantinescu cannot. Same story

---

³ *See e.g. United States v. Martino*, 648 F.2d 367, 380 (5th Cir. 1981) (arson ring involving inflated proof of loss statements to collect insurance proceeds); *United States v. Lucas*, 516 F.3d 316, 322 (5th Cir. 2008) (defendants falsely represented house lots as "dry" that were located on wetlands); *United States v. Schmidt*, 229 F.3d 1148, 2000 WL 1239189, at *3 (5th Cir. 2000) (managers of medical malpractice insurer made misrepresentations about promised continued coverage and source of claims payments, failed to maintain coverage and pay claims as promised, signed a secret management contract with a supposed reinsurer, and omitted the fact that 90 percent of profits from the dormant Bahamian company purportedly acting as reinsurer flowed to entity formed by defendants); *United States v. Moser*, 123 F.3d 813, 818–19 (5th Cir. 1997) (involving the use of blank certified money orders as "pretend money" to pay off debts); *United States v. Townley*, 665 F.2d 579, 583 (5th Cir. 1982) (involving misrepresentations in the contents of advertisements in newspapers and correspondence to solicit investment in and purchase of vending machines).
⁴ https://www.nasdaq.com/articles/camber-energy-stock-is-a-speculative-bet-that-could-pay-off-handsomely-2021-10-22 (last visited June 13, 2023).
⁵ https://www.nasdaq.com/articles/7-popular-penny-stocks-that-you-shouldnt-touch-with-a-10-foot-pole-2021-10-05 (last visited June 13, 2023).

with DATS: NASDAQ's InvestorPlace published an article on August 30, 2021 listing DATS as one of "The 6 Best Penny Stocks to Buy for September," *two full weeks before Constantinescu's first tweet about DATS* on September 13, 2021.[6]

The government's improper reliance on the Defendants' purported subjective intent to allege the falsity element is even further highlighted by its response to inadequacies in the alleged conspiracy. In fact, the government agrees that the *underlying conduct*[7] "does not implicate Section 1348 or a related Section 1349 charge," but asserts that when done with the "requisite fraudulent intent" that the conduct can be rendered criminal. Opp. Br. at 36. It cannot be the case that *lawful* conduct becomes criminal through a guessing game into a person's "privately harbored" thoughts.

The government next takes issue with what it refers to as Constantinescu's "incomplete smattering of securities laws," which it deems "random" and "irrelevant." *Id*. at 29. In doing so, it argues: "The fact that this charged scheme was perpetrated on social media *makes the scheme novel as to the means of execution*, but not the scheme's core elements as a fraud, which is the proper level of generality for the vagueness analysis." *Id*. at 28 (emphasis added). But as Constantinescu's Motion repeatedly emphasizes, the government is seeking to apply a novel construction of § 1348, not just based on the means of execution through Twitter, *but based on its position that a non-insider and non-investment adviser has an undefined disclosure obligation related to stock sales outside the bounds of established securities laws*. If the government is aware of some relevant securities law or regulation that requires a non-insider to disclose his stock sales

---

[6] https://investorplace.com/2021/08/the-6-best-penny-stocks-to-buy-for-september/ (highlighting the "buzz" around DatChat's "privacy and protection" on a "blockchain-based communications platform," making DATS "definitely a stock that should be on your watchlist") (last visited June 13, 2023)

[7] Meaning (i) making bona fide market purchases of non-restricted securities at prevailing market prices; (ii) recommending and encouraging others to buy those securities; (iii) speculating about the price those securities might reach; (iv) sharing truthful information about the companies on social media, and (v) making bona fide sales at prevailing market rates of those non-restricted securities without disclosing the sales. *See* Opp. Br. at 36.

5

on Twitter anytime he has tweeted about its future price or that he bought the stock, now would be a good time to tell the Court.

The government, instead, insists that the "relevant duty arose when they chose to post about and trade in stocks." *Id.* at 34. That is, the government asks the Court to create a new, judicially created disclosure requirement: once an individual tweets about the future price of a stock or tweets that he bought that stock, he cannot sell it unless he has made some undefined disclosure, at some unspecified time, on some unidentified forum. Apparently, the Constantinescu's tweet disclosing his sale of CEI shares the next day on October 6, 2021 wasn't good enough:



Nor was the twitter comment Constantinescu sent out one minute after tweeting "$DATS holding shares LT," in which he tweeted that he "sold some shares." [ECF 311 at 5].

And if these weren't good enough, how was Constantinescu supposed to conform his conduct to render it not criminal? Was he supposed to tweet his intent to sell before he sold or after he sold? And how much time before or after? Five seconds? Three hours? Five days or five months? And what needed to be in the disclosure? Does everything required in standard SEC forms fit within in the 280 characters allowed in a tweet? Or could he file on EDGAR 10 days later? And did he have to list the exact amount of shares he sold (or intended to sell)? What if his order didn't fill? Is that too criminal? Or is more speech compelled at that point? And did he need to specify the amount of the company's outstanding shares? How about the price and quantity of his sales? And should he disclose the time of the order or the time of execution? If the government cannot

6

answer these questions, Constantinescu could not conform his conduct to the criminal law, rendering the securities fraud and conspiracy charges against him constitutionally defective. *See City of Chicago v. Morales*, 527 U.S. 41, 58–60 (1999) (recognizing "the purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law" and finding loitering ordinance unconstitutionally vague where "no standard of conduct [was] specified at all"). Perhaps the government will say, he just needed to tweet something to render his statements not false. This is wrong, but the even bigger problem for the government, here, is that Constantinescu never tweeted anything false about these stocks. Beyond the name-calling lies nothing. This isn't for a jury.

Dated: June 19, 2023                                                              Respectfully submitted,

_____
Matthew A. Ford
Texas Bar No. 24119390
mford@fordobrien.com
Cara J. Filippelli
Texas Bar No. 24126183
cfilippelli@fordobrien.com
FORD O'BRIEN LANDY, LLP
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Telephone: (512)-503-6388
Facsimile: (212) 256-1047

*Attorneys for Defendant
Edward Constantinescu*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2023, a true and correct copy of the foregoing document has been electronically served on all counsel of record via the Court's CM/ECF system.

*/s/ Matthew A. Ford*
Matthew A. Ford