**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | Case No. 22-cr-00612 |
| MITCHELL HENNESSEY, | § § | |
| *Defendant*. | § § | |

**MITCHELL HENNESSEY'S REPLY IN SUPPORT OF
<u>MOTION TO DISMISS THE SUPERSEDING INDICTMENT</u>**

The superseding indictment should be dismissed. The government's assertion that Mr. Hennessey had a duty to disclose is directly contradicted by well-established case law and constitutes a grave violation of the First Amendment. It has no place in the American justice system.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT ........................................................................................................1

    1.   The government improperly seeks to create a new, impossible legal duty based on a misstatement and misapplication of the half-truth theory....................................2

        a.   The government's argument relies on a misstatement and misapplication of the half-truth theory. ...................................................................................3

        b.   The government's argument would create an impossible disclosure obligation. ...................................................................................................5

        c.   The cases the government cites do not even support the proposed duty to disclose..........................................................................................................6

    2.   The government's argument that this is a case of "affirmative misrepresentations" is an impermissible constructive amendment and is directly contradicted by the superseding indictment...........................................................7

        a.   The government's argument constitutes a constructive amendment of the superseding indictment. ...........................................................................8

        b.   The government's argument is directly contradicted by the other allegations in the superseding indictment. ...............................................10

            i.    The government's newly propounded definition of "long" is contradicted by the SEC's published definition of "long."............10

            ii.   Even under what the government argues is a "fair reading" of Mr. Hennessey's posts, the superseding indictment alleges he did exactly what he said he would do. .................................................12

                (1)   TRCH "Long"...................................................................12
                (2)   SURF "Long"...................................................................12
                (3)   TRCH "Swing" .................................................................13

            iii.  The government's arguments inevitably fall back on the fatally flawed theory of falsity alleged in the superseding indictment. ....14

        c.   The government's argument is contradicted by the very cases the government cites. ......................................................................................15

    3.   Mr. Hennessey's intent to sell stock when the price increased was so obvious that the alleged nondisclosure could not be materially misleading. ...........................16

    4.   The government's response makes clear that Section 1348, as applied here, is impermissibly vague. ..............................................................................................17

    5.   The government seeks to impermissibly compel speech in violation of the First Amendment through this prosecution.................................................................18

III.  CONCLUSION......................................................................................................19

## I.  INTRODUCTION

The government makes clear in its response to Mr. Hennessey's Motion to Dismiss (ECF 296) that it seeks to create new legal duties through this prosecution that are contrary to well-established law, and to impose impossible disclosure obligations that would both defy logic and common sense and have a dramatic chilling effect on protected speech.

While the government now argues in its response that "this case is about affirmative misrepresentations," the only theory of fraud alleged in the superseding indictment is that Mr. Hennessey's social media posts "were false and misleading, and omitted material information, *because the defendants concealed their intent* to use these messages to induce other investors to purchase securities so that defendants could sell their shares at a higher price at and around the time of the messages." In its response, the government simply ignores the Supreme Court's holding that completely rejected this theory of fraud and attempts to shift to a new theory of fraud by "affirmative misrepresentation"—a theory that is not alleged in the superseding indictment and that is directly contradicted by the allegations in the superseding indictment.

The government takes the extraordinary position in its response that when Mr. Hennessey stated publicly that he had purchased a stock, he was then required to also state "actually I'll start selling within minutes." Anyone with even a rudimentary knowledge of the stock market understands that traders decide when to buy and sell based on price movement, not the passage of a particular amount of time. A trader cannot know how much time will pass for a stock to hit a price target, or even if the stock will *ever* hit the target. The government seeks to impose a duty of disclosure that is impossible to comply with.

## II.  ARGUMENT

The government's arguments in response to Mr. Hennessey's motion to dismiss only serve to further demonstrate that the superseding indictment should be dismissed.

*First*, the government relies on an inaccurate understanding and improper application of the half-truth theory to argue, contrary to well-established case law, that "the duty to disclose arose when Defendants chose to speak on the subject of their stock trades" and "at the point Defendants chose to speak about their stock trading, they assumed the duty to speak fully and truly, not falsely or fraudulently with fraudulent intent." ECF 296 at 13–14. Contrary to the government's argument, the half-truth theory does not create such a sweeping and amorphous duty to disclose.

*Second*, apparently recognizing that the only theory of falsity alleged in the superseding indictment is fatally flawed, the government now argues, inaccurately, that this is a case of "affirmative misrepresentations" even though the superseding indictment does not allege that Mr. Hennessey made any affirmative misrepresentations.

*Third*, the government's arguments in response to Mr. Hennessey's motion makes it clear that the allegedly undisclosed intent to sell could not be materially misleading as a matter of law because it was obvious to anyone who viewed Mr. Hennessey's posts that he intended to sell when the price went up.

*Fourth*, the government's response demonstrates that Section 1348 is unconstitutionally vague as applied in this prosecution, and the superseding indictment fails to allege that Mr. Hennessey acted with the requisite criminal intent.

*Fifth*, the government's efforts to compel speech constitute a dramatic and unprecedented violation of the First Amendment.

For all of these reasons, the superseding indictment should be dismissed.

**1.    The government improperly seeks to create a new, impossible legal duty based on a misstatement and misapplication of the half-truth theory.**

The government's argument that Mr. Hennessey had a duty to disclose when he would sell stock because he posted that he had purchased stock fails because (a) it relies on a misstatement

and misapplication of the half-truth theory, (b) it would impose an impossible disclosure obligation, and (c) it is not even supported by the cases the government cites.

### a. The government's argument relies on a misstatement and misapplication of the half-truth theory.

While the government concedes, as it must, that Mr. Hennessey had no statutory, regulatory, fiduciary, or fiduciary-like duty to disclose when he intended to sell stock,[1] it nonetheless argues, with absolutely no legal support, that "the duty to disclose arose when Defendants chose to speak on the subject of their stock trades." ECF 296 at 12. The government goes on to argue that when Mr. Hennessey chose to post about a stock, he "assumed the duty to speak fully and truly, not falsely or fraudulently." *Id.* at 13. This is not the law, and the government can cite no case to support its assertions.

The government argues that when Mr. Hennessey posted that he was "long" or that he was attempting a "swing" trade, he committed fraud because he did not also post "actually I'll start selling TRCH within minutes" and "but I'll actually start selling my [SURF] shares in minutes." ECF 296 at 16–17. The government makes up this purported disclosure obligation out of thin air. Mr. Hennessey had no independent (statutory, regulatory, fiduciary, or fiduciary-like) duty to disclose when he would sell stock, and the half-truth theory, which the government makes passing reference to, does not support any such expansive duty. *See* ECF 296 at 6, 12, 16–17.

---

[1] The government argues at length that a *statutory or regulatory* duty to disclose is not required to find securities fraud—something that is not in dispute. Mr. Hennessey set forth in his motion to dismiss the legal standard: "When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Chiarella v. United States*, 445 U.S. 222, 235 (1980). Following *Chiarella*, absent a statutory or regulatory requirement, a duty to disclose may arise in only two circumstances: (1) when disclosure is required by virtue of a fiduciary or fiduciary-type relationship; or (2) when disclosure is necessary to make statements that have been made not misleading. ECF 265 at 12–24.

The half-truth theory is premised on a narrow particularity inquiry. Liability can only exist under the half-truth theory if a defendant has made a particular statement on a specific subject. *See SEC v. Mapp*, 240 F. Supp. 3d 569, 584 (E.D. Tex. 2017) ("[T]he half-truth theory of liability requires the omission to be on the same topic as the statement made."). In other words, "the rule is that a duty to speak the full truth *on a particular subject* arises when a defendant undertakes to say anything *on that particular subject*." *McNamara v. Bre-X Minerals, Ltd.*, 57 F. Supp. 2d 396, 416 (E.D. Tex. 1999) (emphasis added). The half-truth theory does not, as the government argues, require a defendant to "dump all known information with every public announcement." *In re K-tel Intern., Inc. Sec. Litig.*, 300 F.3d 881, 898 (8th Cir. 2002).

Without a particular statement about the amount of time he would hold a stock, Mr. Hennessey's statements about stocks cannot be false under the half-truth theory for not disclosing the amount of time he held a stock. Courts strictly apply this particularity requirement because to do otherwise would require anyone talking about a stock to "dump all known information with every public announcement," which is neither practical nor useful. *See, e.g.*:

- *Mapp*, 240 F. Supp. 3d  at 584–85 (noting that to hold Paxton liable for failing to disclose his compensation, he must have actually spoken about that topic; "for example, if Paxton informed his Investment Group that he was only receiving cash for promoting Servergy when in reality he was receiving cash and stock. . . . Because the Commission [did] not identif[y] any statement about compensation, Paxton [could not] be found liable on a half-truth theory of liability");

- *McNamara*, 57 F. Supp. 2d at 416 (finding that even though Barrick, a company that made several direct and public statements to Bre-X shareholders that it was negotiating a joint venture to mine gold in Busang with Bre–X, and that it would be fair to Bre–X shareholders, had no duty to disclose negative gold test results. According to the court, "Such a duty would have arisen had Barrick said something to the effect of 'we know there is gold at Busang, and we will be fair to Bre–X shareholders in attempting to get in on the action,' or 'we have done our own testing and it looks like there is gold there.' In the absence of such statements on the existence of gold at Busang, Barrick was under no duty to disclose the negative test results.");

- *K-tel Intern.*, 300 F.3d at 898 (holding that statements made by K-tel representatives concerning its ability to compete with other online music services, its ability to enhance its brand name, and potential strategic opportunities to grow the company were not rendered misleading simply because the spokespersons did not disclose that K-tel had received a NASDAQ delisting letter because the "delisting letter was unrelated to the subject matter of the statements");

- *FindWhat Inv'r Group v. FindWhat.com*, 658 F.3d 1282, 1306 (11th Cir. 2011) ("Defendant Thune's statement—a general report about an actual increase in total revenue in the preceding month across the Company as a whole . . . — conveyed no message regarding the underlying quality of MIVA's click traffic. Thune's statement did not even mention MIVA's click traffic or click revenue." Accordingly, Thune's statements "did not create a false impression about MIVA's click fraud problems and, therefore, was not misleading under the circumstances." The court noted that to hold otherwise would make any statement concerning factual reporting of past earnings "a treacherous endeavor indeed.").

Here, there is no allegation that Mr. Hennessey ever made a statement about the amount of time that he would hold a stock. Therefore, the half-truth theory provides no support for the government's argument that Mr. Hennessey was required to post "actually I'll start selling TRCH within minutes" and "but I'll actually start selling my [SURF] shares in minutes."

> **b.     The government's argument would create an impossible disclosure obligation.**

The government's argument is not only contrary to the law, it is also completely unworkable. Traders sell stock based on stock price movement, not simply the amount of time that has passed. ECF 296 at 17 (arguing that Mr. Hennessey was required to post "actually, I'll begin selling my TRCH shares in several minutes" and "but I'll actually start selling my [SURF] shares in minutes"). The amount of time it will take a stock to move to a target price is unknowable, unpredictable, and influenced by ever-changing circumstances. Stock movements—up or down— may occur in the span of seconds, minutes, hours, days, or weeks. Under the government's theory, if a trader posts that he has purchased a stock, or anything positive about a stock for that matter, that information is false unless the trader also posts the amount of time he will hold the stock—

something a trader does not and cannot know. The government advocates for a disclosure obligation that is not only contradicted by the law, but that would also be impossible for any trader to comply with.

      **c.**      **The cases the government cites do not even support the proposed duty to disclose.**

The government cites only two cases to support its assertions that "the duty to disclose arose when Defendants chose to speak on the subject of their stock trades" and "at the point Defendants chose to speak about their stock trading, they assumed the duty to speak fully and truly . . .": (1) *United States v. Townley*, 665 F.2d 579, 585 (5th Cir. 1982) and (2) *United States v. Autuori*, 212 F.3d 105, 119 (2d Cir. 2000). The government quotes language from each case regarding the half-truth theory, but neither case relied on the half-truth theory at all, and certainly, neither case supports the government's claim that a sweeping duty to disclose exists for anyone who "cho[oses] to speak on the subject of their stock trades."

First, *Townley* involved a mail fraud scheme in which the defendant, Townley, made numerous affirmative false statements to get people to invest in his non-existent vending machines to purify and dispense water. *Townley*, 665 F.2d at 582–85. *Townley* involved advertisements and investor presentations in which Townley and his partner induced people to invest in their company by stating that they had a patent (they did not); that they had been in the water filtration business for years (they had not); that they had successful water filtration systems installed in grocery stores throughout Texas (no such systems even existed, much less were installed at grocery stores); and showed investors photos of another company's machines, implying that they owned the machinery (they did not). *Id. Townley* had nothing to do with the half-truth theory.

Second, *Autuori*, like *Townley* involved affirmative false statements to investors. *Autuori*, 212 F.3d at 109–13. Autuori was an accountant who learned that the net operating income of a real

estate development project came in millions of dollars below the projection set forth in certain marketing materials. Nevertheless, Autuori continued to market the project to potential investors, assuring them that the forecasts in the marketing materials were "good" and "credible" and emphasizing the "validity and the correctness of the projections" even though he knew that the projections were no longer accurate. *Id.* Thus, the two cases the government cites in support of its assertions that "the duty to disclose arose when [Mr. Hennessey] chose to speak about a stock" and that when Mr. Hennessey chose to post about his trading, he "assumed the duty to speak fully and truly" simply do not support that position at all.

The government's assertion that Mr. Hennessey had a duty to disclose the amount of time he would hold a stock is directly contradicted by well-established case law, is completely unworkable, and even the cases the government cites do not support its assertion that such a duty exists.[2]

> ## 2. The government's argument that this is a case of "affirmative misrepresentations" is an impermissible constructive amendment and is directly contradicted by the superseding indictment.

Apparently recognizing that the only theory of falsity alleged in the superseding indictment is fatally flawed, the government seeks to constructively amend the superseding indictment by now arguing that "[t]his is not a case of 'mere omissions,' but 'affirmative misrepresentations.'" ECF 296 at 13. Despite the government's assertion, the superseding indictment contains absolutely no allegation that Mr. Hennessey ever made an affirmative misrepresentation, and the government has identified none. The government's newly-minted argument that this is a case of "affirmative misrepresentations" accordingly fails because (a) it constitutes an impermissible attempt to constructively amend the indictment; (b) it collapses on itself because it is directly contradicted by

---

[2] Because the superseding indictment fails to allege a valid theory of fraud, it likewise fails to allege an unlawful object of a conspiracy.

the other allegations in the superseding indictment; and (c) all of the cases the government cites only serve to highlight that the superseding indictment alleges only a theory of fraud based on undisclosed intent, not "affirmative misrepresentations."

> a.   **The government's argument constitutes a constructive amendment of the superseding indictment.**

The government seeks to improperly amend the superseding indictment by arguing that this is a case of affirmative misrepresentations. *See* ECF 296 at 13. "The Fifth Amendment provides for criminal prosecution only on the basis of a grand jury indictment. Only the grand jury can amend an indictment to broaden it." *United States v. Doucet*, 994 F.2d 169, 172 (5th Cir. 1993) (citing *Stirone v. United States*, 361 U.S. 212, 215–16 (1960)). Explicit, implicit, or "[c]onstructive amendment requires reversal of the conviction." *Id.* (citing *United States v. Baytank*, 934 F.2d 599, 606 (5th Cir. 1991)).

An impermissible constructive amendment occurs not only when the government changes the offense that it is prosecuting under, but it also applies "where the effective amendment is to *change the theory* under which the government is pursuing conviction for violation of the same statute." *United States v. Doucet*, 994 F.2d 169, 172 (5th Cir. 1993) (emphasis added). What is more, the Fifth Circuit has explicitly held that the government is not permitted to prove a defendant's statement is "untruthful" in a different manner than that charged in the indictment. Specifically, the Fifth Circuit held:

> In accordance with the Supreme Court's decision in *Stirone v. United States*, when the government chooses to specifically charge the manner in which the defendant's statement is false, the government should be required to prove that it is untruthful for that reason. To allow otherwise would permit the jury to convict the defendant on a basis broader than that charged in the grand jury's indictment.

*United States v. Hoover*, 467 F.3d 496, 502 (5th Cir. 2006) (citing *Stirone v. United States*, 361

U.S. 212, 219 (1960)).

The superseding indictment alleges only one theory of falsity:

> These messages were false and misleading, and omitted material information, *because the defendants concealed their intent* to use these messages to induce other investors to purchase the securities so that defendants could sell their shares at a higher price at and around the time of the messages.

ECF 134 at ¶ 14 (emphasis added). It does not allege "affirmative misrepresentations."[3]

The cases the government cites only serve to illustrate that cases involving "affirmative

misrepresentations" are entirely different from the allegations in the superseding indictment. *See,*

*e.g.*:

- *Townley*, 665 F.2d at 582–85 (alleging defendant lied to potential investors that he had a patent (when he did not), that he had successfully run a water purification business (when he had not), that he had water filtration systems installed in grocery stores around Texas (when he had none), and presented photographs of another company's purification equipment (implying it was his own), all to induce people to invest in his company);

- *Autuori*, 212 F.3d at 109–13 (alleging defendant made affirmative misrepresentations to potential investors that the projections contained in marketing materials were "good" and "credible" and emphasized the "validity and the correctness of the projections" when he knew that the actual net operating income results were far lower, and the projections were no longer accurate);

- *United States v. Biesiadecki*, 933 F.2d 539, 542 (7th Cir. 1991) (alleging defendant broker falsely stated in sales pitches that he "always made money for his clients" even though 90% of them lost money).

---

[3] On June 15, 2023, the government produced a list of 72 allegedly false statements made by Mr. Hennessey. The government has identified no basis for claiming these statements were false or misleading other than paragraph 14 of the superseding indictment. The government also produced on June 15 the trades that purportedly support the $114 million figure alleged in the superseding indictment, but the list provide by the government actually adds up to more than $121 million, a significant variance from the allegation. It seems that the list the government produced to the defendants on June 15, 2023 is not the list the government presented to the grand jury. The government cannot supplant its own allegations for those of the grand jury.

The superseding indictment simply contains no allegation that Mr. Hennessey made any "affirmative misrepresentation," and the government cannot impermissibly amend the superseding indictment to now argue that it does.

### b. The government's argument is directly contradicted by the other allegations in the superseding indictment.

Significantly, the government's argument that the superseding indictment alleges "affirmative misrepresentations" falls apart when read alongside other allegations in the indictment that directly contradict the government's newly-minted argument.[4] First, the government seeks to create a new definition of "long" that is contradicted by the SEC's published definition of "long." Second, the superseding indictment actually alleges that Mr. Hennessey did exactly what he said he would do in his posts even under what the government now argues is a "fair reading" of his posts. Third, the government's argument that this is a case of "affirmative misrepresentations" inevitably falls back on the theory of falsity by undisclosed intent that is the only theory of fraud alleged in the superseding indictment.

### i. The government's newly propounded definition of "long" is contradicted by the SEC's published definition of "long."

The government makes the stunning assertion in its response that *the SEC's definition* of "long" is "contrived, tortured, and misleading." ECF 296 at 15. This argument is as hollow as it is odd. *Cf. United States v. Harra*, 985 F.3d 196, 213 (3d Cir. 2021) ("[W]here falsity turns on how an agency has communicated its reporting requirements to the entities it regulates and those communications are ambiguous, fair warning demands that the Government prove a defendant's statement false under each objectively reasonable interpretation of the relevant requirements.").

---

[4] The superseding indictment does not allege that Mr. Hennessey made any statements whatsoever regarding RGLS or ALZN, the subjects of Counts 8, 9, and 11. And the government does not even mention these counts or stocks in its response.

**MITCHELL HENNESSEY'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS THE SUPERSEDING INDICTMENT**                              **PAGE 10**

In an effort to create a new theory of falsity, the government now argues that "long" refers to a length of time, though the government cannot say *what* that purported length of time is.[5] In its effort to cobble together some support for its new theory, the government takes a sentence in an Investopedia article out of context. *Compare* ECF 296 at 15, *with* Adam Hayes, *Long Position: Definition, Types, Example, Pros and Cons*, Investopedia (Oct. 6, 2021), available at https://www.investopedia.com/terms/l/long.asp (last visited June 20, 2023). The sentence the government quotes immediately precedes a discussion of how it is "most common" for people to invest for the "long run"—over the span of several years for anticipated life events such as paying for expenses during retirement or a child's college tuition. The sentence quoted by the government is about long-term investing and is inapplicable to the superseding indictment, which alleges that Mr. Hennessey was a trader and held himself out to be a trader, not a long-term investor.

Of course, the word "long" has multiple meanings depending on the context in which it is used. But in the trading context, there is no ambiguity. It means what the SEC says it means: "Having a 'long' position in a security means that you own the security." Investor.gov, *Stock Purchases and Sales: Long and Short*, available at https://www.investor.gov/introduction-investing/investing-basics/how-stock-markets-work/stock-purchases-and-sales-long-and (last visited June 20, 2023).

---

[5] Certainly, the meaning of the term "long" has absolutely no relevance to many of Mr. Hennessey's statements the government included on its list of allegedly false statements produced on June 15, 2023. *See, e.g.*, "i added YVR"; "i took AREC"; "i like that cscw"; "i still thin ntec can see 10"; "added wwr."

     **ii.**      **Even under what the government argues is a "fair reading" of Mr. Hennessey's posts, the superseding indictment alleges he did exactly what he said he would do.**

     **(1)**     **TRCH "Long"**

The government argues that "a fair reading of [Mr. Hennessey's tweet 'Long TRCH for merger'] is that he was 'going long' or holding TRCH until the company's merger, or at least long enough for the merger information to significantly impact the stock price." ECF 296 at 16. Yet that is exactly what the superseding indictment alleges Mr. Hennessey did. ECF 134 at ¶ 32–42. The superseding indictment alleges that between about 7:00 a.m. and 10:11 a.m. (EST), Mr. Hennessey bought shares of TRCH at an approximate average price of $1.83 (ECF 134 at ¶ 33) and held shares until the price went up to approximately $2.60 (*id.* at ¶ 39)—an increase of more than 42%—over the span of several hours. The superseding indictment alleges that Mr. Hennessey profited $166,274.40 due to this significant price increase. ECF 134 at ¶ 39. Thus, the superseding indictment actually alleges that Mr. Hennessey held TRCH "long enough for the merger information to significantly impact the stock price"—exactly what the government now argues Mr. Hennessey meant when he stated he was "Long TRCH for merger." ECF 296 at 16. Even under the government's newly-minted argument, the superseding indictment does not allege falsity because it alleges that Mr. Hennessey's did exactly what the government now argues was meant by his post "Long TRCH for merger."

     **(2)**     **SURF "Long"**

The same is true for Mr. Hennessey's other statement that he was "long." The government now argues that "a fair reading of [Mr. Hennessey's post 'I am long $SURF. . . '] is that [Mr. Hennessey] was 'long' and would be so for longer than the next few minutes or hours." ECF 296 at 17. The superseding indictment alleges that Mr. Hennessey held SURF stock for somewhere between 13 and 22 days—far "longer than the next few minutes or hours." See ECF 134 at ¶ 55,

61. Thus, the government's new argument that Mr. Hennessey's post "I am long $SURF" was an "affirmative misrepresentation" because he meant that he would hold it "longer than the next few minutes or hours" cannot be false according to the superseding indictment, which actually alleges that Mr. Hennessey held SURF for about two weeks after his post. *Id.*; ECF 296 at 17.

### (3)    TRCH "Swing"

Similarly, the government argues that "a reasonable reading of [Mr. Hennessey's post 'New swing $TRCH . . .'] is that [Mr. Hennessey] planned to 'swing' TRCH into the future toward or past the anticipated merger." Again, even if one were to accept the government's argument, Mr. Hennessey's statement cannot be false in light of the other allegations in the superseding indictment.

The government itself notes that "[s]wing trades can also occur during a trading session, though this is a rare outcome that is brought about by extremely volatile conditions." ECF 296 at 16. Thus, there is and can be no dispute that a "swing" trade can occur during one trading session, and the superseding indictment alleges "extremely volatile conditions" for TRCH by alleging a price increase of more than 42% over the span of just several hours.

The superseding indictment actually alleges that Mr. Hennessey held "TRCH into the future toward . . . the anticipated merger" as the government now argues his post conveyed. ECF 134 at ¶ 33–34, 38–39. It should go without saying that "the future" includes one second from now as much as it includes one century from now. *See* Merriam-Webster (defining "future" as "time that is to come") at https://www.merriam-webster.com/dictionary/future (last accessed June 20, 2023). The superseding indictment alleges that Mr. Hennessey held TRCH for several hours after his tweet, that is, the superseding indictment actually alleges that Mr. Hennessey held TRCH "into the future toward . . . the anticipated merger," precisely what the government now argues he conveyed through his post "New swing $TRCH . . . ." ECF 134 at ¶ 33–34, 38–39.

iii.     **The government's arguments inevitably fall back on the fatally flawed theory of falsity alleged in the superseding indictment.**

While the government seeks to amend the superseding indictment by arguing that this is a case of "affirmative misrepresentations," it nonetheless invariably falls back on the fatally flawed theory of fraud based on undisclosed intent alleged in the superseding indictment. *See* ECF 296 at 16–17. The government argues: "Indeed, at the very least it is misleading to suggest one is 'Long TRCH for merger,' but to omit that 'actually I'll start selling TRCH within minutes.'" ECF 296 at 16. This is precisely the theory of fraud rejected by the Supreme Court. *See Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 1096 (1991) ("We therefore hold disbelief or undisclosed motivation, standing alone, insufficient to satisfy the element of fact that must be established" to demonstrate a violation of securities laws.); *United States v. Causey*, No. CRIM. H-04-025-SS, 2005 WL 2647976, at *6 (S.D. Tex. Oct. 17, 2005) (same).

The government repeats this argument that Mr. Hennessey's posts were "misleading" simply because he did not disclose his purported "intent" to sell his shares "within minutes." Regarding Mr. Hennessey's post, "I am long $SURF," the government argues that "it is at the very least misleading not to include, 'but I'll actually start selling my shares in minutes.'" ECF 296 at 17. And regarding Mr. Hennessey's post, "Only way I'll be out of this one is if bad catalyst. Long and strong babyyy . . . ." the government argues, "It seems an important omission not to indicate that, in fact, Defendant was already in the midst of getting 'out' by selling his shares when he posted that." *See* ECF 296 at 17. In making this last argument the government ignores that the superseding indictment actually alleges that Mr. Hennessey continued holding SURF shares for

about two weeks after this post, rather than "getting out" of SURF when he posted.[6] ECF 134 at ¶ 61.

Repeatedly, the government demonstrates that its entire theory of falsity hinges on the alleged undisclosed intent to sell shares at the time of the posts—the only theory alleged in the superseding indictment and a theory that has been soundly rejected by the Supreme Court.

> **c.      The government's argument is contradicted by the very cases the government cites.**

Without explanation, the government cites only one case, *Biesiadecki*, 933 F.2d at 543, after its assertion that this is a case of "affirmative misrepresentations." ECF 296 at 13. But *Biesiadecki* provides absolutely no support for the government's argument.

Unlike the superseding indictment, *Biesiadecki* actually involved affirmative misrepresentations. Biesiadekci was a commodities broker who was charged with fraudulently soliciting over $2 million from 111 customers. *Biesiadecki*, 933 F.2d at 540. "The government elicited testimony from Biesiadecki's former customers concerning affirmative misrepresentations that his customers 'are very pleased with him' and that he 'always made money for his clients,'" even though in reality, more than 90 percent of his clients lost money. *Id.* at 542. In explaining that the government's case was not based on "mere omissions," the court explained: "the government presented extensive evidence of Biesiadecki's affirmative misrepresentations concerning his customers' investment successes and in conjunction with that evidence also elicited testimony that Biesiadecki failed to inform prospective investors of the losses sustained by the majority of his customers." *Id.* at 543. Simply put, Biesiadecki made specific affirmative misrepresentations to

---

[6] The superseding indictment does not allege that Mr. Hennessey posted about the number of shares he had, so a reader would not know if Mr. Hennessey had 10 shares or 10,000 shares when he posted that he was "long" or attempting a "swing" trade, and therefore, could have no expectation about the number of shares Mr. Hennessey would own "in the future."

prospective investors that he "always made money for his clients" that simply were not true. *See id.* at 542–43. *Biesiadecki* thus provides no support whatsoever for the government's argument that the superseding indictment alleges "affirmative misrepresentations."

In short, the only falsity alleged in the superseding indictment is that Mr. Hennessey's statements were rendered "false and misleading, and omitted material information, *because the defendants concealed their intent* to use these messages to induce other investors to purchase the securities so that defendants could sell their shares at a higher price at and around the time of the messages." ECF 134 at ¶ 14 (emphasis added). The government cannot now constructively amend the superseding indictment to save it from this fatally flawed theory of falsity.

### 3. Mr. Hennessey's intent to sell stock when the price increased was so obvious that the alleged nondisclosure could not be materially misleading.

The government fails to even address the obvious and unavoidable reality in this case that any reader of Mr. Hennessey's posts would have known that Mr. Hennessey intended to sell his stock when the price went up. The superseding indictment alleges that Mr. Hennessey disclosed that (1) he himself was a trader; (2) he himself had purchased the stock about which he posted; and (3) he had taken a "long" position, meaning that he would profit if he sold the stock when the price went up. ECF 134 at ¶¶ 10, 13, 34, 57. Any reader of Mr. Hennessey's posts would know immediately that Mr. Hennessey hoped and intended to profit off of a price increase in the stock. Thus, Mr. Hennessey's allegedly undisclosed intent to sell the stock around the time of his posts could not have been materially misleading because it was already obvious to any reader that Mr. Hennessey intended to sell stock when the price went up. And nobody, not even Mr. Hennessey, could predict the amount of time that would pass for that price movement to occur.

**4.      The government's response makes clear that Section 1348, as applied here, is impermissibly vague.**

The government argues that any "vagueness concerns" are alleviated by Section 1348's "scienter requirement." The government then incorrectly states that the scienter requirement is that "they knew *exactly* what they were doing when they were doing it." ECF 296 at 24 (emphasis in original). That is not the proper standard for intent, and the superseding indictment does not allege that Mr. Hennessey had "a conscious, knowing intent to deceive or cheat someone." *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (defining "intent to defraud" under 18 U.S.C. §§ 1341 & 1346). The government's response highlights that the superseding indictment does not allege that Mr. Hennessey acted with the requisite intent. Indeed, in support of its argument that the superseding indictment alleges intent, the government cites only statements of other defendants. *See* ECF 296 at 24. The government does not, and cannot, allege any evidence that *Mr. Hennessey* ever intended to deceive or cheat someone.

The complete failure to allege intent as to Mr. Hennessey is apparent in the government's bewildering argument that Mr. Hennessey's statement that he "could be buying or selling any stock mentioned at any time" is evidence of fraudulent intent. ECF 269 at 24 ("Indeed, if Defendant had no idea what he was doing was wrong, why bother with the 'disclaimers' he's so keen to point out?"). The government argues at length that Mr. Hennessey committed fraud because he did not post "actually, I'll begin selling my TRCH shares in several minutes" and "but I'll actually start selling my [SURF] shares in minutes"—time frames he could not possibly know or accurately predict. ECF 296 at 17. And yet, in the same brief, the government argues that Mr. Hennessey's truthful statement, "I actively trade positions & could be buying or selling any stock mentioned at any time," is evidence of fraud. ECF 296 at 24. The hypocrisy is jarring.

Mr. Hennessey's statement that he could be buying or selling any stock he mentioned at any time completely defeats both the theory of fraud by undisclosed intent alleged in the superseding indictment, and the government's newly-minted theory of fraud by "affirmative misrepresentation." Apparently, the government was not even aware of the full posts until Mr. Hennessey filed his motion to dismiss.[7] The government has not produced Mr. Hennessey's full posts in discovery and now states that it is has not even accessed the posts online.[8] ECF 296 at 23 n.13.

### 5.   The government seeks to impermissibly compel speech in violation of the First Amendment through this prosecution.

In its efforts to salvage this misguided prosecution, the government has ventured far beyond the bounds of the law and common sense. The government seeks to compel speech in an unprecedented manner. The government would force a trader to not only post proprietary trading strategy, but also to affirmatively state something that is completely unknown and unknowable— the amount of time the trader will hold a stock. The government even goes so far as to argue that Mr. Hennessey committed fraud by not responding to a question posted by some unknown individual on Twitter. ECF 296 at 17.

The government does not seem to grasp the gravity of what it is proposing. The inevitable result of the government's proposed new disclosure obligation would be a dramatic restraint of protected pure speech. The government does not even attempt to identify a compelling interest to justify such an incursion on the constitutional right to freedom of speech. It merely argues that it has alleged fraud and advises the Court to "take the [First Amendment] analysis no further." *See*

---

[7] It is apparent that the government did not present Mr. Hennessey's full posts to the grand jury, calling into question the presentation to the grand jury and validity of the superseding indictment.
[8] Mr. Hennessey's counsel confirmed on June 21, 2023 that all of the links cited are accurate and work.

ECF 296 at 27. But the superseding indictment does not allege a valid theory of fraud, and the government's efforts to compel speech are a significant constitutional violation.

### III.  CONCLUSION

For the reasons set forth, Mr. Hennessey respectfully moves the Court to dismiss the superseding indictment.

Respectfully submitted,

**JACKSON WALKER LLP**

*/s/ Laura M. Kidd Cordova*
Laura M. Kidd Cordova
State Bar No. 24128031
lcordova@jw.com
Michael J. Murtha
State Bar No. 24116801
mmurtha@jw.com
1401 McKinney St, Suite 1900
Houston, Texas 77010
(713) 752-4449
(713) 752-4221 (Facsimile)

**ATTORNEYS FOR DEFENDANT
MITCHELL HENNESSEY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 22, 2023, a true and correct copy of the foregoing was served electronically via the Court's CM/ECF system.

*/s/ Laura M. Kidd Cordova*
Laura M. Kidd Cordova
