IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD CONSTANTINESCU,<br>PERRY "PJ" MATLOCK,<br>JOHN RYBARCZYK,<br>GARY DEEL,<br>STEFAN HRVATIN,<br>TOM COOPERMAN,<br>MITCHELL HENNESSEY,<br>DANIEL KNIGHT. | No. 4:22-CR-00612-S |

**DEFENDANT EDWARD CONSTANTINESCU'S REPLY BRIEF
IN FURTHER SUPPORT OF DEFENDANT RYBARCZYK'S MOTION TO EXCLUDE
EXTRANEOUS "EPISODES" JOINED BY DEFENDANTS MATLOCK, DEEL,
HVARTIN, AND COOPERMAN**

Defendant Edward Constantinescu submits this reply brief in further support of Defendant Rybarczyk's motion to exclude extraneous "episodes" at trial. Constantinescu urges this Court to limit the government's case to crimes it actually charged. The government's proposal, by contrast, permits evidence of Constantinescu purportedly engaging in at least 29 (but as many as 378) disputed stock "episodes"[1]. The government claims that it needs evidence of these other, different stock transactions to prove "conspiracy" and to prove the defendants' "intent."

---

[1] The government has adopted the misleading term "episode" to describe situations where Constantinescu may or may not have traded a specific public company's stock during an arbitrary time frame regardless of whether his co-defendants also traded that company's stock, regardless of whether he ever tweeted or made a social media post about it, and regardless of whether he ever communicated in any manner about it to anyone. By way of limited example, in one of the government's "episodes" that it seeks to introduce at trial, Constantinescu is alleged to have engaged in a conspiracy to commit securities fraud on January 13, 2021 with regard to stock ticker JAGX, which the United States Congress and the Securities and Exchange Commission have defined as a Meme Stock due to its price and volume volatility during January 2021. Of the eight co-defendants, only Matlock traded JAGX during that time frame: he made $257. Only co-defendant Rybarczyk tweeted about it: he posted a single tweet that read: "$JAGX Monster 😳".

1

This Court should limit the government's proof to what it chose to charge to prevent confusion and undue delay.  The government has not satisfied the requisite Fifth Circuit showing required for the admission of extrinsic evidence nor has it provided this Court with anything other than a summary statement to suggest that the evidence is intrinsic. The government's opposition brief purports to describe one "episode," which does not involve Constantinescu at all: he never traded that stock, SNOA, or communicated about it.  Accordingly, we respectfully request that the Court grant Defendants' requested relief and reject the government's attempt to include at least 35 but as many as 378 "episodes" beyond the 19 charged in the Superseding Indictment.

**I.      The government's claims about its extraneous uncharged acts are misleading as to Constantinescu.**

The necessary length of trial is directly tied to (1) how many stock "episodes" the government intends to present and (2) how many of the defendants the government tries to prove were a part of the "conspiracy" for that particular stock trading "episode."  The government seeks to increase both factors exponentially. It argues that its proffered episodes amount to "roughly 5 to 10 episodes per Defendant" (Resp. at 1), but that is just bad math. Of the 54 separate episodes the government now highlights in this ever-shifting case, the government has listed Constantinescu as being involved in *29 of them*—far more than somewhere between "roughly 5 to 10."

The government's characterization that 19 of the 54 episodes are "the substantive securities fraud counts" in the Superseding Indictment is also misleading as to Constantinescu. Constantinescu is charged in only five substantive securities fraud counts, two of which he is the sole defendant to those substantive charges.  Yet, the government is attempting to introduce evidence that Constantinescu, while not charged, somehow participated in *eleven* of the

substantive trading episodes, each time with different groups of co-defendants. In other words, it seeks to prove Constantinescu's guilt by pointing to events where the grand jury considered charges for other defendants and Constantinescu has not been charged with these offenses.

A chart comparing what the Superseding Indictment charges to what the government is trying to include against Constantinescu at trial is below, which highlights why the government's request is going to lengthen trial *significantly*:

| Charged Count | Superseding Indictment | Government's Current Request |
|---|---|---|
| 1 | Constantinescu charged with conspiracy involving CEI (8/2021-10/2021), DATS (8/2021-10/2021), and BBI (4/2022). | Permit the government to introduce at least 29 but as many as 378 different episodes of stock trades against Constantinescu that occurred between 1/2020 and 4/2022. |
| 2 | Constantinescu sole defendant charged for trading ONTX (7/2020-8/2020). | Permit the government to introduce evidence of both Constantinescu's *and other individuals'* trades and communications. |
| 3 | Constantinescu not charged. | N/A |
| 4 | Constantinescu not charged. | Permit the government to introduce evidence against *Constantinescu* involving this charge. |
| 5 | Constantinescu not charged. | Permit the government to introduce evidence against *Constantinescu* involving this charge. |
| 6 | Constantinescu not charged. | Permit the government to introduce evidence against *Constantinescu* involving this charge. |
| 7 | Constantinescu not charged. | N/A |
| 8 | Constantinescu not charged. | N/A |
| 9 | Constantinescu not charged. | N/A |
| 10 | Constantinescu not charged. | N/A |
| 11 | Constantinescu not charged. | Permit the government to introduce evidence against *Constantinescu* involving this charge. |
| 12 | Constantinescu not charged. | N/A |
| 13 | Constantinescu not charged. | N/A |
| 14 | Constantinescu and one other defendant charged for trading CEI (9/2021-10/2021). | Permit the government to introduce evidence of Constantinescu's and others' trades. |
| 15 | Constantinescu and one other defendant charged for trading DATS (8/2021-10/2021). | Permit the government to introduce evidence of Constantinescu's and others' trades. |
| 16 | Constantinescu not charged. | Permit the government to introduce evidence against *Constantinescu* involving this charge. |
| 17 | Constantinescu not charged. | Permit the government to introduce evidence against *Constantinescu* involving this charge. |
| 18 | Constantinescu sole defendant charged for trading MYSZ (10/2021-11/2021). | Permit the government to introduce evidence of both Constantinescu's *and other individuals'* trades and communications. |
| 19 | Constantinescu not charged. | N/A |
| 20 | Constantinescu sole defendant charged for trading BBI (4/2022). | Permit the government to introduce evidence of both Constantinescu's *and other individuals'* trades and communications. |

| | | |
|---|---|---|
| Uncharged | BAOS appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, BAOS in 4/2022. |
| Uncharged | CNTX appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, CNTX from 10/2021-12/2021. |
| Uncharged | FCEL appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, FCEL in 10/2021. |
| Uncharged | METX appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, METX in 10/2021. |
| Uncharged | MFH appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, MFH in 3/2021. |
| Uncharged | Count Two charges Constantinescu as a *sole defendant* involving ONTX in *7/2020-8/2020* | Permit the government to introduce evidence of both Constantinescu's trading of, and communications involving, ONTX in *2/2021-3/2021*, along with *other individuals'* trades and communications. |
| Uncharged | XRTX appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, XRTX in 11/2021. |
| Uncharged | ZSAN appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, ZSAN in 3/2022-4/2022. |
| Uncharged | ACST appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, ACST in 6/2020. |
| Uncharged | BBIG appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, BBIG in 4/2021. |
| Uncharged | GRTX appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, GRTX in 10/2021. |
| Uncharged | HCDI appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, HCDI in 5/2021. |
| Uncharged | HCDI appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, HCDI in 11/2021. |
| Uncharged | KAVL appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, KAVL in 10/2021. |
| Uncharged | KXIN appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, KXIN in 2/2021. |
| Uncharged | MDRR appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, MDRR in 5/2021. |
| Uncharged | NETE appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, NETE in 10/2020. |

| | | |
|---|---|---|
| Uncharged | PPSI appears nowhere in the Superseding Indictment | Permit the government to introduce evidence of Constantinescu's trading of, and communications involving, 1/2021. |

In other words, while the Superseding Indictment charges Constantinescu with only six securities-related charges that identify 5 substantive stock transactions that are in dispute, the government now wants to make Constantinescu defend nearly *six times but as many as 75 times* as many stock transactions at trial. Even a rudimentary estimate suggests that this will take significantly longer to defend and deconstruct than if the Court limits the government to the allegations in the Superseding Indictment.

These extra episodes involve different stocks, different configurations of co-defendants with whom the government claims Constantinescu was conspiring, different companies, different news, different relevant market factors, and different time frames. They do not involve, in any way, similar, overlapping proofs and will require just as long to properly deconstruct as the actual charges in this case. Constantinescu will have to show, as to each of these additional, uncharged episodes, what news and market factors were happening with the company, his trading profile and strategy, the stock's metrics, what other information about the stocks and their pricing was readily available in the public market, and a host of other factors to defend against the government's theory about Constantinescu's tweets.

The government does not describe how introduction of 35 (or 378) additional trades of different stocks—with varying subsets of co-defendants conducting different trades at different times—is necessary or appropriate trial evidence. Nor does the government explain what purpose the *250+ other exhibits on their exhibit list* (that is, exhibits that are beyond the "core proof" of the government's charged stock transactions) serve if they do not prove the conspiracy and criminal intent. As discussed further below, the evidence the government hopes to introduce

does not reflect a conspiracy; it is inappropriate purported propensity evidence that must be excluded under Rule 403.

II. **The government has not made an appropriate showing required by *Beechum* that any of its extrinsic evidence is appropriately admitted against Constantinescu.**

The government argues that it should be permitted to introduce evidence of 18 (but as many as 378) completely uncharged stock transactions against Constantinescu as extrinsic evidence. The government does not cite or satisfy the long-standing requisite Fifth Circuit test in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) and does not analyze or explain how any evidence involving any of the 18 uncharged stock transactions serves a non-propensity purpose in its case against Constantinescu. Indeed, the sole set of exhibits described by the government in its response does not even involve Constantinescu at all.

The purpose of Rule 404(b) is to "guard against the inherent danger that the admission of 'other acts' evidence might lead a jury to convict a defendant not of the charged offense, but instead of an extrinsic offense." *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007). That's what the government wants the jury to do here.

First, the government has not shown that the 18 (or 378) uncharged additional stock transactions involve Constantinescu engaging in something that would be considered a crime. As made clear by the Fifth Circuit in *Beechum*, extrinsic evidence is only relevant to the issue of intent "if an offense was in fact committed and the defendant committed it." 582 F.2d at 912. Thus, "as a predicate to a determination that the extrinsic offense is relevant, the Government must offer proof demonstrating that the defendant committed the offense." *Id.* at 912-13. If the government fails to provide the proof, it must be excluded as irrelevant. *Id.*

6

For many, if not all, of the additional 18 (or 378) stock transactions, the government has proffered no evidence of an agreement, no evidence of a conspiracy, no evidence of intent, no evidence of coordination amongst any co-defendants, no evidence of falsity, no evidence of causation, no evidence of materiality, no evidence of *any of the essential elements of a crime* as to these additional stock transactions. Instead, the government relies solely on a dense, confusing excel spreadsheet. In other words, the government wants to show the jury a spreadsheet reflecting transactions and statements that the government has labeled "false," and nothing more.[2] Here is an example:

| Account Name | Brokerage | Activity | Date | Time | Side | No. Shares | Price ($) | Volume ($) | Total No. Shares | Profit (FIFO) | False/Misleading Flag |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Constantin, Edward | TD Ameritrade | Trade | 10/26/2021 | 12:53:11 PM | BUY | 50,000 | $ 1.88 | $ 93,907 | 150,862 | | |
| Constantin, Edward | TD Ameritrade | Trade | 10/26/2021 | 12:53:19 PM | BUY | 50,000 | $ 1.89 | $ 94,365 | 200,862 | | |
| Constantin, Edward | TD Ameritrade | Trade | 10/26/2021 | 12:53:36 PM | BUY | 1,000 | $ 1.84 | $ 1,835 | 201,862 | | |
| Constantin, Edward | TD Ameritrade | Trade | 10/26/2021 | 12:53:38 PM | BUY | 2,720 | $ 1.83 | $ 4,968 | 204,582 | | |
| Constantin, Edward | TD Ameritrade | Trade | 10/26/2021 | 12:53:39 PM | BUY | 3,871 | $ 1.83 | $ 7,084 | 208,453 | | |
| Constantin, Edward | TD Ameritrade | Trade | 10/26/2021 | 12:53:40 PM | BUY | 6,500 | $ 1.83 | $ 11,925 | 214,953 | | |
| Constantin, Edward | TD Ameritrade | Trade | 10/26/2021 | 12:53:41 PM | BUY | 50 | $ 1.85 | $ 92 | 215,003 | | |
| Constantin, Edward | TD Ameritrade | Trade | 10/26/2021 | 12:53:42 PM | BUY | 1,200 | $ 1.85 | $ 2,214 | 216,203 | | |
| Constantin, Edward | TD Ameritrade | Trade | 10/26/2021 | 12:53:45 PM | BUY | 32,400 | $ 1.85 | $ 59,890 | 248,603 | | |
| Constantin, Edward | TD Ameritrade | Trade | 10/26/2021 | 12:53:46 PM | BUY | 32,180 | $ 1.86 | $ 59,751 | 280,783 | | |
| Constantin, Edward | TD Ameritrade | Trade | 10/26/2021 | 12:53:47 PM | BUY | 1 | $ 1.87 | $ 2 | 280,784 | | |
| Constantin, Edward | TD Ameritrade | Trade | 10/26/2021 | 12:53:48 PM | BUY | 35,573 | $ 1.87 | $ 66,625 | 316,357 | | |
| Constantin, Edward | TD Ameritrade | Trade | 10/26/2021 | 12:53:49 PM | BUY | 84,505 | $ 1.90 | $ 160,255 | 400,862 | | |
| Constantin, Edward | TD Ameritrade | Trade | 10/26/2021 | 12:54:49 PM | BUY | 200,000 | $ 1.90 | $ 380,399 | 600,862 | | |
| Constantin, Edward | | Tweet | 10/26/2021 | 12:55:46 PM | $MYSZ I slapped the dip | | | | | | 1 |

Edward Constantin (@MrZackMorris / Zack Morris#0001)
Trade, Tweet, and Discord Activity in MYSZ between October 26, 2021 and November 02, 2021

In this brief excerpt, the government has converted a tweet into plain text, highlighted an objectively true statement yellow, and added a "1" in the false/misleading column. The government cannot be allowed to suggest criminality solely through a created chart that labels objectively true statements as "false" under the guise that it is "streamlining" its proofs.

Second, the government does not articulate how any piece of its proffered 18 (or 378) additional stock transactions is relevant to prove charges against Constantinescu. The government completely fails to connect the dots as to how engaging in unrelated stock transactions and talking about those stocks at different periods of time makes it more or less likely that Constantinescu intended to cause a property harm to someone who saw his tweets

---

[2] Constantinescu intends to challenge the admissibility of any of these misleading charts on several grounds in his motions *in limine*.

about different stock transactions. One has nothing to do with the other. Constantinescu made *tens of millions of dollars* on stock trades that the government has not alleged (either in the 378 uncharged transactions or in the charged transactions) involved any criminal conduct. And the government has now repeatedly conceded that it does not intend to argue at trial that Constantinescu or any of his co-defendants did anything—not their tweets nor their trading—to actually *cause* the stock prices to change one way or the other. Under those circumstances, additional misleading charts involving other stocks do not make Constantinescu's intent, motivation, or participation in a conspiracy more or less likely—they are inappropriate purported propensity evidence.

      The government also does not address the second prong of *Beechum*, which requires an analysis that the probative value of extrinsic evidence exceeds its prejudicial effect. Two examples below highlight how the government's proffered evidence against Constantinescu as to these 18 (or 378) additional stock transactions is cumulative, unduly prejudicial, will confuse the issues before the jury, will mislead the jury, and will cause undue delay.

      For example, the government claims that it intends to present Government Exhibit 525 as additional, uncharged evidence against Constantinescu in support of the conspiracy charge. Exhibit 525 addresses stock trades involving Meme Stock KXIN (ticker for electric vehicle manufacturer Kaixin Auto Holdings) for two days in February 2021, a stock that is not in the Superseding Indictment. While Constantinescu is prominently listed as taking part in this trading episode, and his profits prominently displayed on the first page of the exhibit, *the government admits that he did not post anything about the stock during the time period at issue*. The government has not identified *any* indicia of falsity or a single conversation between Constantinescu and any other co-defendant regarding this "episode."

| Episode 191: Trading in KXIN between February 10, 2021 and February 11, 2021 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Last Name, First Name | Twitter Handle | Discord Handle | # of Twitter Posts | # of Discord Posts | # of Shares Bought | # of Shares Sold | Profit (FIFO) |
| Rybarczyk, John | @Ultra_Calls | Ultra#0374 | 4 | - | 150,000 | 150,000 | $ 94,303 |
| Constantin, Edward | @MrZackMorris | Zack Morris#0001 | - | - | 301,925 | 301,925 | $ 69,838 |
| Matlock, Perry "PJ" | @PJ_Matlock | PJ Matlock#0001 | 3 | 3 | 80,445 | 80,445 | $ 48,582 |
| Hennessey, Mitchell | @hugh_henne | HoodHughBear🐻#4034 | - | 1 | 25,250 | 25,250 | $ 9,086 |
| Sabo, Francis | | Ricky Bobby 🏁#7407 | - | 3 | 50,000 | 50,000 | $ 3,168 |
| Knight, Daniel | @DipDeity | Dan, Deity of Dips#8114 | - | - | 7,150 | 7,150 | $ 2,724 |
| Cooperman, Tom | @ohheytommy | TOMMY COOPS #5323 | - | - | 2,684 | 2,684 | $ 1,043 |
| Total | | | 7 | 7 | 617,454 | 617,454 | $ 228,745 |

**Notes:**
"Profit (FIFO)" calculates a profit for every sale equal to the sale price minus the purchase price of the earliest-purchased shares not yet matched to a sale.
"# of Twitter Posts" and "# of Discord Posts" represents the number of public Twitter posts and Discord messages, respectively, by a trader during the episode that either (i) have been alleged to be false by the DOJ or (ii) refer to KXIN.

There is no other evidence that the government has identified that it wishes to introduce for this stock trade. No conversations regarding this stock, no agreement regarding this stock, no meeting of the minds, no evidence as to how Constantinescu's silence somehow places him in a criminal conspiracy involving this stock. And no mention of the June 2021 U.S. House Committee on Financial Services Investigation into Meme Stock trading during February 2021 nor current SEC chair Gary Gensler's testimony at the May 2021 Congressional hearing on Meme Stocks exculpating Constantinescu of doing a "pump and dump" of Meme Stock KXIN.

Under these circumstances, there is *no question* that the sole purpose of introducing an exhibit like this, which names Constantinescu as part of the culpable "group," but lacks any evidence of falsity, agreement, trading coordination, or *even a single statement of any kind made by Constantinescu*, is purely designed to mislead and confuse the jury, and to bolster the appearance of a nonexistent conspiracy. It does *not* show evidence of Constantinescu's "intent" to commit any of the charged crimes, or that he otherwise participated in a conspiracy.

By way of another example, the government claims that it wishes to present Exhibit 34 as another uncharged act against Constantinescu. Exhibit 34 consists of three separate exhibits: Exhibit 34A is a chart created by the government purporting to reflect market volume and the closing stock price for the stock at issue during February 2021 through March 3, 2021.[3] Exhibit 34C is a recreated document purporting to display three text messages, none of which include or

---

[3] It is unclear what the relevance of this exhibit is given the government's concession that it does not plan to argue at trial that any of the defendants' activity caused the stock price's movement.

mention Constantinescu. Exhibit 34B is a 70-page PDF document that purports to outline stock trades and posts by the defendants during this time period. The first page of this document groups Constantinescu with the rest of the defendants and attributes 13 Twitter posts and 15 Discord posts to him about Meme Stock ONTX.

**Episode 274: Trading in ONTX between February 03, 2021 and March 19, 2021**

| Last Name, First Name | Twitter Handle | Discord Handle | # of Twitter Posts | # of Discord Posts | # of Shares Bought | # of Shares Sold | Profit (FIFO) |
|---|---|---|---|---|---|---|---|
| Rybarczyk, John | @Ultra_Calls | Ultra#0374 | 29 | - | 2,668,468 | 2,668,468 | $ 801,685 |
| Matlock, Perry "PJ" | @PJ_Matlock | PJ Matlock#0001 | 9 | 14 | 1,679,070 | 1,679,070 | $ 119,839 |
| Hennessey, Mitchell | @hugh_henne | HoodHughBear#4034 | 12 | 42 | 280,000 | 280,000 | $ 92,938 |
| Sabo, Francis | | Ricky Bobby#7407 | - | 2 | 615,985 | 615,985 | $ 18,647 |
| Knight, Daniel | @DipDeity | Dan, Deity of Dips#8114 | 1 | - | 43,850 | 43,850 | $ 4,429 |
| Cooperman, Tom | @ohheytommy | TOMMY COOPS #5323 | - | - | 44,000 | 44,000 | $ 2,028 |
| Deel, Gary | @notoriousalerts | Gary (Mystic Mac)#7345 | 9 | 16 | 2,910,076 | 2,910,076 | $ 933 |
| Constantin, Edward | @MrZackMorris | Zack Morris#0001 | 13 | 15 | 7,710,499 | 7,710,499 | $ (215,729) |
| Total | | | 73 | 89 | 15,951,948 | 15,951,948 | $ 824,770 |

Notes:
"Profit (FIFO)" calculates a profit for every sale equal to the sale price minus the purchase price of the earliest-purchased shares not yet matched to a sale
"# of Twitter Posts" and "# of Discord Posts" represents the number of public Twitter posts and Discord messages, respectively, by a trader during the episode that either (i) have been alleged to be false by the DOJ or (ii) refer to ONTX

The fine print underneath this chart states that the number of posts represents posts "that either (i) have been alleged to be false by the DOJ or (ii) refer to [the stock]." In other words, the chart lumps together those statements that DOJ alleges are false, *with those statements that are not even alleged to be false at all*. There is no reference to what, if any, underlying evidence supports the government's allegation of falsity. And no other exhibits that would evidence falsity have been included on the government's exhibit list.

      Constantinescu's name appears 850 times in this exhibit. But, if one were to pour through the 70-page PDF and attempt to follow the government's color blocking scheme (a feat that is nearly impossible to do unless one uses the "Find" function on a computer), only then can one discern that even though Constantinescu has been lumped into this episode and appears in this exhibit, *the government has not alleged—anywhere in the 70-page exhibit—that Constantinescu made any false statement regarding this stock episode*. In other words: the

government has included Constantinescu in this grouping notwithstanding that the government does not allege that he said anything false about the stock.

Instead, Constantinescu was posting things like this (which is, conveniently, omitted from the government's "summary"):



Nor does the government identify any other proof regarding this episode involving Constantinescu that would show intent, conspiracy, or *anything other than propensity evidence* designed to mislead, confuse the jury, and bolster the appearance of a nonexistent conspiracy. It is no surprise, then, that the government does not intend to "dwell on the ins and outs of each of the 54 episodes" (Opp. pg 4).

The government has not made the requisite showing that any Rule 404(b) evidence is appropriately presented against Constantinescu. Accordingly, the government's request for the additional 18 (or 378) stock transactions against him should be denied.  In the event this Court is inclined to disagree, Constantinescu respectfully requests a hearing and an on-the-record finding as to the *Beechum* probative value/prejudice evaluation as to each piece of evidence the

government purportedly wants to offer against Constantinescu under Rule 404(b). *See United States v. Zabaneh*, 837 F.2d 1249, 1266 (5th Cir. 1988) (remanding where court admitted evidence under Rule 404(b) but failed to make record findings regarding its analysis of the same).

## III. The uncharged transactions involving Constantinescu are not intrinsic to the five challenged stock trades for which he has been charged.

The government is also wrong that evidence involving Constantinescu that involves transactions outside the Superseding Indictment are "intrinsic" to the charged crimes. The Fifth Circuit is clear that evidence is intrinsic to a charged crime when it is either: (1) "inextricably intertwined" with evidence of a charged offense; (2) when the wrong is intrinsically part of the same criminal episode; or (3) when the wrong was a necessary preliminary step to a charged crime. *See, e.g., Sumlin*, 489 F.3d at 689.

The additional episodes that the government wishes to introduce against Constantinescu are *literally* separate episodes—the government has identified them as such in their trial evidence. Nor is there any basis to view the 35 (or 378) different episodes as "preliminary steps" for the charged conduct.

The government, instead, summarily claims that these 35 (or 378) separate episodes are "inextricably intertwined" with the actual charged conduct because they all occurred within the two-year span of the charged conspiracy and "involved the same manner and means." Resp. at 3. The government is wrong. The only "manner and means" that could possibly be meant by this is that each of the periods of time the government wishes to introduce involved trading securities while also discussing stocks on social media platforms. The 35 (or 378) uncharged episodes do not involve the same stocks, they are not done at the same time as Constantinescu's other charged stock trades, they are for different durations of times, purportedly involve different sets

of people who also traded and said different things during different times as well as different companies and different market conditions, and any explanation of what actually happened for each of these episodes will, necessarily, be different. The government does not explain how such distinctive sets of circumstances could be shown as evidence of Constantinescu's *"manner and means,"* and why they cannot be untwisted from the charged stock trades. The only thing these uncharged transactions have in common is that the government created a misleading excel spreadsheet for each one to make them. This is not what intrinsic means. *Accord United States v. Nguyen*, 504 F.3d 561, 574 (5th Cir. 2007) (finding that separate deals were not intrinsic with each other notwithstanding that the co-conspirators used the same scheme for all of the transactions); *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990) (various mailings of drug packages were distinct and distinguishable events).

### IV. This Court should ignore the government's *in limine* arguments and permit proper briefing on the issues as set forth in the Court's scheduling order.

The government dedicates the last portion of its opposition brief to arguing that this Court should cut off the defendants' ability to present a complete defense. These arguments lack descriptions of specific pieces of evidence and are replete with straw man hypotheticals. The only thing that is clear from this portion of the government's brief is that it now has conceded that it does not intent to argue at trial (1) that the defendants' statements or trading activity were the cause of stock price fluctuation for any of the challenged stock trades or (2) that the defendants' "profits" resulted from the alleged securities fraud. Constantinescu disagrees with the government's straw man arguments and reserves his right to address these issues in properly briefed motions *in limine*.

Dated:  September 22, 2023.

                                                             Respectfully submitted,

                                                             /s/ Matthew A. Ford
                                                             Matthew A. Ford
                                                             Texas Bar No. 24119390
                                                             mford@fordobrien.com
                                                             Jamie Hoxie Solano
                                                             Admitted Pro Hac Vice
                                                             jsolano@fordobrien.com
                                                            FORD O'BRIEN LANDY, LLP
                                                            3700 Ranch Road 620 South, Suite B
                                                            Austin, Texas 78738
                                                           Telephone: (512) 503-6388
                                                           Facsimile: (212) 256-1047

                                                           *Attorneys for Defendant*
                                                           *Edward Constantinescu*

## **CERTIFICATE OF SERVICE**

 I hereby certify that on September 22, 2023, a true and correct copy of the foregoing document has been electronically served on all counsel of record via the Court's CM/ECF system, and I have caused to be provided courtesy copies to opposing counsel via email.

              */s/ Jamie H. Solano*
              Jamie H. Solano