**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § | Case No. 22-cr-00612 |
| | § | |
| MITCHELL HENNESSEY, | § § | |
| *Defendant*. | § § | |

**MITCHELL HENNESSEY'S REPLY IN SUPPORT OF**
**MOTION TO EXCLUDE EXTRANEOUS EPISODES**

Mitchell Hennessey, joined by Messrs. Constantinescu, Matlock, Hrvatin, and Cooperman, respectfully files this reply to the government's Response in Opposition (ECF 424) to Mr. Hennessey's Joinder to Motion to Exclude Extraneous Episodes. ECF 412 (joining Mr. Rybarczyk's motion to exclude extraneous episodes, ECF 408).

The government's plan to introduce 35 additional Episodes beyond the 19 already charged in Counts 2-20 of the superseding indictment will do nothing to elucidate the true issues in this case for the jury and will needlessly and substantially increase the length of the trial.

The government also improperly uses its response to urge the Court to preclude the defendants from introducing relevant, admissible, and extremely important evidence at trial. The government's arguments are both improperly presented and meritless.

**1.      The additional 35 Episodes are cumulative and fail to elucidate the true issues for the jury.**

The government has identified no type of evidence contained in the additional 35 Episodes that it is not already going to present in connection with Counts 2 through 20. Indeed, the government's own argument for admission demonstrates that the type of evidence it seeks to introduce through these additional Episodes: (a) is already contained in the government exhibits

for Counts 2 through 20; and (b) relates to issues that are not likely to be in dispute at trial, therefore, such additional Episodes will not be helpful to the jury in deciding the true questions in this case.

### a. The types of evidence in the exhibits for the additional 35 Episodes is already contained in the exhibits for Counts 2 through 20.

The government uses the SNOA Episode (Government Exhibit 36B[1]) as an example to argue that it should be allowed to introduce 35 additional Episodes.[2] *See* ECF 424 Ex. 2. The government argues that the SNOA Episode "presents an example of the alleged scheme's execution with Defendants both coordinating in private text messages prior to executing the alleged scheme, as well as using news about the at-issue stock (SNOA) in furtherance of that scheme." *Id.* at 4. The government goes on to claim that "the falsity of [Mr. Deel's] post is laid bare in the Exhibit by the fact that Defendant Deel had added all his shares of SNOA prior to posting publicly and then, approximately one minute after his post . . . he began exclusively selling his shares of SNOA." *Id.* at 6.

But this is no different than the evidence the government claims it has for the 19 Episodes that make up Counts 2 through 20. *See* ECF 134. The superseding indictment alleges in connection

---

[1] Of note, the government attaches the entirety of its proposed trial exhibit 36B to its publicly filed response. This exhibit contains the government's representation of voluminous (but selectively incomplete) private communications and trade information of the Defendants about a stock—SNOA—which is not mentioned in the superseding indictment. Indeed, the reference to this stock at trial is precisely at issue before the Court. The government could have easily filed this private data under seal and still fully made its arguments to the Court. Instead, the government chose to engage in a campaign to further smear the defendants by making the defendants' private data relating to a stock, which may not even be used at trial, completely public for the world (and the internet) to devour. This is improper and disregards a required balanced consideration of what should be filed publicly regarding the accused, who after all, are innocent until proven guilty under the law.

[2] This motion does not addresses the admissibility of evidence related to these additional Episodes. Nor does this motion address the admissibility of the actual exhibits the government intends to introduce at trial. Those issues will be addressed in separate motions *in limine*.

with Count 3: "On or about September 11, 2020 (Friday), Deel informed Rybarczyk on a direct messages on Discord how he 'added SXTC today' and planned to 'post' about the stock on the following trading day (Monday). Rybarczyk responded in part, 'Thanks bro . . . I'll add." *Id.* at ⁋ 22. The superseding indictment alleges that Mr. Deel then posted a "false and misleading tweet" about news regarding the stock—a "recently granted NASDAQ extension" and that "insiders own 51%[.]" *Id.* at ⁋ 26. The superseding indictment further alleges that six minutes after the tweet, Mr. Deel "sold all 62,201 shares of SXTC." *Id.*

The government does not explain how the SNOA Episode provides anything beyond the type of evidence that the government already intends to introduce in connection with Count 3 and the other securities fraud counts (Counts 2 through 20) of the superseding indictment.

> **b.  The types of evidence the government seeks to introduce through the additional 35 Episodes relate to issues not likely to be disputed at trial.**

At trial, there is likely to be little dispute that: (1) some of the defendants communicated with each other about stocks—perfectly legal conduct; (2) some of the defendants posted about stocks on social media—again, perfectly legal conduct; and (3) some of the defendants thought (correctly or incorrectly) at various times that a stock price would go up if the defendant posted about it on social media—once again, perfectly legal conduct. What will be contested at trial is whether the defendants made *material false* statements with *criminal intent to defraud*.

The government's only stated purpose for introducing the SNOA Episode, and the 34 other Episodes like it, is to show "Defendants both coordinating in private text messages prior to executing the alleged scheme, as well as using news about the at-issue stock (SNOA) in furtherance of that scheme." ECF 424 at 4. But the fact that some defendants communicated with each other about stocks and that the defendants posted news about stocks on social media is not likely to be

in dispute at trial. Thus, the evidence related to the additional 35 Episodes is merely cumulative and does nothing to elucidate what will be the true issues for the jury to decide.

### 2. Each additional Episode will needlessly prolong an already lengthy trial.

Government Exhibit 36B, which the government uses as an example of the evidence it intends to introduce at trial, is so incomplete and misleading that it will undoubtedly prompt extensive cross examination and introduction of evidence demonstrating that the defendants did not commit fraud in connection with SNOA. The government's exhibit omits a substantial amount of evidence that directly contradicts the government's theory of fraud, including portions of the very same direct-message conversation that the government cites.[3] A quick review of the government's purported exhibit demonstrates why the cross examination regarding this Episode will be extensive. The government **completely omits** from its  purported exhibit:

- the full text/direct message chains (excising any portion of the chain that contradicts its fraud theory);

- important data about the timing and types of the defendants' trades;

- other relevant social media posts;

- company statements, including company press releases, SEC filings, investor presentations, social media posts, etc.; and

- news articles regarding the stock during the at-issue time period.

This information is critically important for the jury to accurately assess the facts in this case. For example, the government omitted direct messages that demonstrate: (1) SNOA's stock price was already increasing when the defendants started trying to buy it—hours before any

---

[3] The government does not explain why it has once again, in a public filing, presented incomplete and misleading private messages in what appears to be nothing more than an attempt to skew the Court's and the public's opinion against the defendants. *See* ECF 380. The government has the entire direct-message conversation and produced it as DOJ-PROD-0000365308.

defendant posted about SNOA; and (2) the defendants believed SNOA would release news soon that would make the stock price go up even more.

At 11:36 a.m. on May 3, 2021, Mr. Deel first mentioned SNOA in a direct message chat with Messrs. Matlock, Rybarczyk, and Cooperman.[4]

| First Direct Messages Regarding SNOA – May 3, 2021 | | |
|---|---|---|
| 11:36 a.m. | Deel: | guys I am looking at a potential but I have no shares in it yet but check this out |
| 11:37 a.m. | Deel: | SNOA found this on thier website with no PR yet. Chart looks cheap and I would imagine a PR is due |
| 11:38 a.m. | Deel: | I checked tos and I don't see they announced this anywhere yet |
| | Matlock: | last thing I see of them: SNOA   Sonoma Pharmaceuticals and EMC Pharma Announce an Exclusive Partnership to Expand Commercial Channels of the Microcyn®-based Rx Dermatology and Eye Care Products Nationwide |
| 11:39 a.m. | Deel: | last thing I saw too and look |
| | Matlock: | checking bloomberg too |
| | Deel: | https%3A//cdn.discordapp.com/attachments/83879972125802504 2/833801995804442664/unknown.png |
| 11:40 a.m. | Deel: | that PR is announced on the website too so that's what leads me to believe this next one is coming |

These messages demonstrate that the defendants genuinely believed that: (1) SNOA would release news soon; and (2) the news would cause the stock price to increase. Messages in this same direct-message chain (but omitted from the government exhibit and brief) demonstrate that within less than an hour after these initial messages, and hours before any defendant posted anything about SNOA, the price of SNOA was already increasing.

---

[4] Messrs. Constantinescu, Hrvatin, and Hennessey, are not even mentioned in connection with this Episode, so this purported evidence has no relevance and is not admissible as to them.

| Examples of Direct Messages Omitted from Government Exhibit – May 3, 2021 | | |
|---|---|---|
| 12:10 p.m. | Deel: | SNOA is getting away boys |
| | Deel: | need a big drop |
| | Rybarczyk: | Yea man |
| | Rybarczyk: | She thin af |
| 12:11 p.m. | Cooperman: | bro looking at it moves it |
| | | . . . |
| 2:17 p.m. | Matlock: | damn SNOA no dips lol |
| | Matlock: | have 2700 shares |
| 2:22 p.m. | Deel: | yeah I have like none |
| | | . . . |
| 2:45 p.m. | Rybarczyk: | Got 10K snoa currently |
| 2:46 p.m. | Cooperman: | im at 5 |
| 2:46 p.m. | Rybarczyk: | Chased a little higher |
| | Deel: | okay sick. I am at 9600 |
| | Matlock: | smacked 5k fuck it lol |
| | Deel: | Let's do 15 |
| | Matlock: | It's not dipping if it does I'll add more |
| | | . . . |
| 2:57 p.m. | Matlock: | Nate mentioned SNOA in his room |
| 2:59 p.m. | Deel: | Can't get fills LMAO |
| | | . . . |

These messages, and other evidence omitted from the government exhibits, show both that

the stock price was increasing before Mr. Deel ever posted about it and that the defendants thought

SNOA would continue to increase in price. Certainly, these omitted messages, as well as other

relevant evidence about the stock price, the company's own statements, news reports, and activities of other market participants such as "Nate," must be presented to the jury so that the jury can accurately assess whether a defendant made a material false statement with criminal intent to defraud.

As the SNOA example once again demonstrates, the government's incomplete, inaccurate, and misleading compilation exhibits cannot be taken at face value, and the cross examination of the government's witnesses on each Episode will take a considerable amount of time. If the government is allowed to introduce this Episode and others like it, counsel for each allegedly involved defendant will have to cross examine the government witnesses and present evidence regarding that defendant's actual trades (when and how they were executed); the company's statements; news about the stock; other social media posts about the stock; and the activity of other individuals in connection with the stock. If the government is allowed to introduce evidence of 35 additional Episodes, it will dramatically increase the length of the trial.

### 3.    The government's *in limine* arguments are both procedurally inappropriate and meritless.

The government argues that it should be allowed to introduce evidence of 54 separate and distinct Episodes, but fails to explain how it can feasibly do so and complete the trial in any version of a reasonable time frame. The government's only solution seems to be for the Court to preclude relevant, admissible, and critically important evidence. *See* ECF 424 at 7–11.

In a procedurally improper move, the government argues that "the Court should be prepared to preclude" evidence of: (a) news, social media posts, and conduct of other "market participants"; and (b) evidence related to the defendants trading activity unless the government claims it was fraudulent. The government's arguments are meritless.

### a. Evidence regarding company statements, news, social media posts, and other market activity is relevant, admissible, and important.

While the government has not filed a motion *in limine*, it spends more than four pages of its brief urging the Court to preclude relevant, admissible, and important evidence about what was happening at the time the defendants traded and posted. *See id.* In its efforts to keep the full truth from coming out at trial, the government makes the contorted argument that "the charged conduct does not require proof of actual manipulation of a stock's price . . . ," and therefore, the defendants should not be allowed to introduce evidence about "market news." ECF 424 at 7. But the crux of the "pump and dump" scheme alleged in the superseding indictment is that the defendants artificially inflated stock prices with their social media posts. *See, e.g.*, ECF 134 at ¶ 1 (alleging defendants "engaged in a scheme *to 'pump and dump' securities*," made false social media posts "to induce other investors to buy the security and *artificially drive up its price*," and "*profited* at least approximately $114 million *from their scheme*"); ¶ 13 (alleging "defendants sought *to 'pump'* the price of that security . . . so that other investors were induced to purchase the security *and artificially increase its price*") (emphasis added).

While the government concedes, as it must, that the stock prices moved because of unrelated activity, it nonetheless claims, "Defendants did in fact profit from the price movement as part of the alleged scheme . . . ." ECF 424 at 8–9. While the government claims it need not prove the alleged scheme caused "price movement," it clearly intends to argue at trial that the alleged scheme did cause price movement, and the defendants profited from those price movements. The defendants, therefore, must be permitted to introduce evidence that factors other than their social media posts caused stock price movements.

Even if the government did not intend to argue at trial that the defendants "profit[ed] from the price movement as part of the alleged scheme," there is no dispute that the government must

prove that the defendants' statements were both *material* and *false* and that the defendants acted with *criminal intent*. *See* ECF 424 at 8. The context in which a statement is made has direct bearing on each of these elements. Thus, the defendants must be allowed to present evidence demonstrating the context in which the social media posts were made.

### b.   The defendants' trading activity is relevant, admissible, and important.

The defendants' trading activity is admissible for many reasons, including to provide context for a defendant's trades and posts that are at issue in the superseding indictment. The government apparently hopes to present this case to the jury in a vacuum, devoid of context and divorced from reality. But the defendants were day traders, constantly buying and selling stock in a hectic and stressful environment, while constantly scouring news sites, social media, and stock charts. This context is important for the jury to consider in assessing whether a defendant made a material false statement and whether any statement was made with the criminal intent to defraud. A defendant's trading activity is relevant, admissible, and important for the jury to consider.

### 4.   Conclusion

The government should not be allowed to introduce 35 additional Episodes beyond the 19 already charged in Counts 2 through 20 of the superseding indictment because it would dramatically increase the length of the trial while doing nothing to clarify the true issues in this case for the jury. Further, the Court should reject the government's improper and meritless arguments that relevant, admissible, and important evidence should be precluded at trial.

Respectfully submitted,

**JACKSON WALKER LLP**

*/s/ Laura M. Kidd Cordova*
Laura M. Kidd Cordova
State Bar No. 24128031
lcordova@jw.com
Michael J. Murtha
State Bar No. 24116801
mmurtha@jw.com

1401 McKinney St, Suite 1900
Houston, Texas 77010
(713) 752-4449
(713) 752-4221 (Facsimile)

**ATTORNEYS FOR DEFENDANT
MITCHELL HENNESSEY**

### CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2023, a true and correct copy of the foregoing was served electronically on all persons via the Court's CM/ECF system.

*/s/ Laura M. Kidd Cordova*
Laura M. Kidd Cordova