1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
2                        HOUSTON DIVISION

3

4   UNITED STATES OF AMERICA    .   4:22-CR-612

5   VERSUS                      .   HOUSTON, TEXAS

6   EDWARD CONSTANTINESCU,      .   MARCH 14, 2023

7   ET AL,                      .   10:15 A.M.

8   . . . . . . . . . . . . . .

9

10                 TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE ANDREW S. HANEN
11                 UNITED STATES DISTRICT JUDGE

12                          *APPEARANCES*

13

14

15  FOR THE GOVERNMENT:

16       Thomas Heyward Carter
         Assistant United States Attorney
17       1000 Louisiana
         Suite 2300
18       Houston, Texas  77002

19

20  ALSO FOR THE GOVERNMENT:

21       Scott P. Armstrong
         John J. Liolos
22       Yifei Zheng
         UNITED STATES DEPARTMENT OF JUSTICE
23       1400 New York Avenue Northwest
         Washington, DC  20005

24

25

1                          *APPEARANCES - CONTINUED*

2

3    FOR DEFENDANT EDWARD CONSTANTINESCU:

4          Matthew A. Ford
           Cara Janine Filippelli
5          FORD O'BRIEN LANDY
           3700 Ranch Road 620 South
6          Austin, Texas 78738

7    FOR DEFENDANT PERRY PJ MATLOCK:

8          Luis A. Reyes
           ASHCROFT LAW FIRM
9          919 Congress Avenue
           Suite 1500
10         Austin, Texas  78701

11         Johnny Keane Sutton
           ASHCROFT SUTTON REYES LLC
12         919 Congress Ave
           Suite 1100
13         Austin, Texas 78701

14         William M Stradley
           Attorney at Law
15         1545 Heights Boulevard
           Suite 200
16         Houston, Texas 77008

17

18   FOR DEFENDANT JOHN RYBARCZYK:

19

           Philip H. Hilder
20         Quentin Tate Williams
           HILDER & ASSOCIATES PC
21         819 Lovett Boulevard
           Houston, Texas  77006
22

23         Eric S. Rosen
           FREEDMAN NORMAND FRIEDLAND LLP
24         225 Franklin Street
           Twenty-Sixth Floor
25         Boston, Massachusetts 02110

1                          *APPEARANCES CONTINUED*

2

3    FOR DEFENDANT GARY DEEL:

4          No appearance

5

     FOR DEFENDANT STEFAN HRVATIN:
6
           Edward Mallett
7          MALLETT SAPER BERG LLP
           4306 Yoakum Boulevard
8          Suite 400
           Houston, Texas  77006
9
     FOR DEFENDANT TOM COOPERMAN:
10
           Chip B. Lewis
11         Attorney at Law
           1207 South Shepherd Drive
12         Houston, Texas  77019

13         Sina M. Zadeh
           SINA ZADEH LAW FIRM
14         1001 McKinney Street
           Suite 803
15         Houston, Texas 77002

16   FOR DEFENDANT MITCHELL HENNESSEY:

17         Laura MK Cordova
           JACKSON WALKER LLP
18         1401 McKinney Street
           Suite 1900
19         Houston, Texas  77010

20         Michael James Murtha
           JACKSON WALKER LLP
21         2323 Ross Avenue
           Suite 600
22         Dallas, Texas 75201

23

24

25

1                           *APPEARANCES CONTINUED*

2

3    FOR DEFENDANT DANIEL KNIGHT:

4          Cordt C. Akers
           THE AKERS FIRM
5          3401 Allen Parkway
           Suite 101
6          Houston, Texas  77019

7

8    OFFICIAL COURT REPORTER:

9
           Mayra Malone, CSR, RMR, CRR
10         U.S. Courthouse
           515 Rusk, Room 8004
11         Houston, Texas  77002

12

13   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
14

15                              - - - - -

16

17

18

19

20

21

22

23

24

25

09:53    1                                   ***PROCEEDINGS***

2        THE COURT:  Counsel, I'm concerned about making sure

3 this case gets on track, and that's really the reason -- I

4 mean, I could have ruled on some of these motions in chambers

10:15    5 and just -- without the benefit of a hearing, but I want to

6 make sure that this case is on track and that we go to trial

7 when it's set for trial.

8          And just for the record, we are here in

9 22-CR-612, United States of America versus Edward

10:16   10 Constantinescu, et al.

11         I guess I should call roll here.

12         Who is here for the government?

13        MR. ARMSTRONG:  Good morning, Your Honor.  Scott

14 Armstrong for the United States.  Joined at counsel table by

10:16   15 John Liolos, Heyward Carter, Yifei Zheng and Agent Dillon.

16        THE COURT:  For Mr. Constantinescu?

17        MR. FORD:  It's Constantinescu.  I'm Matthew Ford

18 here, along with my colleague, Cara Filippelli.

19        THE COURT:  I was robbing him of a syllable.  I'm

10:16   20 sorry.

21        MR. FORD:  We will also accept Constantin.

22        THE COURT:  I would have better luck with that.

23         Who is here for Mr. Matlock?

24        MR. REYES:  Good morning, Your Honor.  Luis Reyes for

10:16   25 Mr. Matlock, and I'm also here with Johnny Sutton and Bill

10:17    1   Stradley who just appeared in the case.

         2            THE COURT:  All right.  For Mr. Rybarczyk?

         3            MR. HILDER:  Philip Hilder, and I'm joined with Tate

         4   Williams and Eric Rosen.

10:17    5            THE COURT:  All right.  Do we have anyone here for

         6   Mr. Deel?

         7        *(No response)*

         8            THE COURT:  They don't really have a dog in any of

         9   today's fights.

10:17   10                Hrvatin.  Help me here.  Mr. Mallett?

        11            MR. MALLETT:  Good morning, Your Honor.  I'm Ed

        12   Mallett for Mr. Hrvatin.

        13            THE COURT:  Hrvatin.

        14                For Mr. Cooperman?

10:17   15            MR. LEWIS:  Chip Lewis and Sina Zadeh here for

        16   Mr. Cooperman.

        17            THE COURT:  All right.  Mr. Hennessey?

        18            MS. CORDOVA:  Good morning, Your Honor.  Laura Cordova

        19   and Michael Murtha on behalf of Mr. Hennessey, who is here with

10:18   20   his mother and his girlfriend.

        21            THE COURT:  And Mr. Knight?

        22            MR. AKERS:  Cordt Akers on behalf of Daniel Knight.

        23            THE COURT:  Let me first get something out of the way.

        24   I'm denying the motion to return passports that has been filed.

10:18   25   I'm not going to let anybody leave the country.  That's a

10:18   1   blanket ruling.  Covers everybody.  I mean, if somebody can
2   come and show just an unbelievably important, outrageous
3   reason, I might consider it, but I'm not doing that.  So I
4   think Judge Palermo set out the reasons, and I agree with them.

10:18   5           What I'm really concerned about, quite frankly,
6   is the motion Mr. Hilder filed about a bill of particulars.
7   And I'm not necessarily so worried about specifics at this
8   point in time, but what I really am worried about is that the
9   defendants get everything they need in time for that
10:19  10   information to be useful.

11           And so, Mr. Armstrong, why don't you -- I think
12   Mr. Hilder set out his complaints.  Why don't you kind of
13   respond to that?  And by way of doing that, I mean, I don't
14   need a legal response.  I mean, we all know what the rules are
10:19  15   and the case law is on this.

16           But tell me how you see this unfolding and then,
17   Mr. Hilder, I'm going to let you respond to that and tell me
18   why that doesn't work.

19           MR. ARMSTRONG:  Thank you, Judge.  Good morning.

10:20  20           So we have taken great lengths to produce
21   discovery in this case in a timely and usable fashion.  That
22   includes pushing out in early January the bulk, if not all, of
23   the defendants' social media activity.  That includes their
24   tweets.  That includes their chats on something called Discord,
10:20  25   which is basically just an online chat room.  It also includes

10:20    1    their --

2                THE COURT:  I had to look that up.

3                MR. ARMSTRONG:  It also includes their trading

4        records.  So if you match up the Discord chats and the tweets

10:20    5    and the trading records, it becomes pretty obvious that the

6        defendants are trading opposite to what they are saying to the

7        public and what they are saying to their followers.  So those

8        two pieces of information are the pillars of our case.

9                Now, will there be more production forthcoming?

10:20   10   Absolutely.  It happens in every case.  But we made great

11       efforts to make sure that they had the critical mass in January

12       so we don't have a problem where we are asking to move the

13       trial come September or come August.

14               What we are going to do, as well, to the point

10:21   15   raised in Mr. Hilder's motion, is that this month we are also

16       going to voluntarily give the list of the tickers and the

17       general date ranges that goes into the figures cited in

18       paragraph 1 of the superseding indictment.

19               So with that information, the defendants should

10:21   20   have, again, a critical mass of information to mount an

21       effective defense.

22               THE COURT:  Mr. Hilder, do you want to weigh in?

23               MR. HILDER:  Sure, Judge.  I'm going to let my

24       colleague, Tate Williams, respond.

10:21   25               THE COURT:  Okay.  Go ahead, Mr. Williams.

10:21      1            MR. WILLIAMS:  Judge, we are on our second indictment

           2    in two months.  In the first one, they said it was

           3    $114 million.  Although, if you add everything up in the

           4    indictment, it only adds up to 14.  So there's a delta, a gap

10:21      5    there of 100 million bucks that they have told grand juries

           6    about over two months, but they haven't found time to tell us

           7    yet.  That's the fundamental problem.

           8            So even assuming that all the stocks that's the

           9    basis of the $114 million allegation are communicated to us, we

10:22     10    need a firm commitment that that's all there are and we are not

          11    going to get ambushed with additional stocks close to or at

          12    trial.  Otherwise, we are going to play whack-amole, which is

          13    going to cause further continuances and delays in trial as we

          14    need time to investigate, have experts review.

10:22     15            But then, what you haven't heard is about the

          16    discovery they have given to us.  It's voluminous.  I think

          17    different defendants may have different opinions about how

          18    useful it is, but the bottom line is, they are saying, Oh, it's

          19    this social media.  They have got it all.  Go look.  That's

10:22     20    like me asking which bricks in Minute Maid Park are rotten and

          21    need to be replaced, and they will say, Go look at every brick

          22    in the baseball stadium.  That's not helpful.

          23            And so we have voluminous amounts of social

          24    media.  We've got voluminous amount of trade data.  They are

10:22     25    going to say, Here are the date ranges.  Go look.

10:22    1          I suspect those date ranges are going to be an

         2   entire calendar year, and we have got all their trade data, not

         3   limited to whatever the basis of $114 million are.  So what

         4   they are essentially saying is, We have given you all their

10:23    5   social media, we have given you all trade data, go fish.

         6   That's not helpful, and we can't even evaluate the utility of

         7   the discovery that's been provided without receiving a definite

         8   list of the fraudulent stock transactions within a certain date

         9   by a date certain.  And then only after that, can we evaluate

10:23   10   the utility of discovery --

        11          THE COURT:  Let me stop you there, Mr. Williams.  Help

        12   me here.  I just yesterday read the latest indictment, the

        13   superseding indictment, and they list the stock and they list a

        14   period.  And so why can't the defendants match up their own

10:23   15   stock trades and their own tweets and their own emails during

        16   that period concerning that stock?

        17          I understand from Mr. Armstrong, if you don't

        18   have them, he has already given them back to you.

        19          MR. WILLIAMS:  He hasn't, Judge, and what you are

10:24   20   seeing is the tip of the iceberg.  You are focused on the

        21   substantive counts of stock fraud.  The conspiracy is much

        22   larger.

        23          And so if you take the stocks that are identified

        24   in Counts Two through Twenty and you add them up, it ain't

10:24   25   $114 million.  It is more like fourteen to twenty.

10:24   1           When we get to trial, they are going to have

2      summary charts, and they're going to bring evidence of the

3      other $100 million.  They haven't.  I have asked them for it.

4      They won't deny it.  They say they are going to do it, but they

10:24   5   haven't yet.  We need to know what the other $100 million is,

6      and only when we get all of those stocks and we are told, This

7      is it, there is no more surprises, can we then see if we can go

8      back and get the social media activity.

9           This case is not confined to the substantive

10:24  10   count stocks.  They have said that in writing to us.  They have

11     said it in the indictment.  It's a lot bigger than that.

12     That's a tease.  That's the tip of the iceberg.  It is what is

13     under the water that sank the Titanic, not what they can see on

14     top.

10:25  15      THE COURT:  If I understand what you are saying -- and

16     I may just be repeating what you are saying, but let me make

17     sure I understand the main focus of your argument, which is,

18     Look, we can do what the Court has suggested for Counts Two

19     through X.

10:25  20      MR. WILLIAMS:  Yes, Your Honor.

21        THE COURT:  But for Count One, the conspiracy count,

22     one, we can't do that, although they give you a lot of facts

23     before they even get to Count One to back that up.  But what

24     you can't do is somehow get from the 14 to the 114?  And if

10:25  25   they are going to come in with a conspiracy claim that amounts

10:25    1    to $114 million, we have no clue.

2        MR. WILLIAMS:  That's precise.  I will illustrate what

3    they can do and what they should do for everything else.  For

4    the initial substantive counts in the initial indictment, when

10:26    5    they gave us the first round of discovery, they produced social

6    media in at least three different buckets.  One of them was

7    we'll say a 1,500 page PDF of all of my client's twitter feeds

8    for the relevant time period.  Another bucket was a bunch of

9    column-separated values in an Excel spreadsheet that we could

10:26   10    wallpaper this courtroom with.  It's that big.  And the third

11   bucket was a PDF of his tweets about the individual stock.

12   Yes.  It's that big, Your Honor.  If we printed it out, I

13   suspect it would cover the room.

14        For each individual identified stock and the

10:26   15   replies, we can put it up and say, Okay, they are saying with

16   respect to X stock, he said these things.  So we can take the

17   trade data and we can take where they can segregate it off the

18   relevant social media and we can see that.  So they did a

19   somewhat decent job of that with some of the first identified

10:27   20   stock.  Some of that I believe they inherited from the SEC.  We

21   will give credit elsewhere where it is due.  We need that and

22   more for the whole 114 because it's not just the stock ticker.

23   Because they decided to charge this under this section of the

24   statute, they said, You made specific fraudulent

10:27   25   misrepresentations; therefore, we need to know what those are.

10:27    1    Just pointing me to the ether of that great big spreadsheet of
2    wallpaper saying "go find social media" isn't enough.  If they
3    can do what they have already done for a handful of stocks and
4    segregate that off and tell us what is false, we think that
10:27    5    that would comport with the constitutional requirements, as
6    well.  They have done it for a few.  They can do it for all of
7    them, but just identifying all relevant stocks would be a great
8    starting point.

9            THE COURT:  Let's start with, Mr. Armstrong, start
10:28    10   with the money.  We seem to have a $100 million gap here.

11           MR. ARMSTRONG:  If I may, Your Honor, I don't think
12   there is actually a lot that's in dispute.  We told defense
13   counsel that we would be providing the list of tickers and the
14   date range for those tickers that feed into the conspiracy
10:28    15   count by the end of the month, and we told them that maybe a
16   week or so ago.

17           THE COURT:  And if we look at those stocks, are we
18   going to close that $100 million gap?

19           MR. ARMSTRONG:  Exactly.  And so no one is trying to
10:28    20   hide the ball here.  The reason why we are giving them that
21   list at the end of the month is to avoid the same concerns that
22   Mr. Williams just raised where we had a shifting landscape
23   where we are adding tickers here or we're changing the list.

24           The list that we provide at the end of the month,
10:28    25   as we maintained, is going to be the list that we will be

10:28   1    presenting at trial, and that is the list that feeds into the
        2    $114 million allegation in Count One.  So I really think we are
        3    talking past each other a little bit on that point, because we
        4    are going to provide that information.  And we said we are
10:29   5    going to do it voluntarily, and we are going to do it
        6    eight months before trial.

        7         THE COURT:  Okay.  Here's what I'm going to do.  I'm
        8    going to overrule your motion for right now, Mr. Williams, in
        9    anticipation of this new production.  But in doing this, I want
10:29  10    to make it clear -- and it's not just for Mr. Williams's client
       11    but for all the defendants -- that I expect the government to
       12    produce basically everything.  I mean, there's no reason -- I
       13    mean, they can read the superseding indictment, just like I
       14    read it yesterday.  I mean, they know what the allegations are
10:29  15    going to be, and they can't change the facts.  Now, maybe they
       16    have a different explanation than the government has.  So
       17    there's no downside for the government.  There's no downside to
       18    the defendants in everybody knowing everything.  So I expect
       19    that to be done.

10:30  20         Now, having said that, I mean, the government
       21    doesn't have to do all the defense lawyers' work.  I mean, you
       22    know, that's what you guys are hired to do, but the defense
       23    lawyers need the information.  I mean, they are all capable.
       24    They can figure out and they can piece together -- if they know
10:30  25    what the stock is and they know what the trades are, they can

10:30   1   figure out what their client said about X, Y, Z stock and what

2   they did or didn't do, but they have got to have that

3   information so -- and I'm stressing it now on the front end

4   because I don't want to have this conversation, as you said,

10:31   5   Mr. Armstrong, in August or September, because I want to get

6   this case tried and these defendants want to get on with their

7   lives.  And let's move forward with it.

8           So, Mr. Williams, I'm not -- I am overruling your

9   motion with respect to compelling anything right now, but I

10:31   10   expect -- I want to follow this.  And, Mr. Williams, once you

11   get it and if there's no explanations for the $100-million gap,

12   then turn around and refile something and say, Judge, we have

13   got the information, we have looked at it now, it doesn't help.

14           MR. WILLIAMS:  Judge, that's close to what I was going

10:31   15   to suggest; that you take the matter and hold it in abeyance

16   until after they meet their self-imposed deadline, which the

17   Court has, thankfully, adopted.

18           To the extent other people have a different

19   opinion about the sufficiency of their production, or we do,

10:31   20   that they can weigh in at that point in time.

21           MR. ARMSTRONG:  Your Honor, it's very easy to see what

22   is coming around the corner on this issue.  Because what we are

23   not going to do, and what the law does not require -- the Fifth

24   Circuit is pretty clear about it -- is we are not going to

10:32   25   provide all the evidentiary basis for each one of the

10:32  1   individual tickers that we are going to provide in March.  I

2   think that that has no legal basis.  So we're not going to say,

3   for example, on this ticker -- I'm just making up a name --

4   Ticker A, Here are all of the false statements for each one of

10:32  5   the seven defendants.  That goes to the evidentiary proof as to

6   that ticker, and that is to your point, doing the defendants'

7   work for them.  So we are not going to do that unless we are

8   ordered to.

9        THE COURT:  I understand that.  I'm not asking you to

10:32  10  subdivide everything, but I am asking you to produce -- I mean,

11  they have a right to know.  I mean, 14 and 114 is a pretty big

12  gap, and you need to close that gap.

13       MR. ARMSTRONG:  And we absolutely will, Your Honor.

14        Just to put meat on the bones, what we expect, as

10:33  15  well, is that we are going to have an expert in this case who

16  is going to provide the precise calculations in an expert

17  report, and we are amenable to a scheduling order that says the

18  date certain when that expert report has to be due.  But as of

19  the information that we are going to be providing in March, it

10:33  20  is just going to be the tickers and the date range.  And, of

21  course, with the allegations and with the underpinnings that

22  are alleged in the indictment, the defendants can then put the

23  pieces together.

24       THE COURT:  And I'm going to want a scheduling order,

10:33  25  but I prefer y'all to, maybe even after this hearing, sit down

10:33     1    and talk about that, because they need that expert report.

          2    You're going to need it for trial anyway.  So, I mean, you are

          3    going to be doing it whether I order it or not.  They need it,

          4    but they also need time to look at it and respond to it or get

10:33     5    a contrary expert.

          6         So, you know, I would think, you know, as far as

          7    experts go, May or June, sometime early enough where they have

          8    a chance to respond.  I will let y'all visit on that.  And if

          9    y'all come up with something that everybody agrees to, I will

10:34    10    adopt it.  Otherwise, I will just impose one, but I think

         11    that's important.

         12         MR. ARMSTRONG:  Thank you, Judge.

         13         THE COURT:  I mean, maybe it's because of where I grew

         14    up as a judge, you know, trying cases in Brownsville.  The U.S.

10:34    15    Attorney's Office down there basically said, Come look at my

         16    file.  And so I -- that worked out for everybody and, you know,

         17    it didn't hurt the government and the defendant -- I never had

         18    a Brady claim or anything that remotely resembled it.

         19         So I want y'all to be forthcoming, but I'm

10:34    20    warning the defendants, I also don't expect you to do their

         21    work for them.

         22         MR. ARMSTRONG:  Thank you, Judge.

         23         MR. WILLIAMS:  Thank you, Your Honor.

         24         THE COURT:  Now, we do have some motions to dismiss.

10:35    25         Ms. Cordova, I think yours is the first one

10:35    1    sitting here on my stack.

2            MS. CORDOVA:  Yes, Your Honor.

3            THE COURT:  This is on behalf of Mr. Hennessey?

4            MS. CORDOVA:  Yes, Your Honor.  We had moved to

10:35    5    dismiss Counts Eight, Nine and Eleven because they fail to

6    allege a false representation which goes to the core of

7    criminality under the securities fraud statute.  Without a

8    false representation, there is no securities fraud.  It's not

9    just one of these elements that courts have found does not go

10:35   10    to the core of criminality.  The false pretense, the false

11    representation is the core of criminality of a 1348 violation.

12            And this is important, and I want to follow up on

13    the prior conversation about the bill of particulars.  The

14    reason it's so important here is that in the counts where the

10:36   15    government has provided alleged false statements, we have

16    scrutinized the evidence and identified ways in which we

17    believe those statements are not, in fact, false.  We would

18    present evidence at trial that those were not false statements.

19            If we are going through our clients' tweets,

10:36   20    Discord messages, looking for a false statement but find none

21    because we know the evidence apparently better than the

22    government and we are able to identify why this was a true

23    statement, this was a true statement, this was a true

24    statement, we don't have fair notice of what the allegations

10:36   25    are.  And so we need to know what the false representations

10:36   1   are.  Those go to the core of criminality, and it's not enough

       2   for us to look at the tweets and look at the trades, because we

       3   have done that, and we have not identified falsity.  Therefore,

       4   those counts -- and the government -- our view is that that's

10:36   5   not cured by a bill of particulars because the government

       6   cannot stand -- the prosecutors cannot stand in the role of the

       7   grand jury and identify the core of criminality with respect to

       8   the statute.  So that's why we have moved to dismiss those

       9   three counts, Counts Eight, Nine and Eleven.

10:37  10          They are a different bit little, so I want to

      11   talk about the difference.  Counts Eight and Nine allege

      12   absolutely no specific statements; just a month, a year, a

      13   ticker and then a general -- really a group pleading statement

      14   that defendants made false statements, without identifying

10:37  15   which defendants or which false statements with respect to

      16   RGLS, which is Counts Eight and Nine.

      17          Count Eleven is a little bit different because

      18   the government has alleged in the superseding indictment

      19   specific allegedly false statements.  Those statements were

10:37  20   made by other defendants, allegedly, not by Mr. Hennessey.

      21   Therefore, there is nowhere in the indictment that explains to

      22   Mr. Hennessey how he committed securities fraud with respect to

      23   Count Eleven.  There's no false representation.  There's no

      24   trade.  He is not even alleged to have traded ALZN, which is

10:38  25   Count Eleven.  He has not alleged any specific profit, any

10:38   1    specific tweet or Discord message.  Nothing.  No statement by

     2    him.  No trading activity by Mr. Hennessey.

     3              Again, they allege a time frame, and they allege

     4    statements by other people, but they have not put Mr. Hennessey

10:38   5    on notice of why he is alleged to have violated Section 1348,

     6    the securities fraud statute, with respect to that specific

     7    stock.  Therefore, we don't think it would be appropriate for a

     8    bill of particulars or for discovery to fulfill the role of

     9    what is essentially the grand jury's role, which is to identify

10:38  10    the core elements of criminality as to why Mr. Hennessey has

     11    been charged in Counts Eight, Nine and Eleven, and, therefore,

     12    we believe those should be dismissed.

     13          THE COURT:  All right.  Who wants to answer for the

     14    government?

10:38  15              Go ahead, Mr. Armstrong.

     16          MR. ARMSTRONG:  Thank you, Judge.  It's a three-part

     17    test, as the Court knows, for whether an indictment is

     18    sufficient.  Does it track the elements?  Does it fairly inform

     19    the defendant as to the charges?  And does it protect against

10:39  20    double jeopardy?

     21              In this case, there is really no dispute about

     22    the second or third prong, so the only issue is, is there

     23    protection -- I'm sorry -- is there sufficient facts and

     24    allegations to fairly inform the defendant as to the charges?

10:39  25              And this is not your normal indictment.  It

10:39   1   has 15 paragraphs of essentially general allegations; talking

2   exactly in paragraph 1 even, what exactly the scheme was, who

3   was in it and how it operated.  And then there are 90

4   paragraphs that detail some specific examples of about 10

10:39   5   tickers.

6               It kind of defies, you know, a fair reading of

7   the indictment to then claim that there is not fair notice as

8   to the pump-and-dump scheme for this specific ticker, for this

9   specific range that are charged in Counts, what is it, Eight,

10:40   10   Nine and Eleven.  And so a fair reading of the indictment

11   certainly fairly informs the defendant as to what the nature of

12   the offense is.

13          THE COURT:  Does the indictment have to include the

14   false statements?  I mean, you are alleging they made a false

10:40   15   statement.

16          MR. ARMSTRONG:  That goes to the evidentiary proof

17   that we are going to present at trial, which is not what is

18   required.  What is required, and what we have done, is allege

19   the facts that inform the defendant as to the nature of the

10:40   20   scheme, which is, as pointed out in paragraph 1, this is a

21   pump-and-dump scheme that involves three steps.  They preloaded

22   the shares.  They tweeted out false information, or

23   disseminated false information on Discord to induce others to

24   buy, which would raise the price.  And then on the heels of

10:40   25   that, they sold their shares, not to themselves.  That is laid

10:40    1    out in paragraph 1 of the indictment.  To say that they don't

2    know the contours of the charged conduct defies a fair reading

3    of the indictment.

4         THE COURT:  Okay.  Mr. Hilder, your client, or

10:41    5    Mr. Williams also has a motion to dismiss, don't they?

6         MR. WILLIAMS:  No, Your Honor.  I believe that is

7    Mr. Constantinescu.

8         THE COURT:  It is.  I'm sorry.

9              Mr. Ford?

10:41    10    MR. FORD:  Good morning, Your Honor.

11              We are moving to dismiss Count Twenty-one of the

12    indictment against Mr. Constantinescu.  It alleges a count of

13    engaging in monetary transactions in property derived from

14    specified unlawful activity.

10:41    15              Eighteen USC, Section 1957 refers you to

16    Section 1956 for the definition of specified unlawful activity.

17    That list -- it provides an incredibly long list of specific

18    activities.  Included in that is a reference to 1961, which

19    lists certain racketeering activity.

10:42    20              Under Subsection 1B of 1961, the legislature has

21    listed in an exclusive list over 90 different Title 18

22    offenses.  In those 90 offenses, they have included four of the

23    six substantive offenses under Chapter 63.  That includes mail

24    fraud, wire fraud, bank fraud and fraud in the provision of

10:42    25    foreign labor services.  Interestingly, that last one was added

10:42  1    in 2013 after Section 1348 was adopted, at which time the

2    legislature could have chosen to include 1348.  They

3    specifically included (sic) it from the list.  I think from the

4    plain language --

10:42  5              THE COURT:  They excluded it from the list?

6              MR. FORD:  Specifically excluded it.  I think it's

7    clear from the plain language of the statute, as well as the

8    structure and intent, that Section 1348 was not intended to be

9    covered under 1957 as specified unlawful activity.

10:43  10             Now, the government has bent over backwards to

11   try to take, I think, out of context a clause that appears much

12   later in the long text of 1961 where it includes fraud in the

13   sale of securities.  That's the language we are dealing with

14   and arguing about today.

10:43  15             We think that language speaks for itself.  The

16   securities fraud statutes are clear in different formulas that

17   they can use to encompass broad classes of activities.  What

18   the legislature did with regard to -- I mentioned four of the

19   six in Chapter 63.  Those Title 18 fraud offenses are included

10:43  20   in 1961.

21             One of the other ones that's omitted is certain

22   health care fraud.  What the legislature has done in 1956 is

23   include incredibly broad language, any conduct that could be

24   considered a federal health care fraud offense.  Right?  They

10:44  25   know how to include a broad category.

10:44   1           If the legislature intended to include all

2   securities fraud, and specifically 1348, all they needed to do

3   is take that same health care provision and replace the word

4   "health" with "security," and it would have encompassed it.

10:44   5   Instead what they did is they used a narrow phrase, fraud in

6   the sale of securities.

7           If we look in other areas, we see the formulation

8   that we see in 1348, as well as in the securities laws and

9   regulations, which is the use of the phrase "in connection

10:44   10   with" or "in connection with the purchase or sale of

11   securities."

12           The Ninth Circuit in U.S. v Deeb already had a

13   chance to look at this.  I think they described the

14   government's interpretation of 1348 as, you know, way outside

10:44   15   the bounds in a tortured reading.

16           The legislature knows if they wanted to use the

17   broad phrase "in connection with" or "in connection with the

18   purchase or sale of securities," they could have done so.

19           This is not an academic exercise.  We think that

10:45   20   the legislature, because this is a money laundering offense

21   based on racketeering, was attempting to target specific types

22   of activities, mainly fraud in the actual sale or selling of

23   securities.

24           If you go through, it's fascinating.  The cases

10:45   25   the government cited -- we went through all of them with a

10:45   1    fine-toothed comb.  Not a single one uses 1348 as a predicate.

2            The one case that they were able to find was an

3    unpublished adopted report and recommendation of a judge in the

4    Southern District of Florida -- unpublished but adopted the

10:45   5    report and recommendation.  It includes mail and wire fraud, so

6    the argument that I'm making here today was never raised.

7            If you look at the other cases, you will see the

8    same trend, which is, what they are talking about is

9    unregistered securities, offerings that were issued by

10:46   10    companies generally in the form of a private placement

11    memorandum through a fund.

12        THE COURT:  So if I sell you a stock, and I lie to you

13    about it and unknowingly commit fraud, and you buy it, and you

14    are damaged, have I violated the statute?

10:46   15        MR. FORD:  It's a fascinating question, and let me

16    answer.  The courts have found yes, but the problem is those

17    facts are not even close to being alleged in this.  There's no

18    allegation that my client, or really anybody in the room, but

19    specifically my client, engaged in a direct transaction with

10:46   20    anybody to sell a security.  Every transaction was a bona fide

21    market transaction.

22            The allegation is that prior to that, they

23    allegedly increased the price of the stock through their

24    tweeting, but that is not a sale -- a fraud in the sale of the

10:47   25    securities.  The sale itself was bona fide, and I don't think

10:47    1    anybody will disagree.

2              And so if you go back to these cases, what I'm

3    stressing is, where you have, for example, a fund, right, they

4    will accept a subscription agreement from the client.  It is

10:47    5    that subscription agreement that represents the purchase and

6    sale in that situation.  So if that subscription in the fund is

7    fraudulent, that's why the courts are saying this constitutes

8    fraud in the sale in the sense that the client that is

9    purchasing the interest or the security in the fund is actually

10:47    10    buying it directly from that individual who is then misusing

11    it.  We simply do not have facts.

12              And there's an interesting piece to this, which

13    is in 1348.  If you look at the language of it, it says

14    "artifice or scheme to defraud in connection with" --

10:47    15              THE COURT:  Artificial?

16              MR. FORD:  Artifice or scheme in connection with, and

17    then it limits it to registered securities.  The cases they are

18    citing are dealing with unregistered securities.  In other

19    words, private placements or offerings that are going directly

10:48    20    to investors who are directly purchasing from the individual

21    who is engaging in the fraud in the process of selling it.

22              There is one final piece to this, which is that

23    there is a securities fraud listed as a predicate to 1957.  It

24    is fraud in the sale of counterfeit or forged securities.  I

10:48    25    think what the legislature is doing is pretty clear.  They are

10:48   1   trying to get to a slightly broader sort of concept of fraud in

2   the sale, which includes the cases, quite possibly, that we

3   have looked at, none of which include 1348.  They are 10b-5

4   cases.  But in every one, we are talking about Ponzi schemes.

10:48   5   We're talking about people who are running funds, who are

6   giving offerings that are valueless or worthless that have

7   nothing backing them.  Each of those instances would clearly

8   constitute fraud in the sale of securities.

9           I just don't see the allegations here.  From what

10:49  10   the indictment says, what the government is saying and

11   everything we see and understand, the sales they are talking

12   about were bona fide transactions in the marketplace, and I can

13   assure you that you will not see any direct transactions

14   between my client and any public person.  It just didn't

10:49  15   happen.

16           THE COURT:  Okay.  Thank you.

17           Mr. Armstrong?  Wow.  Someone new.

18       MR. LIOLOS:  Good morning, Judge.  John Liolos on

19   behalf of the United States.

10:49  20           Your Honor, the defense -- we seem to agree on

21   one thing, and it's that the language, fraud in the sale of

22   securities, speaks for itself.

23           The defendant presents what he claims is a novel

24   statutory argument, but it is not really a close question.  I

10:50  25   think it only seems to be novel because no one has challenged

10:50   1   such clear text before.  The text at issue -- and I'm not going

2   to go through the whole statutory scheme because the Court has

3   it in our papers and the defense walked through it, but in

4   1961(1)(d) it says, Any offense involving fraud in the sale of

10:50   5   securities punishable under any law of the United States.  Full

6   stop.

7            Defense asks this Court to limit that clear text

8   in two main ways by saying that it can't cover 1348 because

9   that's not in the long list of other crimes that does not

10:50   10   include a single securities fraud statute.

11            And also, the defendants suggest --

12            THE COURT:  Let me stop you there.  You can see that's

13   right, though?

14            MR. LIOLOS:  Certainly, and we don't disagree with

10:50   15   that.

16            THE COURT:  All right.  Go ahead.

17            MR. LIOLOS:  And, secondly, the defendant seeks to

18   limit the language to issuers, even though the term "issuers"

19   appears nowhere in the relevant statutory scheme.

10:50   20            None of the other readings make sense, and when

21   you put them together, they make less sense.  Again, the

22   language is any offense involving fraud in the sale of

23   securities punishable under any law of the United States.

24            If you add the defendants' readings, it changes

10:51   25   to any offense involving fraud in the sale of securities by an

10:51    1    issuer, and no one else, not punishable under any law of the

         2    United States, but under no law of the United States, because

         3    none is listed in the statute here.

         4         THE COURT:  Wouldn't it be simpler to state fraud in

10:51    5    the sale of securities by the defendant?

         6         MR. LIOLOS:  It certainly would.  If you look at --

         7         THE COURT:  His argument is the defendant didn't sell

         8    any securities here.

         9         MR. LIOLOS:  He did engage in open market securities

10:51   10    transactions.

        11         THE COURT:  But he didn't sell anything.

        12         MR. LIOLOS:  Well, he sold securities that he held in

        13    his brokerage account on the open market.

        14         THE COURT:  But he didn't sell it to anyone.

10:51   15         MR. LIOLOS:  Well, there has to be --

        16         THE COURT:  He bought some.  I mean, he purchased some

        17    and presumably there wasn't any -- at least as I read the

        18    indictment, there is no fraud in the purchase.

        19         MR. LIOLOS:  Not under the terms of the statute here.

10:52   20    No.  But factually, what he did was engage in open market

        21    security sales.  There has to be two sides to the transaction.

        22    Someone has to buy the security from him, whether that's a

        23    broker or someone else.

        24         THE COURT:  You just said "from him."  No one bought

10:52   25    any securities from him.

10:52    1           MR. LIOLOS:  The broker at least did, and there is a

         2    victim on the other side of that that has to match up the

         3    trade.  Right?

         4              So if the Court looks to the Fifth Circuit's

10:52    5    opinion in the Laird case, which we cited, I think, on page 16

         6    of our papers --

         7           THE COURT:  Let's go back.

         8           MR. LIOLOS:  Certainly.

         9           THE COURT:  There's not a victim on the other side.

10:52   10    Is there?  Tell me who it is.  If I'm -- let's say we believe

        11    everything you guys think you can prove.  So, hypothetically, I

        12    bought a share of stock, and I have sent out all kinds of

        13    tweets and pumped up the price and then I have sold it -- let's

        14    say I borrowed at 10 and I sold it at 20.  Whoever I sold it to

10:53   15    at 20, they bought it at 20.  They knew what the price was

        16    going in.

        17              Now, the other people, for instance, the people

        18    that go to these websites or investment groups, they might have

        19    been fooled because they relied on the defendant for giving

10:53   20    straightforward advice.  Are they victims of the sale?

        21           MR. LIOLOS:  Well, the victims necessarily bought it

        22    at 20, right, if they were induced by the defendants'

        23    misrepresentations to purchase the stock, and there had to be

        24    someone on the other side of this transaction.  And this

10:53   25    happened --

10:53  1          THE COURT:  They bought it at 20.  They knew it was 20

2  going in.  I mean, they bought it at the price --

3          MR. LIOLOS:  Certainly, Your Honor.

4          THE COURT:  The market price.

10:54  5          MR. LIOLOS:  The representations that are alleged in

6  the indictment, for example, call out stock tickers that are

7  well above the prices at which they were sold, so a lot of the

8  victims here were likely induced to think that the stock would

9  go up to 10, for example, and were buying it at 2 in those

10:54  10  hopes.

11          THE COURT:  The defendants' point is that -- let's

12  assume all of that is true.  That fraud doesn't have anything

13  to do with the sale.

14          MR. LIOLOS:  Perhaps, but there also had to be someone

10:54  15  on the other side of the transaction, and there are countless

16  transactions alleged here.  Right?  So the Court has to take

17  the allegations in the indictment as alleged on a motion to

18  dismiss.  And, you know, there were just unbelievable amounts

19  of these transactions happening.  The sale of securities has to

10:54  20  match up with a buyer each and every time it happens, and there

21  was fraud --

22          THE COURT:  Aren't the real victims -- and part of

23  this exercise is to make sure I know everything about this case

24  or at least -- so part of this is educating me.  It's one of

10:55  25  the reasons I wanted to have the hearing.  But you have got an

10:55    1    alleged scheme where -- let's say the defendants bought at 10,

2    and they started telling all their investment groups and people

3    that follow them on the Internet, or whatever, that, man, this

4    stock is going through the roof.  And it goes up to 15 and they

10:55    5    sell out.  Okay.  So they have cashed out of it, but they still

6    tout the stock.  It's going to 20.  It's going to 20.  Aren't

7    the victims -- if -- the people who relied on those tweets to

8    make their decisions --

9         MR. LIOLOS:  There are more victims.  Certainly then

10:55    10    that could be matched up in a one-to-one transaction of the

11    defendants every time.

12         What also is interesting about this case, and

13    which is part of the scheme, is that a lot of the stocks that

14    the defendants were engaging in were what they would look to --

10:56    15    and let's say in their private transactions -- low float

16    stocks, so they had not a lot of shares that were trading, and

17    they would look to lock up the float of these stocks, meaning

18    buy as much of it as they possibly could before they went

19    public.  So they would control a high percentage of this,

10:56    20    limiting who could buy.  And then they would, by their

21    misrepresentations and omissions, allegedly drive up the volume

22    for these stocks, and then all of those people would clamor to

23    buy the stocks that the defendants held a significant part of.

24    So they must have sold to the volume that they were creating by

10:56    25    the pump-and-dump scheme.

10:56    1          It's inherent in the nature of the pump-and-dump

2    scheme of a low float stock because they are purchasing up as

3    much as they can to control as much of the shares that are

4    available on the open market and, therefore, limiting the

10:57    5    supply of the stock available.  And then they are amping up the

6    demand by promoting it.

7          And the defendants then constitute a significant

8    portion of the people that any of those people who want to buy

9    the stock can purchase it from.  There has to be two sides to

10:57    10    the transaction.  So it is necessarily fraud in the sale of

11    securities.  It fits comfortably under the language of the

12    statute.

13          THE COURT:  Okay.

14          MR. LIOLOS:  Thank you, Judge.

10:57    15          THE COURT:  I don't think I have any other motions to

16    dismiss, do I?  I'm going to take the motions to dismiss under

17    advisement.  I'm denying without prejudice Mr. Williams's

18    motion pending the government's disclosures.

19          I would like y'all, when I step off, to sit down

10:58    20    and see if you can come up with a schedule while you are all

21    here.  And pretty much, if you come up with a schedule that you

22    all can live with, I will live with it.  But what I want to

23    emphasize to everyone, it's a schedule that I want to be more

24    or less set in stone.  I know there are some defendants that

10:58    25    don't -- or haven't indicated that they really care when they

10:58    1    go to trial, but there are other defendants that have said, I

2    want to go to trial now.

3                  And, as I said earlier, they are restricted in

4    many ways, one of which, as I just said, I'm not letting them

10:58    5    go out of the country.  So I want to end those restrictions,

6    assuming they are found not guilty, as soon as we possibly can.

7    And so I'm asking y'all while you are all here to -- let's get

8    a realistic schedule.  I want to try this in October.  That's

9    when I have told y'all I'm going to try it.  There may not be a

10:59    10    specific week that I can give you right now, but I will give it

11    to you far in advance, when we will start, because I know we

12    have defendants from all over the United States, but we also,

13    I'm assuming, are going to have witnesses from all over.  And

14    so I want to make sure I can give you a solid start date.  But

10:59    15    I expect -- I want -- so when you get together, let's be

16    realistic.  It's one of the reasons why the government started

17    talking about experts.  I said, Yeah, but let's do it far

18    enough in advance that, you know, the defendants have plenty of

19    time to do what they need to do.

11:00    20                  Right now we have final pretrial scheduled on the

21    6th of October and trial on the 23rd, and those are probably

22    still good dates.  The 6th may change, because I may actually

23    be in trial in something else on the 6th, but I don't think I'm

24    going to be.  So I would like to stay with final pretrial on

11:00    25    October 6th and trial on October 23rd.

11:00    1    Within that, I'm very flexible about whatever you
         2    want to do, but let's be practical about it.  Do a schedule
         3    that you can live with that's commensurate with the facts of
         4    the case and the amount of documents and the number of the
11:00    5    defendants and maybe -- I don't know the extent of the actual
         6    communication between the defendants, but, I mean, I think I
         7    got a flavor of it from reading the indictment.  But this
         8    doesn't seem like an overly complicated case, despite the
         9    number of counts and despite the number of defendants.
11:01   10    I'm sure that -- and I know that the defendants
        11    don't get a chance to give their side of the case in front of
        12    the grand jury, so I'm sure there are other ways of viewing
        13    some of these communications.
        14    All right.  So I'm going to step off, and I'm
11:01   15    going to adjourn the hearing.  Sit down with the government --
        16    I'm asking all the defense lawyers.
        17    Hold on, Mr. Hilder, and then I will let you
        18    speak.  But let's get a schedule that everybody can live with.
        19    Go ahead.
11:01   20    MR. HILDER:  Yes, Judge.  I would like the Court just
        21    to address -- the government submitted to the Court the victim
        22    post, essentially, and we submitted an alternative that I would
        23    like the Court to consider --
        24    THE COURT:  I don't know that I have seen your
11:02   25    alternative.

11:02  1         MR. HILDER:  It's Exhibit A to our response that we

2    sent in in our objection.  I can provide a copy to the Court.

3         THE COURT:  If you have a copy, let me look at it.

4         MR. HILDER:  Yes, Judge.

11:02  5         THE COURT:  I don't know if my prior order made it

6    clear, but I want these -- I know why the government feels like

7    they have to do this, but I want these to be neutral.

8              The one I saw that the government proposed had

9    the charges, but it didn't have the denial by the defendants of

11:02  10   that charge, and I thought that needed to be in there.

11             Mr. Armstrong, have you seen this?

12        MR. ARMSTRONG:  Your Honor, off the top of my head --

13        THE COURT:  You might have and just didn't remember

14   it.  Take a look at it.  It doesn't change a whole lot of

11:03  15   things.

16        MR. ARMSTRONG:  Your Honor, I think one of the

17   principal points of contention that we have with the defense on

18   this is that they claim that the line that is directly above

19   presumption of innocence is editorializing, but, in our view,

11:04  20   it is, respectfully, not.  It is just taken from paragraph 1 of

21   the indictment, and it gives just the smallest meat to the

22   bones of what the case is about, using language that is alleged

23   in paragraph 1 of the superseding indictment.

24             So, in our view, that is not editorializing.  It

11:04  25   is just giving a public notice as to the most bare bones

11:04    1    allegation that support the charges.  So I think that we can

2    probably live with the balance of the other changes, but we

3    believe that our submission is in compliance with the Court's

4    order at this point.

11:04    5          THE COURT:  I may play with that, and then I will send

6    it out to y'all before I approve it.

7          MR. HILDER:  Thank you, Judge.

8             One other point:  I would like that the

9    government know the order to produce to us on a rolling basis

11:05   10    the responses they get.  Obviously, we are going to need time

11    to follow up with these individuals if they are, in fact, true

12    victims, and for the government to hold on to that information,

13    I think, would not be in our best interest, the defense's best

14    interest, if we are going to keep the schedule that the Court

11:05   15    wants us to be on.

16          THE COURT:  Help me here.  What role do we think the

17    victims would play in the trial?  Do we think any of them are

18    going to testify?

19          MR. ARMSTRONG:  I certainly expect that, Your Honor.

11:05   20    I think that they would prove up materiality and they would

21    prove up how they relied on the false information the

22    defendants were putting into the market.

23          THE COURT:  Then I think Mr. Hilder's suggestion is a

24    good one then.

11:06   25          MR. HILDER:  Thank you, Judge.

11:06   1           THE COURT:  If they were just going to, you know,

        2   impact sentencing, but if they are going to actually testify, I

        3   think the defendants need to know that.  Let's rollingly

        4   produce those.  You don't have to produce them every day, but

11:06   5   every two weeks, or something, say, These are the victim impact

        6   statements we have got.

        7           MR. ARMSTRONG:  No problem.

        8           MS. CORDOVA:  Your Honor, Mr. Hennessey has a pending

        9   motion to modify the conditions of release to remove the GPS

11:06  10   monitor that was recently placed on him.  If Your Honor can

       11   take that up today --

       12           THE COURT:  I can take that up today.  I'm denying it.

       13   It's easy.

       14           MR. ARMSTRONG:  Your Honor, I don't know if Your Honor

11:06  15   will cover this today, but I think we also have the speedy

       16   trial motion from Mr. Hennessey, as well.  And we would

       17   respectfully request that if Your Honor is going to deny that,

       18   that Your Honor does so in a way that conforms with the

       19   requested order that we laid out in our motion.

11:06  20           THE COURT:  In your response?

       21           MR. ARMSTRONG:  In our response.  I'm sorry.

       22           THE COURT:  Okay.  Mr. Mallett, is your client here?

       23           MR. MALLETT:  He is, Your Honor.

       24           THE COURT:  Why don't y'all come up?

11:07  25           MR. MALLETT:  May I approach, Your Honor?

11:07  1          I am informed the marshals have escorted him

2    upstairs or downstairs.

3          THE COURT:  We will get him back.  Y'all don't leave.

4    I will step off, let y'all visit about a scheduling order and

11:08  5    in the meantime, we will have him brought.

6          All right.  Thank you, Counsel.

7      *(Court recessed at 11:08 AM)*

8      *(Court resumed at 11:47 AM)*

9          THE COURT:  I have played with the post and Rhonda has

11:47  10   a copy for you.  It includes some of the suggestions of

11   Mr. Hilder but not all of them.  I will give y'all a chance to

12   read it.

13         Mr. Armstrong, does that get you where you need

14   to be?

11:48  15         MR. ARMSTRONG:  Your Honor, thank you for putting this

16   together.  The only question I have is -- this does not appear

17   to have page 2, which we submitted as Exhibit 1.

18         THE COURT:  I don't think I have seen a page 2.

19         MR. ARMSTRONG:  It just has more information about the

11:48  20   Crime Victims Right Act and the right to retain counsel and

21   then it has a little blurb about plea agreements and --

22         THE COURT:  Will you hand it to me?

23         MR. ARMSTRONG:  May I approach?

24         It's a statement about something that our folks

11:49  25   put together.

11:49    1        THE COURT:  Mr. Hilder, do you want to look at this?

2    It looks like that's just a form, and I'm all right with that.

3        MR. HILDER:  I don't have any objection to that,

4    Judge.  As for the Court's suggestions, we are fine with that.

11:49    5        MR. ARMSTRONG:  No objection, Your Honor.

6        THE COURT:  All right.  So you are free to do that.

7        MR. ARMSTRONG:  Thank you, Judge.

8        THE COURT:  All right.  Secondly, while I have

9    everybody here, Mr. Ford, is it your client the government is

11:50   10    seeking to nab the cars?

11        MR. FORD:  Yes, Your Honor.  If I may for a moment.  I

12    just received, as I was walking out the door here, a document

13    entitled "warrant to seize property subject to forfeiture."

14        It is my understanding at this time there's no

11:50   15    property that's subject to forfeiture.  We have not had an

16    opportunity in the past two or three minutes to do any

17    substantive investigation of the law, but my understanding is

18    the Supreme Court last left off on this in 2016 in a case

19    called Luis v the United States, 136 S Ct 1083, plurality of

11:50   20    opinion written by Justice Breyer with very substantial and

21    compelling concurrence written by Justice Thomas.

22        That case is crystal clear that under the Sixth

23    Amendment, the government may not seize untainted assets prior

24    to conviction as it would be a violation of the defendant's

11:51   25    Sixth Amendment right and his right to use his assets for the

11:51   1   purpose of his legal defense.

        2           I will -- from a factual perspective, the cars

        3   that are listed -- it looks like two of the three were

        4   purchased prior to any time that my client allegedly made money

11:51   5   through the scheme that the government is alleging.  I don't

        6   think they can show any connection, so I'm not sure how they

        7   were able to obtain this warrant.  There is a vehicle that was

        8   purchased in 2022.  That is a Rolls-Royce Dawn vehicle.

        9           Again, I do not believe that that would be tied

11:52  10   to any of the allegations or funds in the indictment, but, as I

       11   said, regardless, I do believe under United States v Luis,

       12   Justice Breyer's plurality opinion and Justice Thomas's very

       13   compelling concurrence, which I think has been leading the way

       14   in this area of law, that this forfeiture is improper and

11:52  15   unconstitutional.  And to add a gloss to it, there is at least

       16   one defendant I understand in this case who did, in fact, sell

       17   his vehicle for the purpose of obtaining and retaining counsel

       18   in this matter.

       19           So thank you, Your Honor.

11:52  20           THE COURT:  Okay.  Mr. Armstrong, do you want to weigh

       21   in?

       22           MR. ARMSTRONG:  Mr. Carter for the government.

       23           THE COURT:  Mr. Carter?

       24           MR. CARTER:  Your Honor signed warrants.  The warrants

11:52  25   were submitted by affidavit to a magistrate court judge last

11:52   1   week.  They were signed by a magistrate court judge, as is

2   standard in this district.  It's very common in these

3   particular cases.  There is nothing special about it.  These

4   are warrants that are specifically for cars that were purchased

11:53   5   with funds that were illegally or fraudulently obtained through

6   the scheme and course and conduct of this case.

7             THE COURT:  I'm going to stay these warrants.

8             MR. CARTER:  Would you like to review the affidavits

9   as they stand, Your Honor?

11:53   10            THE COURT:  No.  I'm staying the warrants, but I'm

11   ordering the defendant not to dispose of those cars.

12            MR. CARTER:  Fair enough.  Thank you, Your Honor.

13            THE COURT:  Without a further court order.

14            MR. FORD:  For the record, as part of my client's

11:53   15   current bail conditions, he is not permitted to transfer any

16   assets in excess of $5,000, so I can assure you that that will

17   not happen.

18            We appreciate your ruling and are available for

19   any additional briefing.

11:53   20            Thank you again, Your Honor.

21            THE COURT:  All right.  When we are talking about

22   scheduling, I made a misstatement.  I said the pretrial was on

23   October 6th.  I think it's the 16th, with trial to be on

24   the 23rd, so let me correct that.

11:54   25            Were y'all able to get together and talk about a

11:54    1    schedule?

2    MR. ARMSTRONG:  Yes, Your Honor.  Thank you for the

3    probing.

4    I think that we agreed to produce our expert

11:54    5    reports -- and full disclosure -- we don't truly believe that

6    these are expert reports, but we are happy to disclose the

7    information on June 5th.

8    THE COURT:  June 5th?

9    MR. ARMSTRONG:  Yes, Your Honor.

11:54   10    THE COURT:  Is there a reciprocal discovery matter in

11    this?

12    MR. ARMSTRONG:  We didn't confer about that, in total

13    candor, but we would, of course, love one.

14    THE COURT:  I guess I will cross that bridge when I

11:54   15    get to it, but we'll leave it right now that the government is

16    going to disclose by June 5th, and the report should -- I know

17    we're in -- we're not in civil cases where reports have all

18    these requirements, but it should be a full report.  I mean, it

19    should be something that really sets out, here's what we think

11:55   20    or, here's what I, the expert, am going to testify was done

21    incorrectly or illegally.

22    MR. ARMSTRONG:  So the expert -- that is why I was

23    couching it as not quite expert testimony.  The expert is not

24    going to proffer an opinion like that.  The proposed experts,

11:55   25    using air quotes, that we have right now are twofold.  One is

11:55   1    going to be calculating the profit and loss for the tickers,

        2    which is basically just running the math.

        3            THE COURT:  He is going to close Mr. Williams's

        4    $100 million gap?

11:55   5            MR. ARMSTRONG:  He is going to close the gap.  He is

        6    not going to be offering -- or she -- I don't even know who it

        7    is yet -- is not going to be offering an opinion such as, these

        8    are fraud proceeds, or anything like that.

        9                The other expert is going to be someone from

11:56  10    FINRA who's going to be talking about just the trading volume

       11    on specific days and talk about how the volume went up,

       12    corresponding when the tweet activity occurred and will talk

       13    about what happened to the price.  So that's going to be kind

       14    of the contours of the not quite expert testimony but what we

11:56  15    are calling --

       16            THE COURT:  I think they are experts if they are going

       17    to be experts in the market as opposed to liability experts.

       18            MR. ARMSTRONG:  Understood.

       19            THE COURT:  Let's give the defendants a fair report.

11:56  20            MR. ARMSTRONG:  We absolutely will, Your Honor.

       21            THE COURT:  By that, I mean full.  Not a C report.

       22    Give them an A report.

       23                All right.  Thank you, Mr. Armstrong.

       24            MR. ARMSTRONG:  Thank you, Judge.

11:56  25            THE COURT:  Is there anything else we can take up as a

11:56

1    whole while we are here?

2              I do have a matter to take up with Mr. Hrvatin.

3    But if not, y'all are excused.

4         MR. HILDER:  Thank you, Judge.

5       *(Court adjourned at 11:56 a.m.)*

6                        * * * *

7

8      I certify that the foregoing is a correct transcript from

9    the record of proceedings in the above-entitled cause.

10

11   Date: March 18, 2023

12

13                    /s/ Mayra Malone
                      ----------------------------------------
14                    Mayra Malone, CSR, RMR, CRR
                      Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25

MR. AKERS: [1] 6/22
MR. ARMSTRONG: [31] 5/13 7/19 8/3
13/11 13/19 15/21 16/13 17/12 17/22
20/16 21/16 36/16 37/16 37/19 37/9
38/14 38/21 39/15 39/19 39/23 40/5
40/7 41/22 43/2 43/9 43/12 43/22 44/5
44/18 44/20 44/24
MR. CARTER: [3] 41/24 42/8 42/12
MR. FORD: [8] 5/17 5/21 22/10 23/6
25/15 26/16 40/11 42/14
MR. HILDER: [9] 6/3 8/23 35/20 36/1
36/4 37/7 37/25 40/3 45/4
MR. LEWIS: [1] 6/15
MR. LIOLOS: [16] 27/18 28/14 28/17
29/6 29/9 29/12 29/15 29/19 30/1 30/8
30/21 31/3 31/5 31/14 32/9 33/14
MR. MALLETT: [3] 6/11 38/23 38/25
MR. REYES: [1] 5/24
MR. WILLIAMS: [7] 9/1 10/19 11/20
12/2 15/14 17/23 22/6
MS. CORDOVA: [4] 6/18 18/2 18/4
38/8
THE COURT: [82]

$

$100 [6] 11/3 11/5 13/10 13/18 15/11
44/4
$100 million [5] 11/3 11/5 13/10 13/18
44/4
$100-million [1] 15/11
$114 [6] 9/3 9/9 10/3 10/25 12/1 14/2
$114 million [5] 9/3 10/3 10/25 12/1
14/2
$5,000 [1] 42/16

/

/s [1] 45/12

0

02110 [1] 2/25

1

1,500 [1] 12/7
10 [4] 21/4 30/14 31/9 32/1
100 million [1] 9/5
1000 [1] 1/17
1001 [1] 3/14
101 [1] 4/5
1083 [1] 40/19
10:15 [1] 1/7
10b-5 [1] 27/3
1100 [1] 2/12
114 [3] 11/24 12/22 16/11
11:08 [1] 39/7
11:47 [1] 39/8
11:56 [1] 45/5
1207 [1] 3/11
1348 [12] 18/11 20/5 23/1 23/2 23/8
24/2 24/8 24/14 25/1 26/13 27/3 28/8
136 [1] 40/3
14 [4] 1/6 9/4 11/24 16/11
1400 [1] 1/23
1401 [1] 3/18
15 [2] 21/1 32/4
1500 [1] 2/9
1545 [1] 2/15

16 [1] 30/5
16th [1] 42/23
18 [3] 22/21 23/19 45/11
1900 [1] 3/18
1956 [2] 22/16 23/22
1957 [3] 22/15 23/9 26/23
1961 [5] 22/18 22/20 23/12 23/20 28/4
1B [1] 22/20

2

20 [8] 30/14 30/15 30/15 30/22 31/1
31/1 32/6 32/6
200 [1] 2/15
20005 [1] 1/23
2013 [1] 23/1
2016 [1] 40/18
2022 [1] 41/8
2023 [2] 1/6 45/11
22-CR-612 [1] 5/9
225 [1] 2/24
2300 [1] 1/17
2323 [1] 3/21
23rd [3] 34/21 34/25 42/24

3

3401 [1] 4/5
3700 [1] 2/5

4

400 [1] 3/8
4306 [1] 3/7
4:22-CR-612 [1] 1/4

5

515 [1] 4/10
5th [3] 43/7 43/8 43/16

6

600 [1] 3/21
612 [2] 1/4 5/9
620 [1] 2/5
63 [2] 22/23 23/19
6th [5] 34/21 34/22 34/23 34/25 42/23

7

75201 [1] 3/22
77002 [3] 1/18 3/15 4/11
77006 [2] 2/21 3/8
77008 [1] 2/16
77010 [1] 3/19
77019 [2] 3/12 4/6
78701 [2] 2/10 2/13
78738 [1] 2/6

8

8004 [1] 4/10
803 [1] 3/14
819 [1] 2/21

9

90 [3] 21/3 22/21 22/22
919 [2] 2/9 2/12

A

a.m [2] 1/7 45/5
abeyance [1] 15/15
able [4] 18/22 25/2 41/7 42/25
about [40] 5/2 7/5 7/6 7/7 7/8 9/6 9/15

9/17 12/11 15/1 15/19 15/24 17/1
18/15 19/11 20/21 21/4 23/14 25/8
25/13 27/4 27/5 27/12 31/23 32/12
34/17 35/1 35/2 36/22 39/4 39/19
39/21 39/24 42/3 42/21 42/25 43/12
44/10 44/11 44/13
above [3] 31/7 36/18 45/9
above-entitled [1] 45/9
absolutely [4] 8/10 16/13 19/12 44/20
academic [1] 24/19
accept [2] 5/21 26/4
account [1] 29/13
Act [1] 39/20
activities [3] 22/18 23/17 24/22
activity [7] 7/23 11/8 20/2 22/14 22/16
22/19 23/9 44/12
actual [2] 24/22 35/5
actually [4] 13/12 26/9 34/22 38/2
add [4] 9/3 10/24 28/24 41/15
added [1] 22/25
adding [1] 13/23
additional [2] 9/11 42/19
address [1] 35/21
adds [1] 9/4
adjourn [1] 35/15
adjourned [1] 45/5
adopt [1] 17/10
adopted [4] 15/17 23/1 25/3 25/4
advance [2] 34/11 34/18
advice [1] 30/20
advisement [1] 33/17
affidavit [1] 41/25
affidavits [1] 42/8
after [4] 10/9 15/16 16/25 23/1
again [5] 8/20 20/3 28/21 41/9 42/20
against [2] 20/19 22/12
Agent [1] 5/15
ago [1] 13/16
agree [2] 7/4 27/20
agreed [1] 43/4
agreement [2] 26/4 26/5
agreements [1] 39/21
agrees [1] 17/9
ahead [4] 8/25 20/15 28/16 35/19
aided [1] 4/13
ain't [1] 10/24
air [1] 43/25
Akers [3] 4/4 4/4 6/22
al [2] 1/7 5/10
all [44] 6/2 6/5 6/17 7/14 7/22 9/8 9/10
9/19 10/2 10/4 10/5 11/6 12/7 13/6
13/7 14/11 14/21 14/23 15/25 16/4
20/13 24/1 24/2 24/25 28/16 30/12
31/12 32/2 32/22 33/20 33/22 34/7
34/12 34/13 35/14 35/16 39/6 39/11
40/2 40/6 40/8 42/21 43/17 44/23
allegation [5] 9/9 14/2 25/18 25/22
37/1
allegations [8] 14/14 16/21 18/24
20/24 21/1 27/9 31/17 41/10
allege [5] 18/6 19/11 20/3 20/3 21/18
alleged [12] 16/22 18/15 19/18 19/24
19/25 20/5 25/17 31/5 31/16 31/17
32/1 36/22
allegedly [5] 19/19 19/20 25/23 32/21
41/4
alleges [1] 22/12

**A**

alleging [2] 21/14 41/5
Allen [1] 4/5
along [1] 5/18
already [3] 10/18 13/3 24/12
also [14] 1/20 5/21 5/25 7/25 8/3 8/15 17/4 17/20 22/5 28/11 31/14 32/12 34/12 38/15
alternative [2] 35/22 35/25
although [2] 9/3 11/22
ALZN [1] 19/24
am [7] 7/8 15/8 16/10 39/1 39/7 39/8 43/20
ambushed [1] 9/11
amenable [1] 16/17
Amendment [2] 40/23 40/25
AMERICA [1] 1/4 5/9
amole [1] 9/12
amount [2] 9/24 35/4
amounts [3] 9/23 11/25 31/18
amping [1] 33/5
ANDREW [1] 1/10
Another [1] 12/8
answer [2] 20/13 25/16
anticipation [1] 14/9
any [25] 6/8 19/25 19/25 23/23 27/13 27/14 28/4 28/5 28/22 28/23 28/25 29/1 29/8 29/17 29/25 33/8 33/15 37/17 40/3 40/16 41/4 41/6 41/10 42/15 42/19
anybody [4] 6/25 25/18 25/20 26/1
anyone [2] 6/5 29/14
anything [6] 15/9 17/18 29/11 31/12 44/8 44/25
anyway [1] 17/2
apparently [1] 18/21
appear [1] 39/16
appearance [1] 3/4
APPEARANCES [4] 1/12 1/24 3/1 3/24
appeared [1] 6/1
appears [2] 23/11 28/19
appreciate [1] 42/18
approach [2] 38/25 39/23
appropriate [1] 20/7
approve [1] 37/6
are [122]
area [1] 41/14
areas [1] 24/7
Aren't [2] 31/22 32/6
arguing [1] 23/14
argument [4] 11/17 25/6 27/24 29/7
Armstrong [12] 1/21 5/14 7/11 10/17 13/9 15/5 20/15 27/17 36/11 39/13 41/20 44/23
around [2] 15/12 15/22
artifice [2] 26/14 26/16
Artificial [1] 26/15
as [52]
ASHCROFT [2] 2/8 2/11
asked [1] 11/3
asking [6] 8/12 9/20 16/9 16/10 34/7 35/16
asks [1] 28/7
assets [3] 40/23 40/25 42/16
Assistant [1] 1/16
ASSOCIATES [1] 2/20
assume [1] 31/12

**B**

assuming [3] 9/8 34/6 34/13
assure [2] 27/13 42/16
attempting [1] 24/21
Attorney [3] 1/16 2/14 3/11
Attorney's [1] 17/15
August [2] 8/13 15/5
Austin [3] 2/6 2/10 2/13
available [3] 33/4 33/5 42/18
Ave [1] 2/12
Avenue [3] 1/23 2/9 3/21
avoid [1] 13/21

back [6] 10/18 11/8 11/23 26/2 30/7 39/3
backing [1] 27/7
backwards [1] 23/10
bail [1] 42/15
balance [1] 37/2
ball [1] 13/20
bank [1] 22/24
bare [1] 36/25
baseball [1] 9/22
based [1] 24/21
basically [4] 7/25 14/12 17/15 44/2
basis [5] 9/9 10/3 15/25 16/2 37/9
because [22] 12/22 12/23 14/3 15/4 15/5 15/22 17/1 17/13 18/5 18/21 19/2 19/5 19/17 24/20 27/25 28/2 28/8 29/2 30/19 33/2 34/11 34/22
becomes [1] 8/5
been [5] 6/24 10/7 20/11 30/19 41/13
before [6] 1/10 11/23 14/6 28/1 32/18 37/6
behalf [4] 6/19 6/22 18/3 27/19
being [1] 25/17
believe [9] 12/20 18/17 20/12 22/6 30/10 37/3 41/9 41/11 43/5
benefit [1] 5/5
bent [1] 23/10
BERG [1] 3/7
best [2] 37/13 37/13
better [2] 5/22 18/21
between [2] 27/14 35/6
big [4] 12/10 12/12 13/1 16/11
bigger [1] 11/11
bill [5] 5/25 7/6 18/13 19/5 20/8
bit [3] 14/3 19/10 19/17
blanket [1] 7/1
blurb [1] 39/21
bona [3] 25/20 25/25 27/12
bones [3] 16/14 36/22 36/25
borrowed [1] 30/14
Boston [1] 2/25
bottom [1] 9/18
bought [8] 29/16 29/24 30/12 30/15 30/21 31/1 31/2 32/1
Boulevard [3] 2/15 2/21 3/7
bounds [1] 24/15
Brady [1] 17/18
Breyer [1] 40/20
Breyer's [1] 41/12
brick [1] 9/21
bricks [1] 9/20
bridge [1] 43/14
briefing [1] 42/19
bring [1] 11/2

**C**

broad [4] 23/17 23/23 23/25 24/17
broader [1] 24/1
broker [2] 29/23 30/1
brokerage [1] 29/13
brought [1] 39/5
Brownsville [1] 17/14
bucket [2] 12/8 12/11
buckets [1] 12/6
bucks [1] 9/5
bulk [1] 7/22
bunch [1] 12/8
buy [7] 21/24 25/13 29/22 32/18 32/20 32/23 33/8
buyer [1] 31/20
buying [2] 26/10 31/9

calculating [1] 44/1
calculations [1] 16/16
calendar [1] 10/2
call [2] 5/11 31/6
called [2] 7/24 40/19
calling [1] 44/15
can [40] 7/1 10/9 11/7 11/7 11/13 11/18 12/3 12/15 12/16 12/17 12/17 12/18 13/3 13/6 14/13 14/24 14/24 14/25 15/20 16/22 23/17 27/12 28/12 30/11 33/3 33/9 33/20 33/22 34/6 34/10 34/14 35/3 35/18 36/2 37/1 38/10 38/12 41/6 42/16 44/25
can't [6] 10/6 10/14 11/22 11/24 14/15 28/8
candor [1] 43/13
cannot [2] 19/6 19/6
capable [1] 14/23
Cara [2] 2/4 5/18
care [4] 23/22 23/24 24/3 33/25
cars [4] 40/10 41/2 42/4 42/11
Carter [4] 1/16 5/15 41/22 41/23
case [23] 5/3 5/6 6/1 7/15 7/21 8/8 8/10 11/9 15/6 16/15 20/21 25/2 30/5 31/23 32/12 35/4 35/8 35/11 36/22 40/18 40/22 41/16 42/6
cases [9] 17/14 24/24 25/7 26/2 26/17 27/2 27/4 42/3 43/17
cashed [1] 32/5
category [1] 23/25
cause [2] 9/13 45/9
certain [5] 10/8 10/9 16/18 22/19 23/21
certainly [7] 21/11 28/14 29/6 30/8 31/3 32/9 37/19
certify [1] 45/8
challenged [1] 27/25
chambers [1] 5/4
chance [4] 17/8 24/13 35/11 39/11
change [3] 14/15 34/22 36/14
changes [2] 28/24 37/2
changing [1] 13/23
Chapter [2] 22/23 23/19
Chapter 63 [1] 22/23
charge [2] 12/23 36/10
charged [2] 20/11 21/9 22/2
charges [4] 20/19 20/24 36/9 37/1
charts [1] 11/2
chat [1] 7/25
chats [2] 7/24 8/4

**C**

**Chip [2]** 3/10 6/15
**chosen [1]** 23/2
**Circuit [2]** 15/24 24/12
**Circuit's [1]** 30/4
**cited [3]** 8/17 24/25 30/5
**citing [1]** 26/18
**civil [1]** 43/17
**claim [4]** 11/25 17/18 21/7 36/18
**claims [1]** 27/23
**clamor [1]** 32/22
**classes [1]** 23/17
**clause [1]** 23/11
**clear [9]** 14/10 15/24 23/7 23/16 26/25
28/1 28/7 36/6 40/22
**clearly [1]** 27/7
**client [11]** 14/10 15/1 22/4 25/18
25/19 26/4 26/8 27/14 38/22 40/9 41/4
**client's [2]** 12/7 42/14
**clients' [1]** 18/19
**close [8]** 9/11 13/18 15/14 16/12 25/17
27/24 44/3 44/5
**clue [1]** 12/1
**colleague [2]** 5/18 8/24
**column [1]** 12/9
**column-separated [1]** 12/9
**comb [1]** 25/1
**come [9]** 7/2 8/13 8/13 11/25 17/9
17/15 33/20 33/21 38/24
**comfortably [1]** 33/11
**coming [1]** 15/22
**commensurate [1]** 35/3
**commit [1]** 25/13
**commitment [1]** 9/10
**committed [1]** 19/22
**common [1]** 42/2
**communicated [1]** 9/9
**communication [1]** 35/6
**communications [1]** 35/13
**companies [1]** 25/10
**compelling [3]** 15/9 40/21 41/13
**complaints [1]** 7/12
**compliance [1]** 37/3
**complicated [1]** 35/8
**comport [1]** 13/5
**computer [1]** 4/13
**computer-aided [1]** 4/13
**concept [1]** 27/1
**concerned [2]** 5/2 7/5
**concerning [1]** 10/16
**concerns [1]** 13/21
**concurrence [2]** 40/21 41/13
**conditions [2]** 38/9 42/15
**conduct [3]** 22/2 23/23 42/6
**confer [1]** 43/12
**confined [1]** 11/9
**conforms [1]** 38/18
**Congress [2]** 2/9 2/12
**connection [7]** 24/9 24/10 24/17 24/17
26/14 26/16 41/6
**consider [2]** 7/3 35/23
**considered [1]** 23/24
**conspiracy [4]** 10/21 11/21 11/25
13/14
**Constantin [1]** 5/21
**CONSTANTINESCU [7]** 1/6 2/3 5/10
5/16 5/17 22/7 22/12

**constitute [2]** 27/8 33/7
**constitutes [1]** 26/7
**constitutional [1]** 13/5
**contention [1]** 36/17
**context [1]** 23/11
**continuances [1]** 9/13
**CONTINUED [3]** 2/1 3/1 4/1
**contours [2]** 22/2 44/14
**contrary [1]** 17/5
**control [2]** 32/19 33/3
**conversation [2]** 15/4 18/13
**conviction [1]** 40/24
**COOPERMAN [3]** 3/9 6/14 6/16
**copy [3]** 36/2 36/3 39/10
**Cordova [3]** 3/17 6/18 17/25
**Cordt [2]** 4/4 6/22
**core [6]** 18/6 18/10 18/11 19/1 19/7
20/10
**corner [1]** 15/22
**correct [2]** 42/24 45/8
**corresponding [1]** 44/12
**couching [1]** 43/23
**could [8]** 5/4 12/9 23/2 23/23 24/18
32/10 32/18 32/20
**counsel [6]** 5/2 5/14 13/13 39/6 39/20
41/17
**count [11]** 11/10 11/21 11/21 11/23
13/15 14/2 19/17 19/23 19/25 22/11
22/12
**counterfeit [1]** 26/24
**countless [1]** 31/15
**country [2]** 6/25 34/5
**counts [14]** 10/21 10/24 11/18 12/4
18/5 18/14 19/4 19/9 19/9 19/11 19/16
20/11 21/9 35/9
**course [3]** 16/21 42/6 43/13
**court [22]** 1/1 4/8 11/18 15/17 20/17
28/2 28/7 30/4 31/16 35/20 35/21
35/23 36/2 37/14 39/7 39/8 40/18
41/25 42/1 42/13 45/5 45/14
**Court's [1]** 37/3 40/4
**Courthouse [1]** 4/10
**courtroom [1]** 12/10
**courts [3]** 18/9 25/16 26/7
**cover [3]** 12/13 28/8 38/15
**covered [1]** 23/9
**Covers [1]** 7/1
**CR [2]** 1/4 5/9
**creating [1]** 32/24
**credit [1]** 12/21
**Crime [1]** 39/20
**crimes [1]** 28/9
**criminality [6]** 18/7 18/10 18/11 19/1
19/7 20/10
**critical [2]** 8/11 8/20
**cross [1]** 43/14
**CRR [2]** 4/9 45/13
**crystal [1]** 40/22
**CSR [2]** 4/9 45/13
**Ct [1]** 40/19
**cured [1]** 19/5
**current [1]** 42/15

**D**

**Dallas [1]** 3/22
**damaged [1]** 25/14
**DANIEL [2]** 4/3 6/22

**date [4]** 9/24 10/2 10/5 12/17
**dated [10]** 8/7 9/25 10/1 10/8 10/9
13/14 16/18 16/20 34/14 45/11
**dates [1]** 34/22
**Dawn [1]** 41/8
**day [1]** 38/4
**days [1]** 44/11
**DC [1]** 1/23
**deadline [1]** 15/16
**dealing [2]** 23/13 26/18
**decent [1]** 12/19
**decided [1]** 12/23
**decisions [1]** 32/8
**Deeb [1]** 24/12
**DEEL [2]** 3/3 6/6
**defendant [20]** 2/3 2/7 2/18 3/3 3/5 3/9
3/16 4/3 17/17 20/19 20/24 21/11
21/19 27/23 28/17 29/5 29/7 30/19
41/16 42/11
**defendant's [1]** 40/24
**defendants [32]** 7/9 8/6 8/19 9/17
10/14 14/11 14/18 15/6 16/5 16/22
17/20 19/14 19/15 19/20 28/11 32/1
32/11 32/14 32/23 33/7 33/24 34/1
34/12 34/18 35/5 35/6 35/9 35/10 36/9
37/22 38/3 44/19
**defendants' [5]** 7/23 16/6 28/24 30/22
31/11
**defense [10]** 8/21 13/12 14/21 14/22
27/20 28/3 28/7 35/16 36/17 41/1
**defense's [1]** 37/13
**defies [2]** 21/6 22/2
**definite [1]** 10/7
**definition [1]** 22/16
**defraud [1]** 26/14
**delays [1]** 9/13
**delta [1]** 9/4
**demand [1]** 33/6
**denial [1]** 36/9
**deny [2]** 11/4 38/17
**denying [3]** 6/24 33/17 38/12
**DEPARTMENT [1]** 1/22
**derived [1]** 22/13
**described [1]** 24/13
**despite [2]** 35/8 35/9
**detail [1]** 21/4
**did [8]** 12/18 15/2 23/18 24/5 29/9
29/20 30/1 41/16
**didn't [9]** 15/2 17/17 27/14 29/7 29/11
29/14 36/9 36/13 43/12
**difference [1]** 19/11
**different [9]** 9/17 9/17 12/6 14/16
15/18 19/10 19/17 22/21 23/16
**Dillon [1]** 5/15
**direct [2]** 25/19 27/13
**directly [4]** 26/10 26/19 26/20 36/18
**disagree [2]** 26/1 28/14
**disclose [2]** 43/6 43/16
**disclosure [1]** 43/5
**disclosures [1]** 33/18
**Discord [5]** 7/24 8/4 18/20 20/1 21/23
**discovery [7]** 7/21 9/16 10/7 10/10
12/5 20/8 43/10
**dismiss [8]** 17/24 18/5 19/8 22/5
22/11 31/18 33/16 33/16
**dismissed [1]** 20/12
**dispose [1]** 42/11

**D**

dispute [2] 13/12 20/21
disseminated [1] 21/23
district [5] 1/1 1/1 1/11 25/4 42/2
DIVISION [1] 1/2
do [41] 6/5 8/14 8/22 11/4 11/18 11/22
11/24 12/3 12/3 13/3 13/6 14/5 14/5
14/7 14/21 14/22 15/2 15/19 15/23
16/7 17/20 17/24 24/2 26/11 31/13
33/16 34/17 34/19 34/19 35/2 35/2
36/7 37/16 37/17 40/1 40/6 40/16 41/9
41/11 41/20 45/2
document [1] 40/12
documents [1] 35/4
does [10] 15/23 18/9 20/18 20/18
20/19 21/13 28/9 38/18 39/13 39/16
doesn't [6] 7/18 14/21 15/13 31/12
35/8 36/14
dog [1] 6/8
doing [6] 7/3 7/13 14/9 16/6 17/3
26/25
don't [32] 6/8 7/11 7/12 7/13 8/12
10/17 13/11 15/4 17/20 18/24 20/7
22/1 22/5 25/25 27/9 28/14 33/15
33/25 34/23 35/5 35/11 35/24 36/5
38/4 38/14 38/24 39/3 39/18 40/3 41/5
43/5 44/6
done [8] 13/3 13/6 14/19 19/3 21/18
23/22 24/18 43/20
door [1] 40/12
double [1] 20/20
down [4] 16/25 17/15 33/19 35/15
downside [2] 14/17 14/17
downstairs [1] 39/2
drive [2] 3/11 32/21
due [2] 12/21 16/18
dump [4] 21/8 21/21 32/25 33/1
during [1] 10/15

**E**

each [6] 12/14 14/3 15/25 16/4 27/7
31/20
earlier [1] 34/3
early [2] 7/22 17/7
easy [2] 15/21 38/13
Ed [1] 6/11
editorializing [2] 36/19 36/24
educating [1] 31/24
EDWARD [4] 1/6 2/3 3/6 5/9
effective [1] 8/21
efforts [1] 8/11
eight [7] 14/6 18/5 19/9 19/11 19/16
20/11 21/9
eight months [1] 14/6
Eighteen [1] 22/15
elements [3] 18/9 20/10 20/18
Eleven [7] 18/5 19/9 19/17 19/23
19/25 20/11 21/10
else [5] 12/3 29/1 29/23 34/23 44/25
elsewhere [1] 12/21
emails [1] 10/15
emphasize [1] 33/23
encompass [1] 23/17
encompassed [1] 24/4
end [5] 13/15 13/21 13/24 15/3 34/5
engage [2] 29/9 29/20
engaged [1] 25/19

engaging [3] 22/13 26/21 32/14
enough [5] 13/2 17/7 19/7 34/8 42/12
entire [1] 10/2
entitled [2] 40/13 45/9
Eric [2] 2/23 6/4
escorted [1] 39/1
essentially [4] 10/4 20/9 21/1 35/22
et [2] 1/7 5/10
ether [1] 13/1
evaluate [2] 10/6 10/9
even [9] 9/8 10/6 11/23 16/25 19/24
21/2 25/17 28/18 44/6
everybody [6] 7/1 14/18 17/9 17/16
35/18 40/9
everyone [1] 33/23
everything [9] 7/9 9/3 12/3 14/12
14/18 16/10 27/11 30/11 31/23
evidence [4] 11/2 18/16 18/18 18/21
evidentiary [3] 15/25 16/5 21/16
exactly [3] 13/19 21/2 21/2
example [4] 16/3 26/3 31/6 31/9
examples [1] 21/4
Excel [1] 12/9
excess [1] 42/16
excluded [2] 23/5 23/6
exclusive [1] 22/21
excused [1] 45/3
exercise [2] 24/19 31/23
Exhibit [2] 36/1 39/17
Exhibit 1 [1] 39/17
expect [7] 14/11 14/18 15/10 16/14
17/20 34/15 37/19
expert [13] 16/15 16/16 16/18 17/1
17/5 43/4 43/6 43/20 43/22 43/23
43/23 44/9 44/14
experts [7] 9/14 17/7 34/17 43/24
44/16 44/17 44/17
explains [1] 19/21
explanation [1] 14/16
explanations [1] 15/11
extent [2] 15/18 35/5

**F**

fact [3] 18/17 37/11 41/16
facts [7] 11/22 14/15 20/23 21/19
25/17 26/11 35/3
factual [1] 41/2
factually [1] 29/20
fail [1] 18/5
fair [7] 18/24 21/6 21/7 21/10 22/2
42/12 44/19
fairly [3] 20/18 20/24 21/11
false [20] 13/4 16/4 18/6 18/8 18/10
18/10 18/15 18/17 18/18 18/20 18/25
19/14 19/15 19/19 19/23 21/14 21/14
21/22 21/23 37/21
falsity [1] 19/3
far [3] 17/6 34/11 34/17
fascinating [1] 24/24 25/15
fashion [1] 7/21
federal [1] 23/24
feed [1] 13/14
feeds [2] 12/7 14/1
feels [1] 36/6
few [1] 13/7

fide [3] 25/20 25/25 27/12
Fifth [2] 15/2 35/4
fights [1] 6/9
figure [2] 14/24 15/1
figures [1] 8/17
file [1] 17/16
filed [2] 6/24 7/6
Filippelli [2] 2/4 5/18
final [3] 26/22 34/20 34/24
find [3] 13/2 18/20 25/2
fine [2] 25/1 40/4
fine-toothed [1] 25/1
FINRA [1] 44/10
firm [4] 2/8 3/13 4/4 9/10
first [5] 6/23 9/2 12/5 12/19 17/25
fish [1] 10/5
fits [1] 33/11
flavor [1] 35/7
flexible [1] 35/1
float [3] 32/15 32/17 33/2
Floor [1] 2/24
Florida [1] 25/4
focus [1] 11/17
focused [1] 10/20
folks [1] 39/24
follow [4] 15/10 18/12 32/3 37/11
followers [1] 8/7
fooled [1] 30/19
Ford [5] 2/4 2/5 5/17 22/9 40/9
foregoing [1] 45/8
foreign [1] 22/25
forfeiture [3] 40/13 40/15 41/14
forged [1] 26/24
form [2] 25/10 40/2
formulas [1] 23/16
formulation [1] 24/7
forthcoming [2] 8/9 17/19
forward [1] 15/7
found [4] 9/6 18/9 25/16 34/6
four [2] 22/22 23/18
fourteen [1] 10/25
frame [1] 20/3
Franklin [1] 2/24
frankly [1] 7/5
fraud [37] 10/21 18/7 18/8 19/22 20/6
22/24 22/24 22/24 22/24 23/12 23/16
23/19 23/22 23/24 24/2 24/5 24/22
25/5 25/13 25/24 26/8 26/21 26/23
26/24 27/1 27/8 27/21 28/4 28/10
28/22 28/25 29/4 29/18 31/12 31/21
33/10 44/8
fraudulent [3] 10/8 12/24 26/7
fraudulently [1] 42/5
free [1] 40/6
FREEDMAN [1] 2/23
FRIEDLMAN [1] 2/23
front [2] 15/3 35/11
fulfill [1] 20/8
full [4] 28/5 43/5 43/18 44/21
fund [4] 25/11 26/3 26/6 26/9
fundamental [1] 9/7
funds [3] 27/5 41/10 42/5
further [2] 9/13 42/13

**G**

gap [8] 9/4 13/10 13/18 15/11 16/12
16/12 44/4 44/5

**G**

**GARY [1]** 3/3
**gave [1]** 12/5
**general [3]** 8/17 19/13 21/1
**generally [1]** 25/10
**get [22]** 6/23 7/9 9/11 11/1 11/6 11/8 11/23 11/24 15/5 15/6 15/11 17/4 27/1 34/7 34/15 35/11 35/18 37/10 39/3 39/13 42/25 43/15
**gets [1]** 5/3
**girlfriend [1]** 6/20
**give [10]** 8/16 11/22 12/21 34/10 34/10 34/14 35/11 39/11 44/19 44/22
**given [4]** 9/16 10/4 10/5 10/18
**gives [1]** 36/21
**giving [4]** 13/20 27/6 30/19 36/25
**gloss [1]** 41/15
**go [23]** 5/6 8/25 9/19 9/21 9/25 10/5 11/7 13/2 17/7 18/9 19/1 20/15 24/24 26/2 28/2 28/16 30/7 30/18 31/9 34/1 34/2 34/5 35/19
**goes [5]** 8/17 16/5 18/6 21/16 32/4
**going [69]**
**good [9]** 5/13 5/24 6/11 6/18 7/19 22/10 27/18 34/22 37/24
**got [8]** 9/19 9/24 10/2 10/2 15/2 15/13 31/25 35/7 38/6
**government [29]** 1/15 1/20 5/12 14/11 14/16 14/17 14/20 17/17 18/15 18/22 19/4 19/5 19/18 20/14 23/10 24/25 27/10 34/16 35/15 35/21 36/6 36/8 37/9 37/12 40/9 40/23 41/5 41/22 43/15
**government cited [1]** 24/25
**government's [2]** 24/14 33/18
**GPS [1]** 38/9
**grand [4]** 9/5 19/7 20/9 35/12
**great [4]** 7/20 8/10 13/1 13/7
**grew [1]** 17/13
**group [1]** 19/13
**groups [2]** 30/18 32/2
**guess [2]** 5/11 43/14
**guilty [1]** 34/6
**guys [2]** 14/22 30/11

**H**

**had [11]** 8/2 8/11 13/22 17/17 18/4 24/12 30/23 31/14 32/16 36/8 40/15
**hand [1]** 39/22
**handful [1]** 13/3
**HANEN [1]** 1/10
**happen [2]** 27/15 42/17
**happened [2]** 30/25 44/13
**happening [1]** 31/19
**happens [2]** 8/10 31/20
**happy [1]** 43/6
**has [30]** 6/24 10/18 11/18 14/16 15/7 16/2 16/18 18/15 19/18 19/25 20/10 21/1 22/5 22/20 23/10 23/22 27/25 28/2 29/15 29/21 29/22 30/2 31/16 31/19 33/9 38/8 39/9 39/19 39/21 41/13
**has 15 [1]** 21/1
**hasn't [1]** 10/19
**have [95]**
**haven't [5]** 9/6 9/15 11/3 11/5 33/25
**having [1]** 14/20

**he [21]** 10/18 10/19 12/16 19/23 19/24 19/23 20/5 27/23 29/9 29/11 29/12 29/12 29/14 29/16 29/16 29/20 38/23 42/15 44/3 44/5 44/5
**head [1]** 36/12
**health [4]** 23/22 23/24 24/3 24/4
**heard [1]** 9/15
**hearing [5]** 1/10 5/5 16/25 31/25 35/15
**heels [1]** 21/24
**Heights [1]** 2/15
**held [2]** 29/12 32/23
**help [4]** 6/10 10/11 15/13 37/16
**helpful [2]** 9/22 10/6
**HENNESSEY [11]** 3/16 6/17 6/19 18/3 19/20 19/22 20/2 20/4 20/10 38/8 38/16
**here [32]** 5/8 5/11 5/12 5/18 5/23 5/25 6/5 6/10 6/15 6/19 9/25 10/12 13/10 13/20 13/23 16/4 18/1 18/14 25/6 27/9 29/3 29/8 29/19 31/8 31/16 33/21 34/7 37/16 38/22 40/9 40/12 45/1
**here's [3]** 14/7 43/19 43/20
**Heyward [2]** 1/16 5/15
**hide [1]** 13/20
**high [1]** 32/19
**Hilder [11]** 2/19 2/20 6/3 7/6 7/12 7/17 8/22 22/4 35/17 39/11 40/1
**Hilder's [2]** 8/15 37/23
**him [9]** 5/19 20/2 29/22 29/24 29/25 38/10 39/1 39/3 39/5
**hired [1]** 14/22
**his [10]** 6/20 6/20 7/12 12/11 29/7 29/13 40/25 40/25 41/1 41/17
**hold [3]** 15/15 35/17 37/12
**Honor [38]** 5/13 5/24 6/11 6/18 11/20 12/12 13/11 15/21 16/13 17/23 18/2 18/4 22/6 22/10 27/20 31/3 36/12 36/16 37/19 38/8 38/10 38/14 38/14 38/17 38/18 38/23 38/25 39/15 40/5 40/11 41/19 41/24 42/9 42/12 42/20 43/2 43/9 44/20
**HONORABLE [1]** 1/10
**hopes [1]** 31/10
**HOUSTON [11]** 1/2 1/5 1/18 2/16 2/21 3/8 3/12 3/15 3/19 4/6 4/11
**how [8]** 7/16 9/17 19/22 21/3 23/25 37/21 41/6 44/11
**HRVATIN [3]** 3/5 6/10 6/12 6/13 45/2
**hurt [1]** 17/17
**hypothetically [1]** 30/11

**I**

**I'm [47]**
**iceberg [2]** 10/20 11/12
**identified [5]** 10/23 12/14 12/19 18/16 19/3
**identify [3]** 18/22 19/7 20/9
**identifying [2]** 13/7 19/14
**illegally [2]** 42/5 43/21
**illustrate [1]** 12/2
**impact [2]** 38/2 38/5
**important [4]** 7/2 17/11 18/12 18/14
**impose [1]** 17/10
**imposed [1]** 15/16
**improper [1]** 41/14
**include [7]** 21/13 23/2 23/23 23/25 24/1 27/3 28/10

**included [4]** 22/18 22/22 23/3 23/19
**includes [10]** 9/22 7/23 7/24 7/25 8/3 22/23 23/12 25/5 27/2 39/10
**incorrectly [1]** 43/21
**increased [1]** 25/23
**incredibly [2]** 22/17 23/23
**indicated [1]** 33/25
**indictment [27]** 8/18 9/1 9/4 10/12 10/13 11/11 12/4 14/13 16/22 19/18 19/21 20/17 20/25 21/7 21/10 21/13 22/1 22/3 22/12 27/10 29/18 31/6 31/17 35/7 36/21 36/23 41/10
**individual [5]** 12/11 12/14 16/1 26/10 26/20
**individuals [1]** 37/11
**induce [1]** 21/23
**induced [2]** 30/22 31/8
**inform [3]** 20/18 20/24 21/19
**information [15]** 7/10 8/8 8/19 8/20 14/4 14/23 15/3 15/13 16/19 21/22 21/23 37/12 37/21 39/19 43/7
**informed [1]** 39/1
**informs [1]** 21/11
**inherent [1]** 33/1
**inherited [1]** 12/20
**initial [2]** 12/4 12/4
**innocence [1]** 36/19
**instance [1]** 37/7
**instances [1]** 27/7
**Instead [1]** 24/5
**intended [2]** 23/8 24/1
**intent [1]** 23/8
**interest [2]** 26/9 37/13 37/14
**interesting [2]** 26/12 32/12
**Interestingly [1]** 22/25
**Internet [1]** 32/3
**interpretation [1]** 24/14
**investigate [1]** 9/14
**investigation [1]** 40/17
**investment [2]** 30/18 32/2
**investors [1]** 26/20
**involves [1]** 21/21
**involving [3]** 28/4 28/22 28/25
**isn't [1]** 13/2
**issue [3]** 15/22 20/22 28/1
**issued [1]** 25/9
**issuer [1]** 29/1
**issuers [2]** 28/18 28/18
**it's [30]** 5/7 5/17 9/16 9/18 11/11 12/10 12/12 12/22 14/10 15/21 17/13 18/8 18/14 19/1 20/16 23/6 24/24 25/15 27/21 31/24 32/6 32/6 33/1 33/23 34/16 36/1 38/13 39/24 42/2 42/23
**itself [3]** 23/15 25/25 27/22

**J**

**JACKSON [2]** 3/17 3/20
**James [1]** 3/20
**Janine [1]** 2/4
**January [2]** 7/22 8/11
**jeopardy [1]** 20/20
**job [1]** 12/19
**John [4]** 1/21 2/18 5/15 27/18
**Johnny [2]** 2/11 5/25
**joined [2]** 5/14 6/3
**judge [25]** 1/11 7/4 7/19 8/23 9/1 10/19 15/12 15/14 17/12 17/14 17/22

## J

judge... **[14]** 20/16 25/3 27/18 33/14 35/20 36/4 37/7 37/25 40/4 40/7 41/25 42/1 44/24 45/4
June **[4]** 17/7 43/7 43/8 43/16
June 5th **[3]** 43/7 43/8 43/16
juries **[1]** 9/5
jury **[2]** 19/7 35/12
jury's **[1]** 20/9
just **[35]** 5/5 5/8 6/1 7/2 7/25 10/12 11/16 12/22 13/1 13/7 13/22 14/10 14/13 16/3 16/14 16/20 17/10 18/9 19/12 27/9 27/14 29/24 31/18 34/4 35/20 36/13 36/20 36/21 36/25 38/1 39/19 40/2 40/12 44/2 44/10
JUSTICE **[5]** 1/22 40/20 40/21 41/12 41/12

## K

Keane **[1]** 2/11
keep **[1]** 37/14
kind **[3]** 7/12 21/6 44/13
kinds **[1]** 30/12
knew **[2]** 30/15 31/1
KNIGHT **[3]** 4/3 6/21 6/22
know **[34]** 7/14 11/5 12/25 14/14 14/22 14/24 14/25 16/11 17/6 17/6 17/14 17/16 18/21 18/25 21/6 22/2 23/25 24/14 31/18 31/23 33/24 34/11 34/18 35/5 35/10 35/24 36/5 36/6 37/9 38/1 38/3 38/14 43/16 44/6
knowing **[1]** 14/18
knows **[2]** 20/17 24/16

## L

labor **[1]** 22/25
laid **[2]** 21/25 38/19
Laird **[1]** 30/5
landscape **[1]** 13/22
LANDY **[1]** 2/5
language **[11]** 23/4 23/7 23/13 23/15 23/23 26/13 27/21 28/18 28/22 33/11 36/22
larger **[1]** 10/22
last **[3]** 22/25 40/18 41/25
later **[1]** 23/12
latest **[1]** 10/12
laundering **[1]** 24/20
Laura **[2]** 3/17 6/18
law **[12]** 2/8 2/14 3/11 3/13 7/15 15/23 28/5 28/23 29/1 29/2 40/17 41/14
laws **[1]** 24/8
laws and **[1]** 24/8
lawyers **[2]** 14/23 35/16
lawyers' **[1]** 14/21
leading **[1]** 41/13
least **[5]** 12/6 29/17 30/1 31/24 41/15
leave **[3]** 6/25 39/3 43/15
left **[1]** 40/18
legal **[3]** 7/14 16/2 41/1
legislature **[8]** 22/20 23/2 23/18 23/22 24/1 24/16 24/20 26/25
lengths **[1]** 7/20
less **[2]** 28/21 33/24
let **[13]** 6/23 6/25 7/17 8/23 10/11 11/16 17/8 25/15 28/12 35/17 36/3 39/4 42/24

let's **[15]** 13/9 15/7 30/7 30/19 30/13 31/11 32/1 32/15 34/7 34/15 35/17 35/2 35/18 38/3 44/19
letting **[1]** 34/4
Lewis **[2]** 3/10 6/15
liability **[1]** 44/17
lie **[1]** 25/12
like **[15]** 9/20 10/25 14/13 33/19 34/24 35/8 35/20 35/23 36/6 37/8 40/2 41/3 42/8 43/24 44/8
likely **[1]** 31/8
limit **[2]** 28/7 28/18
limited **[1]** 10/3
limiting **[2]** 32/20 33/4
limits **[1]** 26/17
line **[2]** 9/18 36/18
Liolos **[3]** 1/21 5/15 27/18
list **[16]** 8/16 10/8 10/13 10/13 13/13 13/21 13/23 13/24 13/25 14/1 22/17 22/17 22/21 23/3 23/5 28/9
listed **[4]** 22/21 26/23 29/3 41/3
lists **[1]** 22/19
little **[4]** 14/3 19/10 19/17 39/21
live **[5]** 33/22 33/22 35/3 35/18 37/2
lives **[1]** 15/7
LLC **[1]** 2/11
LLP **[4]** 2/23 3/7 3/17 3/20
lock **[1]** 32/17
long **[3]** 22/17 23/12 28/9
look **[20]** 8/2 9/19 9/21 9/25 11/18 13/17 17/4 17/15 19/2 19/2 24/7 24/13 25/7 26/13 29/6 32/14 32/17 36/3 36/14 40/1
looked **[2]** 15/13 27/3
looking **[1]** 18/20
looks **[3]** 30/4 40/2 41/3
loss **[1]** 44/1
lot **[7]** 11/11 11/22 13/12 31/7 32/13 32/16 36/14
Louisiana **[1]** 1/17
love **[1]** 43/13
Lovett **[1]** 2/21
low **[2]** 32/15 33/2
luck **[1]** 5/22
Luis **[4]** 2/8 5/24 40/19 41/11

## M

made **[8]** 8/10 12/24 19/14 19/20 21/14 36/5 41/4 42/22
magistrate **[2]** 41/25 42/1
Maid **[1]** 9/20
mail **[2]** 22/23 25/5
main **[2]** 11/17 28/8
mainly **[1]** 24/22
maintained **[1]** 13/25
make **[9]** 5/6 8/11 11/16 14/10 28/20 28/21 31/23 32/8 34/14
making **[3]** 5/2 16/3 25/6
Mallett **[5]** 3/6 3/7 6/10 6/12 38/22
Malone **[5]** 4/9 45/12 45/13
man **[1]** 32/3
many **[1]** 34/4
MARCH **[4]** 1/6 16/1 16/19 45/11
market **[8]** 25/21 29/9 29/13 29/20 31/4 33/4 37/22 44/17
marketplace **[1]** 27/12
marshals **[1]** 39/1

mass **[2]** 8/11 8/20
Massachusetts **[1]** 2/25
match **[8]** 8/4 10/14 30/2 31/20
matched **[1]** 32/10
materiality **[1]** 37/20
math **[1]** 44/2
MATLOCK **[3]** 2/7 5/23 5/25
matter **[4]** 15/15 41/18 43/10 45/2
Matthew **[2]** 2/4 5/17
may **[12]** 9/17 11/16 13/11 17/7 34/9 34/22 34/22 37/5 38/25 39/23 40/11 40/23
maybe **[5]** 13/15 14/15 16/25 17/13 35/5
Mayra **[3]** 4/9 45/12 45/13
McKinney **[2]** 3/14 3/18
me **[17]** 6/10 6/23 7/16 7/17 9/20 10/11 10/12 11/16 13/1 25/15 28/12 30/10 31/24 36/3 37/16 39/22 42/24
mean **[20]** 5/4 7/1 7/13 7/14 14/12 14/13 14/14 14/20 14/21 14/23 16/10 16/11 17/2 17/13 21/14 29/16 31/2 35/6 43/18 44/21
meaning **[1]** 32/17
meantime **[1]** 39/5
meat **[2]** 16/14 36/21
mechanical **[1]** 4/13
media **[8]** 7/23 9/19 9/24 10/5 11/8 12/6 12/18 13/2
meet **[1]** 15/16
memorandum **[1]** 25/11
mentioned **[1]** 23/18
message **[1]** 20/1
messages **[1]** 18/20
Michael **[2]** 3/20 6/19
might **[3]** 7/3 30/18 36/13
million **[13]** 9/3 9/5 9/9 10/3 10/25 11/3 11/5 12/1 13/10 13/18 14/2 15/11 44/4
Minute **[1]** 9/20
minutes **[1]** 40/16
misrepresentations **[3]** 12/25 30/23 32/21
misstatement **[1]** 42/22
misusing **[1]** 26/10
MITCHELL **[1]** 3/16
MK **[1]** 3/17
modify **[1]** 38/9
moment **[1]** 40/11
monetary **[1]** 22/13
money **[3]** 13/10 24/20 41/4
monitor **[1]** 38/10
month **[6]** 8/15 13/15 13/21 13/24 19/12
months **[3]** 9/2 9/6 14/6
more **[7]** 8/9 10/25 11/7 12/22 32/9 33/23 39/19
morning **[7]** 5/13 5/24 6/11 6/18 7/19 22/10 27/18
most **[1]** 36/25
mother **[1]** 6/20
motion **[12]** 1/10 6/24 7/6 8/15 14/8 15/9 22/25 31/17 33/18 38/9 38/16 38/19
motions **[4]** 5/4 17/24 33/15 33/16
mount **[1]** 8/20
move **[2]** 8/12 15/7

## M

moved [2] 18/4 19/8
moving [1] 22/11
Mr [6] 6/2 6/19 8/15 8/25 40/1 41/23
Mr. [52]
Mr. Armstrong [10] 7/11 10/17 13/9
15/5 20/15 27/17 36/11 39/13 41/20
44/23
Mr. Carter [1] 41/22
Mr. Constantinescu [3] 5/16 22/7
22/12
Mr. Cooperman [2] 6/14 6/16
Mr. Deel [1] 6/6
Mr. Ford [2] 22/9 40/9
Mr. Hennessey [9] 6/17 18/3 19/20
19/22 20/2 20/4 20/10 38/8 38/16
Mr. Hilder [7] 7/6 7/12 7/17 8/22 22/4
35/17 39/11
Mr. Hilder's [1] 37/23
Mr. Hrvatin [2] 6/12 45/2
Mr. Knight [1] 6/21
Mr. Mallett [2] 6/10 38/22
Mr. Matlock [2] 5/23 5/25
Mr. Williams [6] 10/11 13/22 14/8 15/8
15/10 22/5
Mr. Williams's [3] 14/10 33/17 44/3
Ms. [1] 17/25
Ms. Cordova [1] 17/25
much [6] 10/21 23/11 32/18 33/3 33/3
33/21
Murtha [2] 3/20 6/19
must [1] 32/24
my [14] 5/18 8/23 12/7 17/15 18/1
25/18 25/19 27/14 36/5 36/12 40/17
40/17 41/4 42/14

## N

nab [1] 40/10
name [1] 16/3
narrow [1] 24/5
nature [3] 21/11 21/19 33/1
necessarily [3] 7/7 30/21 33/10
need [19] 7/9 7/14 9/10 9/14 9/21 11/5
12/21 12/25 14/23 16/12 17/1 17/2
17/3 17/4 18/25 34/19 37/10 38/3
39/13
needed [2] 24/2 36/10
neutral [1] 36/7
never [2] 17/17 25/6
new [3] 1/23 14/9 27/17
Nine [6] 18/5 19/9 19/11 19/16 20/11
21/10
Ninth [1] 24/12
no [29] 3/4 6/7 11/7 12/1 13/19 14/12
14/17 14/17 15/11 16/2 18/8 19/12
19/23 19/23 20/1 20/2 20/21 22/6
25/17 27/25 29/1 29/2 29/18 29/20
29/24 38/7 40/5 40/14 42/10
none [4] 18/20 27/3 28/20 29/3
normal [1] 20/25
NORMAND [1] 2/23
Northwest [1] 1/23
not [73]
nothing [3] 20/1 27/7 42/3
notice [4] 18/24 20/5 21/7 36/25
novel [2] 27/23 27/25
now [15] 8/9 14/8 14/15 14/20 15/3

15/9 15/13 17/24 23/10 30/17 34/2
34/16 34/20 43/13 43/25

## O

O'BRIEN [1] 2/5
objection [3] 36/2 40/3 40/5
obtain [1] 41/7
obtained [1] 42/5
obtaining [1] 41/17
obvious [1] 8/5
Obviously [1] 37/10
occurred [1] 44/12
October [5] 34/8 34/21 34/25 34/25
42/23
October 23rd [1] 34/25
October 6th [2] 34/25 42/23
off [7] 12/17 13/4 33/19 35/14 36/12
39/4 40/18
offense [6] 21/12 23/24 24/20 28/4
28/22 28/25
offenses [4] 22/22 22/22 22/23 23/19
offering [2] 44/6 44/7
offerings [3] 25/9 26/19 27/6
Office [1] 17/15
OFFICIAL [2] 4/8 45/14
Oh [1] 9/18
Okay [9] 8/25 12/15 14/7 22/4 27/16
32/5 33/13 38/22 41/20
omissions [1] 32/21
omitted [1] 23/21
once [1] 15/10
one [35] 9/2 11/21 11/22 11/23 12/6
13/19 14/2 15/25 16/4 17/10 17/25
18/9 22/11 22/25 23/21 25/1 25/2
26/22 27/4 27/21 27/25 29/1 29/24
31/24 32/10 32/10 34/4 34/16 36/8
36/16 37/8 37/24 41/16 43/13 43/25
ones [1] 23/21
online [1] 7/25
only [6] 9/4 10/9 11/6 20/22 27/25
39/16
open [4] 29/9 29/13 29/20 33/4
operated [1] 21/3
opinion [6] 15/19 30/5 40/20 41/12
43/24 44/7
opinions [1] 9/17
opportunity [1] 40/16
opposed [1] 44/17
opposite [1] 8/6
order [9] 16/17 16/24 17/3 36/5 37/4
37/9 38/19 39/4 42/13
ordered [1] 16/8
ordering [1] 42/11
other [23] 11/3 11/5 14/3 15/18 19/20
20/4 23/21 24/7 25/7 26/18 28/9 28/20
30/2 30/9 30/17 30/24 31/15 33/15
34/1 35/12 37/2 37/8 44/9
others [1] 21/23
Otherwise [1] 9/12 17/10
our [16] 8/8 9/1 18/19 19/4 28/3 30/6
36/1 36/2 36/19 36/24 37/3 37/13
38/19 38/21 39/24 43/4
out [21] 6/23 7/4 7/12 7/22 12/12
14/24 15/1 17/16 21/20 21/22 22/1
23/11 30/12 31/6 32/5 32/5 34/5 37/6

38/19 40/12 43/19
outrageous [1] 7/2
outside [1] 24/14
over [5] 9/6 22/21 23/10 34/12 34/13
overly [1] 35/8
overrule [1] 14/8
overruling [1] 15/8
own [3] 10/14 10/15 10/15

## P

page [4] 12/7 30/5 39/17 39/18
Palermo [1] 7/4
papers [2] 28/3 30/6
paragraph [6] 8/18 21/2 21/20 22/1
36/20 36/23
paragraphs [2] 21/1 21/4
Park [1] 9/20
Parkway [1] 4/5
part [6] 20/16 31/22 31/24 32/13 32/23
42/14
particular [1] 42/3
particulars [4] 7/6 18/13 19/5 20/8
passports [1] 6/24
past [2] 14/3 40/16
PC [1] 2/20
PDF [2] 12/7 12/11
pending [2] 33/18 38/8
people [10] 15/18 20/4 27/5 30/17
30/17 32/2 32/7 32/22 33/8 33/8
percentage [1] 32/19
Perhaps [1] 31/14
period [3] 10/14 10/16 12/8
permitted [1] 42/15
PERRY [1] 2/7
person [1] 27/14
perspective [1] 41/2
Philip [2] 2/19 6/3
phrase [3] 24/5 24/9 24/17
piece [3] 14/24 26/12 26/22
pieces [2] 8/8 16/23
pillars [1] 8/8
PJ [1] 2/7
placed [1] 38/10
placement [1] 25/10
placements [1] 26/19
plain [2] 23/4 23/7
play [3] 9/12 37/5 37/17
played [1] 39/9
plea [1] 39/21
pleading [1] 19/13
plenty [1] 34/18
plurality [2] 40/19 41/12
point [9] 7/8 8/14 13/8 14/3 15/20 16/6
31/11 37/4 37/8
pointed [1] 21/20
pointing [1] 13/1
points [1] 36/17
Ponzi [1] 27/4
portion [1] 33/8
possibly [3] 27/2 32/18 34/6
post [2] 35/22 39/9
practical [1] 35/2
precise [2] 12/2 16/16
predicate [2] 25/1 26/23
prefer [1] 16/25
prejudice [1] 33/17
preloaded [1] 21/21

## P

**present [2]** 18/18 21/17
**presenting [1]** 14/1
**presents [1]** 27/23
**presumably [1]** 29/17
**presumption [1]** 36/19
**pretense [1]** 18/10
**pretrial [3]** 34/20 34/24 42/22
**pretty [5]** 8/5 15/24 16/11 26/25 33/21
**price [7]** 21/24 25/23 30/13 30/15 31/2 31/4 44/13
**prices [1]** 31/7
**principal [1]** 36/17
**printed [1]** 12/12
**prior [5]** 18/13 25/22 36/5 40/23 41/4
**private [3]** 25/10 26/19 32/15
**probably [2]** 34/21 37/2
**probing [1]** 43/3
**problem [4]** 8/12 9/7 25/16 38/7
**proceedings [3]** 4/13 4/20 45/9
**proceeds [1]** 44/8
**process [1]** 26/21
**produce [7]** 7/20 14/12 16/10 37/9 38/4 38/4 43/4
**produced [2]** 4/13 12/5
**production [3]** 8/9 14/9 15/19
**proffer [1]** 43/24
**profit [2]** 19/25 44/1
**promoting [1]** 33/6
**prong [1]** 20/22
**proof [2]** 16/5 21/16
**property [3]** 22/13 40/13 40/15
**proposed [2]** 36/8 43/24
**prosecutors [1]** 19/6
**protect [1]** 20/19
**protection [1]** 20/23
**prove [3]** 30/11 37/20 37/21
**provide [6]** 13/24 14/4 15/25 16/1 16/16 36/2
**provided [2]** 10/7 18/15
**provides [1]** 22/17
**providing [2]** 13/13 16/19
**provision [2]** 22/24 24/3
**public [4]** 8/7 27/14 32/19 36/25
**pump [4]** 21/8 21/21 32/25 33/1
**pumped [1]** 30/13
**punishable [3]** 28/5 28/23 29/1
**purchase [6]** 24/10 24/18 26/5 29/18 30/23 33/9
**purchased [4]** 29/16 41/4 41/8 42/4
**purchasing [3]** 26/9 26/20 33/2
**purpose [2]** 41/1 41/17
**pushing [1]** 7/22
**put [6]** 12/15 16/14 16/22 20/4 28/21 39/25
**putting [2]** 37/22 39/15

## Q

**Quentin [1]** 2/20
**question [3]** 25/15 27/24 39/16
**quite [4]** 7/5 27/2 43/23 44/14
**quotes [1]** 43/25

## R

**racketeering [2]** 22/19 24/21
**raise [1]** 21/24
**raised [3]** 8/15 13/22 25/6

**Ranch [1]** 2/5
**range [3]** 13/14 16/20 21/9
**ranges [3]** 8/17 9/25 10/1
**read [5]** 10/12 14/13 14/14 29/17 39/12
**reading [5]** 21/6 21/10 22/2 24/15 35/7
**readings [2]** 28/20 28/24
**real [1]** 31/22
**realistic [2]** 34/8 34/16
**really [11]** 3/1 6/8 7/5 7/8 14/2 19/13 20/21 25/18 27/24 33/25 43/19
**reason [5]** 5/3 7/3 13/20 14/12 18/14
**reasons [3]** 7/4 31/25 34/16
**received [1]** 40/12
**receiving [1]** 10/7
**recently [1]** 38/10
**recessed [1]** 39/7
**reciprocal [1]** 43/10
**recommendation [2]** 25/3 25/5
**record [3]** 5/8 42/14 45/9
**recorded [1]** 4/13
**records [2]** 8/4 8/5
**reference [1]** 22/18
**refers [1]** 22/15
**refile [1]** 15/12
**regard [1]** 23/18
**regardless [1]** 41/11
**registered [1]** 26/17
**regulations [1]** 24/9
**release [1]** 38/9
**relevant [4]** 12/8 12/18 13/7 28/19
**relied [3]** 30/19 32/7 37/21
**remember [1]** 36/13
**remotely [1]** 17/18
**remove [1]** 38/9
**repeating [1]** 11/16
**replace [1]** 24/3
**replaced [1]** 9/21
**replies [1]** 12/15
**report [10]** 16/17 16/18 17/1 25/3 25/5 43/16 43/18 44/19 44/21 44/22
**REPORTER [2]** 4/8 45/14
**reports [3]** 43/5 43/6 43/17
**representation [4]** 18/6 18/8 18/11 19/23
**representations [2]** 18/25 31/5
**represents [1]** 26/5
**request [1]** 38/17
**requested [1]** 38/19
**require [1]** 15/23
**required [2]** 21/18 21/18
**requirements [1]** 13/5 43/18
**resembled [1]** 17/18
**respect [6]** 12/16 15/9 19/7 19/15 19/22 20/6
**respectfully [1]** 36/20 38/17
**respond [5]** 7/13 7/17 8/24 17/4 17/8
**response [6]** 6/7 7/14 36/1 38/20 38/21
**responses [1]** 37/10
**restricted [1]** 34/3
**restrictions [1]** 34/5
**resumed [1]** 39/8
**retain [1]** 39/20
**retaining [1]** 41/17
**return [1]** 6/24
**review [2]** 9/14 42/8

**Reyes [3]** 2/8 2/11 5/24
**RGLS [1]** 19/16
**Rhonda [1]** 39/9
**right [29]** 6/2 6/5 6/17 14/8 15/9 16/11 20/13 23/24 26/3 28/13 28/16 30/3 30/22 31/16 34/10 34/20 35/14 39/6 39/20 39/20 40/2 40/6 40/8 40/25 40/25 42/21 43/15 43/25 44/23
**RMR [2]** 4/9 45/13
**Road [1]** 2/5
**robbing [1]** 5/19
**role [4]** 19/6 20/8 20/9 37/16
**roll [1]** 5/11
**rolling [1]** 37/9
**rollingly [1]** 38/3
**Rolls [1]** 41/8
**Rolls-Royce [1]** 41/8
**roof [1]** 32/4
**room [4]** 4/10 7/25 12/13 25/18
**Rosen [2]** 2/23 6/4
**Ross [1]** 3/21
**rotten [1]** 9/20
**round [1]** 12/5
**Royce [1]** 41/8
**ruled [1]** 5/4
**rules [1]** 7/14
**ruling [2]** 7/1 42/18
**running [2]** 27/5 44/2
**Rusk [1]** 4/10
**RYBARCZYK [2]** 2/18 6/2

## S

**said [17]** 9/2 11/10 11/11 12/16 12/24 14/4 14/20 15/1 15/4 17/15 29/24 34/1 34/3 34/4 34/17 41/11 42/22
**sale [22]** 23/13 24/6 24/10 24/18 24/22 25/24 25/24 25/25 26/6 26/8 26/24 27/2 27/8 27/21 28/4 28/22 28/25 29/5 30/20 31/13 31/19 33/10
**sales [2]** 27/11 29/21
**same [3]** 13/21 24/3 25/8
**sank [1]** 11/13
**SAPER [1]** 3/7
**saw [1]** 36/8
**say [13]** 9/21 9/25 11/4 12/7 12/15 15/12 16/2 22/1 30/10 30/14 32/1 32/15 38/5
**saying [11]** 8/6 8/7 9/18 10/4 11/15 11/16 12/15 13/2 26/7 27/10 28/8
**says [4]** 16/17 26/13 27/10 28/4
**schedule [8]** 33/20 33/21 33/23 34/8 35/2 35/18 37/14 43/1
**scheduled [1]** 34/20
**scheduling [4]** 16/17 16/24 39/4 42/22
**scheme [14]** 21/2 21/8 21/20 21/21 26/14 26/16 28/2 28/19 32/1 32/13 32/25 33/2 41/5 42/6
**schemes [1]** 27/4
**Scott [2]** 1/21 5/13
**scrutinized [1]** 18/16
**SEC [1]** 12/20
**second [2]** 9/1 20/22
**secondly [2]** 28/17 40/8
**section [6]** 12/23 20/5 22/15 22/16 23/1 23/8
**Section 1348 [3]** 20/5 23/1 23/8
**Section 1956 [1]** 22/16

**S**

**Section 1957 [1]** 22/15
**securities [31]** 18/7 18/8 19/22 20/6 23/13 23/16 24/2 24/6 24/8 24/11 24/18 24/23 25/9 25/25 26/17 26/18 26/23 26/24 27/8 27/22 28/5 28/10 28/23 28/25 29/5 29/8 29/9 29/12 29/25 31/19 33/11
**security [5]** 24/4 25/20 26/9 29/21 29/22
**see [13]** 7/16 11/7 11/13 12/18 15/21 24/7 24/8 25/7 27/9 27/11 27/13 28/12 33/20
**seeing [1]** 10/20
**seeking [1]** 40/10
**seeks [1]** 28/17
**seem [3]** 13/10 27/20 35/8
**seems [1]** 27/25
**seen [3]** 35/24 36/11 39/18
**segregate [2]** 12/17 13/4
**seize [2]** 40/13 40/23
**self [1]** 15/16
**self-imposed [1]** 15/16
**sell [7]** 25/12 25/20 29/7 29/11 29/14 32/5 41/16
**selling [2]** 24/22 26/21
**send [1]** 37/5
**sense [3]** 26/8 28/20 28/21
**sent [2]** 30/12 36/2
**sentencing [1]** 38/2
**separated [1]** 12/9
**September [2]** 8/13 15/5
**services [1]** 41/6
**set [4]** 5/7 7/4 7/12 33/24
**sets [1]** 43/19
**seven [1]** 16/5
**share [1]** 30/12
**shares [4]** 21/22 21/25 32/16 33/3
**she [1]** 44/6
**Shepherd [1]** 3/11
**shifting [1]** 13/22
**should [7]** 5/11 8/19 12/3 20/12 43/16 43/18 43/19
**show [2]** 7/2 41/6
**sic [1]** 23/3
**side [5]** 30/2 30/9 30/24 31/15 35/11
**sides [2]** 29/21 33/9
**signed [2]** 41/24 42/1
**significant [2]** 32/23 33/7
**simpler [1]** 29/4
**simply [1]** 26/11
**Sina [3]** 3/13 3/13 6/15
**single [2]** 25/1 28/10
**sit [3]** 16/25 33/19 35/15
**sitting [1]** 18/1
**situation [1]** 26/6
**six [2]** 22/23 23/19
**Sixth [3]** 2/24 40/22 40/25
**slightly [1]** 27/1
**smallest [1]** 36/21
**so [67]**
**social [8]** 7/23 9/19 9/23 10/5 11/8 12/5 12/18 13/2
**sold [7]** 21/25 29/12 30/13 30/14 30/14 31/7 32/24
**solid [1]** 34/14
**some [10]** 5/4 12/19 12/20 17/24 21/4

29/18 29/16 33/24 35/13 39/10
**somebody [1]** 7/1
**somehow [1]** 11/24
**someone [6]** 27/17 29/22 29/23 30/24 31/14 44/9
**something [8]** 6/23 7/24 15/12 17/9 34/23 38/5 39/24 43/19
**sometime [1]** 17/7
**somewhat [1]** 12/19
**soon [1]** 34/6
**sorry [4]** 5/20 20/23 22/8 38/21
**sort [1]** 27/1
**South [2]** 2/5 3/11
**SOUTHERN [2]** 1/1 25/4
**speak [1]** 35/18
**speaks [2]** 23/15 27/22
**special [1]** 42/3
**specific [13]** 12/24 19/12 19/19 19/25 20/1 20/6 21/4 21/8 21/9 22/17 24/21 34/10 44/11
**specifically [5]** 23/3 23/6 24/2 25/19 42/4
**specifics [1]** 7/7
**specified [3]** 22/14 22/16 23/9
**speedy [1]** 38/15
**spreadsheet [2]** 12/9 13/1
**stack [1]** 18/1
**stadium [1]** 9/22
**stand [3]** 19/6 19/6 42/9
**standard [1]** 42/2
**start [4]** 13/9 13/9 34/11 34/14
**started [2]** 32/2 34/16
**starting [1]** 13/8
**state [1]** 29/4
**statement [8]** 18/20 18/23 18/23 18/24 19/13 20/1 21/15 39/24
**statements [12]** 16/4 18/15 18/17 18/18 19/12 19/14 19/15 19/19 19/19 20/4 21/14 38/6
**STATES [15]** 1/1 1/4 1/11 1/16 1/22 5/9 5/14 27/19 28/5 28/23 29/2 29/2 34/12 40/19 41/11
**statute [10]** 12/24 18/7 19/8 20/6 23/7 25/14 28/10 29/3 29/19 33/12
**statutes [1]** 23/16
**statutory [3]** 27/24 28/2 28/19
**stay [2]** 34/24 42/7
**staying [1]** 42/10
**STEFAN [1]** 3/5
**stenography [1]** 4/13
**step [3]** 33/19 35/14 39/4
**steps [1]** 21/21
**still [2]** 32/5 34/22
**stock [24]** 10/8 10/13 10/15 10/16 10/21 12/11 12/14 12/16 12/22 14/25 15/1 20/7 25/12 25/23 30/12 30/23 31/6 31/8 32/4 32/6 33/2 33/5 33/9
**stocks [13]** 9/8 9/11 10/23 11/6 11/10 13/3 13/7 13/17 32/13 32/16 32/17 32/22 32/23
**stone [1]** 33/24
**stop [3]** 10/11 28/6 28/12
**Stradley [2]** 2/14 6/1
**straightforward [1]** 30/20
**Street [3]** 2/24 3/14 3/18
**stressing [2]** 15/3 26/3

**structure [1]** 23/8
**subdivide [1]** 36/10
**subject [2]** 40/13 40/15
**submission [1]** 37/3
**submitted [4]** 35/21 35/22 39/17 41/25
**subscription [3]** 26/4 26/5 26/6
**Subsection [1]** 22/20
**substantial [1]** 40/20
**substantive [5]** 10/21 11/9 12/4 22/23 40/17
**such [2]** 28/1 44/7
**sufficiency [1]** 15/19
**sufficient [2]** 20/18 20/23
**suggest [2]** 15/15 28/11
**suggested [1]** 11/18
**suggestion [1]** 37/23
**suggestions [2]** 39/10 40/4
**Suite [9]** 1/17 2/9 2/12 2/15 3/8 3/14 3/18 3/21 4/5
**summary [1]** 11/2
**superseding [5]** 8/18 10/13 14/13 19/18 36/23
**supply [1]** 33/5
**support [1]** 37/1
**Supreme [1]** 40/18
**sure [10]** 5/2 5/6 8/11 8/23 11/17 31/23 34/14 35/10 35/12 41/6
**surprises [1]** 11/7
**suspect [2]** 10/1 12/13
**Sutton [3]** 2/11 2/11 5/25
**syllable [1]** 5/19

**T**

**table [1]** 5/14
**take [13]** 10/23 12/16 12/17 15/15 23/11 24/3 31/16 33/16 36/14 38/11 38/12 44/25 45/2
**taken [2]** 7/20 36/20
**talk [5]** 17/1 19/11 42/25 44/11 44/12
**talking [9]** 14/3 21/1 25/8 27/4 27/5 27/11 34/17 42/21 44/10
**target [1]** 24/21
**Tate [3]** 2/20 6/3 8/24
**tease [1]** 11/12
**tell [5]** 7/16 7/17 9/6 13/4 30/10
**telling [1]** 32/2
**term [1]** 28/18
**terms [1]** 29/19
**test [1]** 20/17
**testify [1]** 37/18 38/2 43/20
**testimony [2]** 43/23 44/14
**TEXAS [15]** 1/1 1/5 1/18 2/6 2/10 2/13 2/16 2/21 3/8 3/12 3/15 3/19 3/22 4/6 4/11
**text [4]** 23/12 28/1 28/1 28/7
**than [3]** 11/11 14/16 18/21
**thank [19]** 7/19 17/12 17/22 17/23 20/16 27/16 33/14 37/7 37/25 39/6 39/15 40/7 41/19 42/12 42/20 43/2 44/23 44/24 45/4
**thankfully [1]** 15/17
**that's [29]** 5/3 6/25 9/7 9/8 9/10 9/19 9/22 10/6 10/7 11/12 11/12 12/2 13/12 14/22 15/14 17/11 19/4 19/8 23/13 23/21 26/7 28/9 28/12 29/22 34/8 35/3 40/2 40/15 44/13
**their [22]** 7/23 7/24 8/1 8/3 8/7 10/2

**T**

their... **[16]** 10/4 10/14 10/15 10/15 15/1 15/16 15/16 15/19 17/20 21/25 25/23 32/2 32/8 32/15 32/20 35/11

them **[20]** 7/4 10/18 10/18 10/24 11/3 12/6 13/7 13/15 13/20 16/7 17/21 24/25 27/7 28/21 32/3 34/4 37/17 38/4 39/11 44/22

themselves **[1]** 21/25

then **[23]** 7/16 9/15 10/9 11/7 15/12 16/22 19/13 21/3 21/7 21/24 26/10 26/17 30/13 32/9 32/20 32/22 33/5 33/7 35/17 37/5 37/23 37/24 39/21

there **[40]** 8/9 9/5 9/10 10/11 11/7 13/12 17/15 18/8 19/21 20/21 20/22 20/23 21/3 21/7 26/22 26/23 28/12 29/15 29/17 29/18 29/21 30/1 30/10 30/23 31/14 31/15 31/18 31/20 32/9 33/9 33/24 34/1 34/9 35/12 36/10 41/7 41/15 42/3 43/10 44/25

there's **[11]** 9/4 14/12 14/17 14/17 15/11 19/23 19/23 25/17 26/12 30/9 40/14

therefore **[6]** 12/25 19/3 19/21 20/7 20/11 33/4

these **[20]** 5/4 12/16 15/6 18/9 26/2 30/18 31/19 32/17 32/22 35/13 36/6 36/7 37/11 38/5 42/2 42/3 42/7 43/6 43/18 44/7

they **[138]**

they're **[1]** 11/2

thing **[1]** 27/21

things **[2]** 12/16 36/15

think **[42]** 7/4 7/11 9/16 13/4 13/11 14/2 16/2 17/6 17/10 17/25 20/7 23/3 23/6 23/11 23/15 24/13 24/19 25/25 26/25 27/25 30/5 30/11 31/8 33/15 34/23 35/6 36/16 37/1 37/13 37/16 37/17 37/20 37/23 38/3 38/15 39/18 41/6 41/13 42/23 43/4 43/19 44/16

third **[2]** 12/10 20/22

this **[68]**

Thomas **[2]** 1/16 40/21

Thomas's **[1]** 41/12

those **[25]** 8/7 10/1 11/6 12/25 13/14 13/17 18/17 18/18 19/1 19/4 19/8 19/19 20/12 22/22 23/19 25/16 27/7 31/9 32/7 32/22 33/8 34/5 34/21 38/4 42/11

though **[2]** 28/13 28/18

thought **[1]** 36/10

three **[6]** 12/6 19/9 20/16 21/21 40/16 41/3

three-part **[1]** 20/16

through **[12]** 10/24 11/19 18/19 24/24 24/25 25/11 25/23 28/2 28/3 32/4 41/5 42/5

ticker **[6]** 12/22 16/3 16/4 16/6 19/13 21/8

tickers **[9]** 8/16 13/13 13/14 13/23 16/1 16/20 21/5 31/6 44/1

tickers and **[2]** 8/16 16/20

tied **[1]** 41/9

time **[15]** 7/8 7/9 9/6 9/14 12/8 15/20 17/4 20/3 23/1 31/20 32/11 34/19 37/10 40/14 41/4

timely **[1]** 7/21

tip **[2]** 10/20 11/12

Titanic **[1]** 11/13

Title **[2]** 22/21 23/19

today **[5]** 23/14 25/6 38/11 38/12 38/15

today's **[1]** 6/9

together **[7]** 14/24 16/23 28/21 34/15 39/16 39/25 42/25

told **[5]** 9/5 11/6 13/12 13/15 34/9

TOM **[1]** 3/9

toothed **[1]** 25/1

top **[2]** 11/14 36/12

tortured **[1]** 24/15

total **[1]** 43/12

tout **[1]** 32/6

track **[3]** 5/3 5/6 20/18

trade **[6]** 9/24 10/2 10/5 12/17 19/24 30/3

traded **[1]** 19/24

trades **[3]** 10/15 14/25 19/2

trading **[6]** 8/3 8/5 8/6 20/2 32/16 44/10

transaction **[8]** 25/19 25/20 25/21 29/21 30/24 31/15 32/10 33/10

transactions **[8]** 10/8 22/13 27/12 27/13 29/10 31/16 31/19 32/15

transcript **[3]** 1/10 4/13 45/8

transcription **[1]** 4/13

transfer **[1]** 42/15

trend **[1]** 25/8

trial **[19]** 5/6 5/7 8/13 9/12 9/13 11/1 14/1 14/6 17/2 18/18 21/17 34/1 34/2 34/21 34/23 34/25 37/17 38/16 42/23

tried **[1]** 15/6

true **[5]** 18/22 18/23 18/23 31/12 37/11

truly **[1]** 43/5

try **[3]** 23/11 34/8 34/9

trying **[3]** 13/19 17/14 27/1

turn **[1]** 15/12

tweet **[2]** 20/1 44/12

tweeted **[1]** 21/22

tweeting **[1]** 25/24

tweets **[8]** 7/24 8/4 10/15 12/11 18/19 19/2 30/13 32/7

twenty **[2]** 2/14 10/24 10/25 22/11

Twenty-one **[1]** 22/11

Twenty-Sixth **[1]** 2/24

twitter **[1]** 12/7

two **[11]** 8/8 9/2 9/6 10/24 11/18 28/8 29/21 33/9 38/5 40/16 41/3

twofold **[1]** 43/25

types **[1]** 24/21

**U**

U.S **[3]** 4/10 17/14 24/12

unbelievable **[1]** 31/18

unbelievably **[1]** 7/2

unconstitutional **[1]** 41/15

under **[15]** 11/13 12/23 18/7 22/20 22/23 23/9 28/5 28/23 29/1 29/2 29/19 33/11 33/16 40/22 41/11

underpinnings **[1]** 16/21

understand **[6]** 10/17 11/15 11/17 16/9 27/11 41/16

understanding **[2]** 40/14 40/17

Understood **[1]** 44/18

unfolding **[1]** 7/16

UNITED **[15]** 1/1 1/4 1/11 1/16 1/22 5/9 9/14 27/19 28/3 28/23 29/2 29/2 34/12 40/19 41/11

unknowingly **[1]** 25/13

unlawful **[3]** 22/14 22/16 23/9

unless **[1]** 16/7

unpublished **[2]** 25/3 25/4

unregistered **[2]** 25/9 26/18

untainted **[1]** 40/23

until **[1]** 15/16

up **[33]** 8/2 8/4 9/3 9/4 10/14 10/24 11/23 12/15 16/3 17/9 17/14 18/12 30/2 30/13 31/9 31/20 32/4 32/10 32/17 32/21 33/2 33/5 33/20 33/21 37/11 37/20 37/21 38/11 38/12 38/24 44/11 44/25 45/2

upstairs **[1]** 39/2

us **[9]** 9/6 9/9 9/16 11/10 12/5 13/4 19/2 37/9 37/15

usable **[1]** 7/21

USC **[1]** 22/15

use **[4]** 23/17 24/9 24/16 40/25

used **[1]** 24/5

useful **[2]** 7/10 9/18

uses **[1]** 25/1

using **[2]** 36/22 43/25

utility **[2]** 10/6 10/10

**V**

valueless **[1]** 27/6

values **[1]** 12/9

vehicle **[3]** 41/7 41/8 41/17

versus **[2]** 1/5 5/9

very **[5]** 15/21 35/1 40/20 41/12 42/2

victim **[2]** 30/2 30/9 35/21 38/5

victims **[9]** 30/20 30/21 31/8 31/22 32/7 32/9 37/12 37/17 39/20

view **[3]** 19/4 36/19 36/24

viewing **[1]** 35/12

violated **[2]** 20/5 25/14

violation **[2]** 18/11 40/24

visit **[2]** 17/8 39/4

volume **[4]** 32/21 32/24 44/10 44/11

voluminous **[3]** 9/16 9/23 9/24

voluntarily **[2]** 8/16 14/5

**W**

walked **[1]** 28/3

WALKER **[2]** 3/17 3/20

walking **[1]** 40/12

wallpaper **[2]** 12/10 13/2

want **[24]** 5/5 8/22 14/9 15/4 15/5 15/6 15/10 16/24 17/19 18/12 19/10 33/8 33/22 33/23 34/2 34/5 34/8 34/14 34/15 35/2 36/6 36/7 40/1 41/20

wanted **[2]** 24/16 31/25

wants **[2]** 20/13 37/15

warning **[1]** 17/20

warrant **[2]** 40/13 41/7

warrants **[5]** 41/24 41/24 42/4 42/7 42/10

was **[29]** 5/19 9/2 12/6 12/8 12/11 15/14 18/22 18/23 18/23 21/2 21/3 22/25 23/1 23/8 24/21 25/2 25/6 25/20 25/25 29/20 30/15 31/1 31/21 38/10 40/12 41/7 42/22 43/20 43/22

Washington **[1]** 1/23

**wasn't [1]** 29/17
**water [1]** 11/13
**way [5]** 6/23 7/13 24/14 38/18 41/13
**ways [4]** 18/16 28/8 34/4 35/12
**we [140]**
**we'll [2]** 12/7 43/15
**we're [5]** 13/23 16/2 27/5 43/17 43/17
**We've [1]** 9/24
**websites [1]** 30/18
**week [3]** 13/16 34/10 42/1
**weeks [1]** 38/5
**weigh [3]** 8/22 15/20 41/20
**well [10]** 8/14 13/6 16/15 23/7 24/8
29/12 29/15 30/21 31/7 38/16
**went [3]** 24/25 32/18 44/11
**were [23]** 18/18 19/19 25/2 25/9 27/12
30/22 31/7 31/8 31/9 31/18 32/14
32/14 32/16 32/24 37/22 38/1 41/3
41/7 41/25 42/1 42/4 42/5 42/25
**were illegally [1]** 42/5
**whack [1]** 9/12
**whack-amole [1]** 9/12
**what [63]**
**whatever [3]** 10/3 32/3 35/1
**when [14]** 5/7 11/1 11/6 12/4 16/18
28/20 33/19 33/25 34/9 34/11 34/15
42/21 43/14 44/12
**where [13]** 8/12 12/17 12/21 13/22
13/23 17/7 17/13 18/14 23/12 26/3
32/1 39/13 43/17
**whether [3]** 17/3 20/17 29/22
**which [30]** 7/25 9/12 9/20 11/17 15/16
18/6 18/16 19/15 19/15 19/16 19/24
20/9 21/17 21/20 21/24 22/18 23/1
24/9 25/8 26/12 26/22 27/2 27/3 30/5
31/7 32/13 34/4 39/17 41/13 44/2
**while [4]** 33/20 34/7 40/8 45/1
**who [18]** 5/12 5/23 6/1 6/19 16/15
20/13 21/2 26/10 26/20 26/21 27/5
27/5 30/10 32/7 32/20 33/8 41/16 44/6
**who's [1]** 44/10
**Whoever [1]** 30/14
**whole [4]** 12/22 28/2 36/14 45/1
**why [14]** 7/11 7/12 7/18 10/14 13/20
18/22 19/8 20/5 20/10 26/7 34/16 36/6
38/24 43/22
**will [30]** 5/21 8/9 9/21 12/2 12/21
13/25 16/13 17/8 17/9 17/10 25/7 26/1
26/4 27/13 32/22 34/10 34/11 35/17
37/5 38/15 39/3 39/4 39/5 39/11 39/22
41/2 42/16 43/14 44/12 44/20
**William [1]** 2/14
**Williams [10]** 2/20 6/4 8/24 8/25 10/11
13/22 14/8 15/8 15/10 22/5
**Williams's [3]** 14/10 33/17 44/3
**wire [2]** 22/24 25/5
**within [2]** 10/8 35/1
**without [6]** 5/5 10/7 18/7 19/14 33/17
42/13
**witnesses [1]** 34/13
**won't [1]** 11/4
**word [1]** 24/3
**words [1]** 26/19
**work [4]** 7/18 14/21 16/7 17/21
**worked [1]** 17/16
**worried [2]** 7/7 7/8

**worthless [1]** 27/6
**would [32]** 5/22 12/13 13/5 13/7 13/13
17/6 18/17 20/7 21/24 24/4 27/7 29/6
31/8 32/14 32/17 32/19 32/20 32/22
33/19 34/24 35/20 35/22 37/8 37/13
37/17 37/20 37/20 38/16 40/24 41/9
42/8 43/13
**Wouldn't [1]** 29/4
**Wow [1]** 27/17
**writing [1]** 11/10
**written [2]** 40/20 40/21

**Y**

**y'all [14]** 16/25 17/8 17/9 17/19 33/19
34/7 34/9 37/6 38/24 39/3 39/4 39/11
42/25 45/3
**Yeah [1]** 34/17
**year [2]** 10/2 19/12
**yes [10]** 11/20 12/12 18/2 18/4 25/16
35/20 36/4 40/11 43/2 43/9
**yesterday [2]** 10/12 14/14
**yet [3]** 9/7 11/5 44/7
**Yifei [2]** 1/22 5/15
**Yoakum [1]** 3/7
**York [1]** 1/23
**you [108]**
**You're [1]** 17/2
**your [49]**
**yours [1]** 17/25

**Z**

**Zadeh [3]** 3/13 3/13 6/15
**Zheng [2]** 1/22 5/15