**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | §<br>§<br>§ | |
| v. | §<br>§ | Case No. 22-cr-00612 |
| MITCHELL HENNESSEY, | §<br>§ | |
| *Defendant*. | §<br>§<br>§ | |

**MITCHELL HENNESSEY'S MOTION TO DISMISS DUE TO**
**VIOLATIONS OF THE SPEEDY TRIAL ACT AND SIXTH AMENDMENT**

Defendant Mitchell Hennessey respectfully moves the Court to dismiss the Superseding Indictment because the time allowed for a trial of Mr. Hennessey under The Speedy Trial Act has expired, and Mr. Hennessey's Sixth Amendment right to a speedy trial has been violated.

Mr. Hennessey was indicted and arrested over three and a half years ago, and despite his repeated requests, he has not yet been allowed to proceed to trial. Since his arrest, Mr. Hennessey has repeatedly asserted his right to a speedy trial. The Speedy Trial Act requires that a defendant be afforded a trial within 70 days, but 210 days have already passed since this case was returned to the district court. Even under the most generous interpretation of excludable delay, the time allowed to try Mr. Hennessey has expired. The Speedy Trial Act and the Sixth Amendment mandate dismissal, and justice requires dismissal with prejudice.

## I.      BACKGROUND

Mr. Hennessey was charged on December 7, 2022, with conspiracy to commit securities fraud (18 U.S.C. § 1349) and two counts of securities fraud (18 U.S.C. § 1348). ECF 1. On December 28, 2022, before the government had produced any discovery, four defendants—not including Mr. Hennessey—filed an unopposed motion requesting an open-ended continuance of

the trial date. ECF 72. On January 3, 2023, Judge Hanen granted the motion in part, certifying the case as complex and setting the case for trial on October 23, 2023. ECF 87, 88. Despite Mr. Hennessey's repeated requests, the government did not produce any discovery until January 5, 2023, nearly a month after indictment. ECF 128 at 2.

Mr. Hennessey filed a Motion for a Speedy Trial on January 27, 2023. ECF 124. The government opposed the motion (ECF 128), and the following week, on February 8, 2023, filed a superseding indictment, adding three counts of securities fraud against Mr. Hennessey but adding no additional factual allegations to support the new counts (ECF 134). On March 14, 2023, Judge Hanen denied Mr. Hennessey's motion for a speedy trial. ECF 209.

Despite the defendants' repeated requests, the government did not disclose the stocks allegedly at issue in the Superseding Indictment until March 31, 2023—more than *three months* after Mr. Hennessey was indicted—and only agreed to produce this information after defendants repeatedly requested this information and filed a motion for a bill of particulars. *See* ECF 196; *see also* ECF 324 at 1–2. On March 14, 2023, Judge Hanen expressed concern at the government's delayed disclosures: "[W]hat I really am worried about is that the defendants get everything they need in time for that information to be useful." ECF 659 at 7:8–10. The government's disclosure on March 31, 2023, more than *three months* after indictment, listed 402 purported "episodes"[1] but only provided the stock symbol, purported episode start date and end date, and which defendants were purportedly somehow involved in the episode. *See* Ex. A. The government did not include

---

[1] Several months later, the government significantly changed this list by extending a number of episodes, merging other episodes, and deleting some episodes. *Compare* Ex. A, Letter from Scott Armstrong, Assistant Chief, U.S. Department of Justice, Criminal Division, Fraud Section to Defense Counsel (Mar. 31, 2023) at 3–8 *and* Ex. B, Declaration of Maria E. Garibotti, Ph.D. (June 15, 2023) at Ex. 1.

**MITCHELL HENNESSEY'S MOTION TO DISMISS DUE TO**
**VIOLATIONS OF THE SPEEDY TRIAL ACT AND SIXTH AMENDMENT – PAGE 2**

any information whatsoever regarding what *any* defendant allegedly did that constituted securities fraud in the listed episodes. *See id.*

Neither the Superseding Indictment nor the government's March 31, 2023, letter identified any statements at all—much less any allegedly false statements—for 392 of the purported 402 episodes. *See id.;* ECF 134. Despite the defendants' repeated requests for the government to identify the allegedly false statements so that the defendants could prepare for trial, the government maintained that it would not disclose the allegedly false statements. *See* ECF 659 at 16:2–8 ("So we're not going to say, for example, on this ticker . . . [h]ere are all of the false statements for each one of the seven defendants. . . . [W]e are not going to do that unless we are ordered to.").

Judge Hanen ordered the government to disclose the allegedly false statements that formed the basis of the charges. ECF 252 at 57:8–60:19. The government stated that it would produce that information by June 5, 2023. *Id.*; *see also* ECF 240 at 2 (government stating that it "voluntarily agreed to provide defendants a full catalog of defendants' false and misleading social-media posts for those tickers and date ranges on June 5, 2023.").

The government failed to meet this June 5 deadline, so on June 6, 2023, the defendants filed a motion to compel. ECF 290. Judge Hanen then ordered the government to produce the allegedly false statements by June 15, 2023. ECF 302. The government finally disclosed the allegedly false statements underlying the charges against the defendants on June 15, 2023, more than *six months* after the government indicted and arrested Mr. Hennessey. *See* Ex. B at 7.

On July 10, 2023, Mr. Hennessey's co-defendants filed a motion to continue the trial date yet again, citing the government's delayed disclosures. ECF 323. Mr. Hennessey opposed any continuance of his trial date and urged the court to allow him to proceed to trial in October 2023. ECF 326. On August 25, 2023, Mr. Hennessey filed a motion to sever, arguing that he should be

severed from his co-defendants because they were not ready to proceed, he was, and proceeding to trial with unprepared codefendants would violate his Fifth Amendment right to due process. ECF 365. The Court denied Mr. Hennessey's motion to sever (ECF 414) and reset the trial date for April 1, 2024 (ECF 415).

The government's attempt to include in its case 402 separate trading "episodes"—involving different stocks, different time frames, and different defendants—created legal as well as the practical issues. ECF 663 at 74:2–8. In response to defendants' motion in limine to exclude "episodes" beyond those alleged in the Superseding Indictment (ECF 408), the government stated that it would limit its presentation at trial to "54  trial episodes" (ECF 424 at 1).

> At the September 7, 2023 hearing, the Court again sensibly raised the issue of presenting this trial in a concise fashion and urged the United States to trim its trial proof. The United States has acted in accordance with that guidance and has narrowed the initial list of 397 trading episodes down to 54 trial episodes, which it must be allowed to present if necessary.

ECF 424 at 1. Despite this promise, the government argued at the pretrial conference that it should be allowed to introduce evidence outside these "54 trial episodes." *See* ECF 657 at 76:20–110:15.

At the pretrial hearing on March 19 and 20, 2024, additional significant fundamental flaws in the government's core exhibits came to light. *See* ECF 656, 657. For example, the government sought to present evidence of defendants' allegedly false statements by excerpting select text from Twitter and Discord posts and then placing those excerpts in excel charts. *See* ECF 657 at 15:12–70:05. While seeking to present to the jury these inaccurate and misleading exhibits containing only excerpts, the government simultaneously strenuously objected to introduction of the actual Twitter and Discord posts. *See* ECF 657 at 62:7–70:19. After extensive argument, Judge Hanen did not admit any of these government exhibits, which made up the core of the government's case,

**MITCHELL HENNESSEY'S MOTION TO DISMISS DUE TO**
**<u>VIOLATIONS OF THE SPEEDY TRIAL ACT AND SIXTH AMENDMENT – PAGE 4</u>**

and instead, asked to skip to less objectionable exhibits in the hopes of making some progress in admitting exhibits. *See* ECF 657 at 75:1–76:19.

But the government's other exhibits fared no better. Despite the government's repeated assertions for months that it would only introduce evidence related to the "54 trial episodes," on the eve of trial, the government sought to introduce numerous exhibits related to "episodes" outside of the "54 trial episodes." *See* ECF 657 at 76:20–83:20. Defendants objected, and the government argued that these exhibits were necessary to prove the alleged scheme. *Id.* at 87:3–10. Judge Hanen explained, "But the problem is, I mean, we've had like three hearings where we're saying we're cutting it down to 54 stocks. And so defendants are prepared to address 54 stocks. And this one wasn't one of them." *Id.* at 87:16–19. After further argument, Judge Hanen stated, "I'm concerned whether we're ready for trial." *Id.* at 92:24–25. After further argument on the issue, Judge Hanen stated, "Needless to say, I'm a little frustrated where we are right now. Let's take a lunch break." *Id.* at 110:13–15. After lunch, Judge Hanen heard arguments on defendants' motion to dismiss based on *Ciminelli v. United States*, 598 U.S. 306 (2023). *See id.* at 110:20–149:7.

On March 20, 2024, at the conclusion of the pretrial hearing, Judge Hanen stated:

> All right, counselors. Let me tell you what I'm going to do here, since we made so much progress this morning. I'm going to do one of two things: I'm going to go back and draft an order dismissing the case; or I'm going to go back and draft an order on optional completeness and how we're going to handle all the social media posts and try to get it out this afternoon.

*Id.* at 149:8–16. Later that evening, the Court dismissed the Superseding Indictment without prejudice. ECF 628.

On April 4, 2024, the government appealed. ECF 643. On October 2, 2025, the United States Court of Appeals for the Fifth Circuit reversed the dismissal and on October 28, 2025, issued

**MITCHELL HENNESSEY'S MOTION TO DISMISS DUE TO**
**<u>VIOLATIONS OF THE SPEEDY TRIAL ACT AND SIXTH AMENDMENT – PAGE 5</u>**

mandates for all defendants except Mr. Matlock. ECF 714–19.  On November 10, 2025, the Fifth Circuit issued its mandate for Mr. Matlock. ECF 726.

On February 26, 2026, Judge Hanen recused himself. ECF 734. The case was reassigned to this Court. ECF 735. On May 8, 2026, the Court held a status conference at which Mr. Hennessey once again asserted his right to a speedy trial. The Court set the trial for May 3, 2027, which will be nearly *four and a half* years after Mr. Hennessey was indicted. ECF 750.

## II.    LEGAL STANDARD

The Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. "The only remedy for a violation of the right is dismissal of the indictment." *United States v. Molina-Solorio*, 577 F.3d 300, 304 (5th Cir. 2009). A court evaluates a claimed violation of the constitutional right to a speedy trial by application of a four-factor balancing test: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id.* (citing *Barker v. Wingo*, 407 U.S. 514 (1972)). The court balances the factors by weighing the first three factors against any prejudice suffered by the defendant due to the delay in prosecution. *Id.* When more than one year has passed between indictment and trial, the court undertakes a full *Barker* analysis, looking to the first three factors to decide whether prejudice will be presumed. *Id.* Where the first three *Barker* factors weigh heavily in favor of the defendant, prejudice is to be presumed. *United States v. Serna-Villarreal*, 352 F.3d 225, 231 (5th Cir. 2003). "[T]he presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett v. United States*, 505 U.S. 647, 652 (1992).

If an indictment is "dismissed by a trial court and reinstated following an appeal, the trial shall commence within seventy days from the date the action occasioning the trial becomes final[.]" 18 U.S.C. § 3161(d)(2). Where an indictment is dismissed and then reinstated after appeal,

**MITCHELL HENNESSEY'S MOTION TO DISMISS DUE TO**
**VIOLATIONS OF THE SPEEDY TRIAL ACT AND SIXTH AMENDMENT – PAGE 6**

the Speedy Trial clock begins once the appellate court has issued its mandate. *United States v. Mize*, 820 F.2d 118, 120 (5th Cir. 1987). If a trial does not occur within the required time limit, "the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2); *see also Mize*, 820 F.2d at 120–21 ("If any subsection of section 3161 is violated, section 3162 mandates that the charges be dismissed, leaving to the court's discretion the decision to dismiss with or without prejudice.").

Section 3161(h) lists periods of delay that shall be excluded in computing the time within which the trial must commence. This includes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" (§ 3161(h)(1)(D)) and "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court" (§ 3161(h)(1)(H)). The Fifth Circuit has explained how these provisions should be applied. *See United States v. Stephens*, 489 F.3d 647, 656 (5th Cir. 2007).

> If the motion does not require a hearing, Subsection [D][2] excludes the time needed for a "prompt disposition" of the motion, which, under Subsection [H], may be no more than thirty days from the date the motion is taken under advisement. Absent evidence to the contrary, "a motion should be considered under advisement for Speedy Trial Act purposes on the day the last paper concerning the motion at issue was filed with the court." "Thereafter, the fact that a motion is 'pending,' or is otherwise unresolved, does not toll the Speedy Trial clock."

*Id.* (quoting *United States v. Johnson*, 29 F.3d 940 (5th Cir. 1994)) (cleaned up).

---

[2] In 2008, after *Stephens* was decided, the Speedy Trial Act was amended to delete subparagraphs (B) and (C) and redesignate subparagraphs (D)–(J) as subparagraphs (B)–(H). *See* Judicial Administration and Technical Amendments Act of 2008, 110 P.L. 406, 122 Stat. 4291 (Oct. 13, 2008). Thus, Subsection F became Subsection D, and Subsection J became Subsection H. *See id.*

**MITCHELL HENNESSEY'S MOTION TO DISMISS DUE TO**
**VIOLATIONS OF THE SPEEDY TRIAL ACT AND SIXTH AMENDMENT – PAGE 7**

To compute time under the Speedy Trial Act, courts do not count the day of the event that triggers the period but do count the last day of the period. *United States v. Vingare-Hernandez*, 925 F.3d 761, 765–66 (5th Cir. 2019) (quoting FED. R. CRIM. P. 45(a)(1)(A) and (C)). But if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the next day that is not a Saturday, Sunday, or legal holiday. *Id.*

## III.   ARGUMENT

The Speedy Trial Act requires dismissal of the Superseding Indictment. Even considering all possible excludable delay, the statutory clock has expired. The speedy trial clock started upon the issuance of the Fifth Circuit mandates, the last of which was issued on November 10, 2025. Since the last mandate issued, the only possible bases for excludable delay are motions that have been filed. Even accounting for all possible excludable time based on those motions, the Speedy Trial Act and Mr. Hennessey's Sixth Amendment right to a speedy trial have been violated. Given the length of the delay, the substantial prejudice Mr. Hennessey has suffered, the impact of re-prosecution, and the facts leading to this Motion, the Superseding Indictment should be dismissed with prejudice.

**A. At the very latest, the speedy trial clock started when the Fifth Circuit issued its mandate on November 10, 2025.**

The Fifth Circuit issued the mandate for Mr. Hennessey on October 28, 2025 (ECF 719), and for the last co-defendant, Mr. Matlock,[3] on November 10, 2025 (ECF 726). Therefore, at the

---

[3] The Fifth Circuit has not squarely addressed whether, following appellate reinstatement of an indictment, the Speedy Trial clock runs from each defendant's individual appellate mandate or from the mandate issued for the last co-defendant. *Cf. United States v. Franklin*, 148 F.3d 451, 455 (5th Cir. 1998) ("the speedy trial clock does not begin to run in a multi-defendant prosecution until the last codefendant makes his initial appearance in court."). Mr. Hennessy does not concede that Mr. Matlock's mandate controls, but uses that date for the sake of argument because the two-week difference between the issuance of the Fifth Circuit's mandates does not impact the ultimate conclusion that the clock has expired.

**MITCHELL HENNESSEY'S MOTION TO DISMISS DUE TO**
**VIOLATIONS OF THE SPEEDY TRIAL ACT AND SIXTH AMENDMENT – PAGE 8**

very latest, the speedy trial clock began ticking on November 10, 2025. 18 U.S.C. 3161(d)(2). Since then, 210 days have passed—three times the 70 days allowed by the Speedy Trial Act.

### B.  Even accounting for all possible excludable delay, the speedy trial clock expired.

Since the last mandate issued on November 10, 2025, the only possible bases for excludable delay are the motions that have been filed. *See* 18 U.S.C. § 3161(h). Even excluding the maximum excludable time allowed for those motions, the speedy trial clock has expired.

On November 10, 2025, when the last mandate issued, there were two motions pending: (1) Mr. Knight's October 17, 2025, Unopposed Motion to Modify Conditions of Release (ECF 712), and (2) the government's October 31, 2025, Motion for Status Conference (ECF 722). Neither of these motions required a hearing, so the maximum excludable time for these motions was 30 days. *See* 18 U.S.C. § 3161(h)(1)(H). Even assuming arguendo that the excludable delay started on the day the last mandate issued, November 10, 2025, rather than the date the last paper related to the motion was filed, November 3, 2025, the maximum time the speedy trial clock could be tolled based on these motions was 30 days—until December 10, 2025.

But on November 25, 2025, before the 30-day period for the two pre-mandate motions expired, Mr. Deel's counsel filed a notice of appearance and motion to substitute counsel. ECF 728. This motion remained pending on December 10, 2025, the latest possible day that the 30-day exclusion ended for the pre-mandate motions, so the clock continued to toll until Mr. Deel's motion was granted on December 16, 2025. ECF 732.

On December 16, 2025, no other motion was pending that could continue to toll the speedy trial clock, so the clock started to run on December 17, 2025, and ran uninterrupted at least until March 5, 2026, when the government filed its Renewed Motion for Status Conference. ECF 736. Thus, 79 days passed on the speedy trial clock with no excludable delay.

In reality, neither the government's October 31, 2025, motion (ECF 722) nor its March 5, 2026, renewed motion (ECF 736) can provide a basis for excludable delay because both motions were filed in violation of the Local Rules for the Southern District of Texas and were therefore waived. *See* S.D. Tex. Cr. L.R. 12.1, 12.2. The government filed both motions without conferring with counsel for Mr. Hennessey and without including a certificate of conference as required by Local Criminal Rule 12.2.

"A pretrial motion . . . shall also be accompanied by . . . an averment that the movant has conferred with the respondent, but that an agreement cannot be reached on the disposition of the motion." S.D. Tex. Cr. L.R. 12.2. The government violated this rule because it did not confer with Mr. Hennessey nor did it include a certificate of conference in either of its motions. *See* ECF 722, 736. What is more, counsel for Mr. Hennessey filed a response on October 31, 2025, the same day the government filed its first faulty motion for a status conference, noting that the government had failed to confer with Mr. Hennessey's counsel prior to filing the motion. *See* ECF 723. Yet the government did not correct its October 31, 2025, motion. Instead, the government violated the Local Rules once again when it filed its March 5, 2026, motion without conferring with opposing counsel or including a certificate of conference. *See* ECF 736.

"Motions and responses that do not comply with these rules are waived." S.D. Tex. Cr. L.R. 12.1. Thus, the government waived both motions, and neither can provide a basis to toll the speedy trial clock.

On April 3, 2026, a now-former government attorney filed a motion to withdraw. ECF 740. Like the government's other motions, the motion to withdraw did not contain a certificate of conference and was therefore waived. *Id.; see also* S.D. Tex. Cr. L.R. 12.1, 12.2. The government violated the Local Rules yet again on May 28, 2026, when it filed a motion to modify conditions

of release (ECF 753). This pattern of conduct—especially in light of Mr. Hennessey pointing out the error on October 31, 2025—indicates that the government's continued and repetitive violations are a deliberate choice rather than simply an oversight.

Thus, the speedy trial clock ran uninterrupted from December 17, 2025, until May 6, 2026, when Mr. Matlock's attorney filed an unopposed motion to withdraw. ECF 746. During this period, 141 non-excludable days passed—double the amount allowed under the Speedy Trial Act.

Mr. Matlock's motion was granted the next day, May 7, 2026 (ECF 747), and the speedy trial clock started again on May 8, 2026, the date the Court held a status conference. The clock ran uninterrupted until May 26, 2026, when Mr. Rybarczyk filed an Opposed Motion to Travel. ECF 751. Thus, 18 days passed, bringing the total non-excludable days to 160.

Even if the government had properly filed its motions, those motions could not save the government from a Speedy Trial Act violation. The government filed its Renewed Motion for Status Conference on March 5, 2026. ECF 736. No response was filed, so even if the motion had been properly filed, the clock would have been tolled for 30 days, until April 4, 2026, a Saturday.

But the government filed a motion to withdraw on April 3, 2026. If that motion had been properly filed, that motion at best could have tolled the speedy trial clock for another 30 days, until May 3, 2026, a Sunday. Even if the Court were to suspend the Local Rules to provide the government the most generous concessions, the clock would have resumed on Monday, May 4 and run for two days until May 6, 2026, when Mr. Matlock's attorney filed an unopposed motion to withdraw. ECF 746. That would bring the total to 81 non-excludable days. Mr. Matlock's motion was granted the next day, May 7, 2026.  ECF 747. Thus, the speedy trial clock started again on May 8, 2026, the date the Court held a status conference, and ran uninterrupted for 18 days until May 26, 2026, when Mr. Rybarczyk filed an Opposed Motion to Travel. ECF 751. Even

affording the government the greatest leniency by treating its motions as though they were properly filed, 99 non-excludable days have passed since the Fifth Circuit issued the last mandate.

This is well beyond the 70 days allowed by the Speedy Trial Act, so the Superseding Indictment must be dismissed.

### C.  The Superseding Indictment should be dismissed with prejudice.

When considering whether to dismiss an indictment with or without prejudice, courts consider: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice. *United States v. Blackwell*, 12 F.3d 44, 48 (5th Cir. 1994). These factors all weigh in favor of dismissal with prejudice.

### i.       The seriousness of the offense.

While the government has touted this case as a $114 million securities fraud case, the government conceded that this amount is based on the defendants' overall trading in various stocks, and not the result of any alleged fraudulent activity. On March 14, 2023, the government stated that its expert witness "is not going to be offering an opinion such as, these are fraud proceeds, or anything like that." ECF 659 at 44:5–13. A few months later, on June 15, 2023, the government's witness explicitly disclaimed any causal connection between the alleged conduct and any "profit" calculation she would provide. Ex. B at 7.

A year later, at the final pretrial conference on March 20, 2024, the government again explained that it would not introduce any evidence that any purported profits resulted from the alleged fraud. ECF 657 at 20:12–21:10. Recognizing that the government had not—and could not—tie any purported profit to any alleged fraud, Judge Hanen precluded the government from introducing any "profit" calculations at trial. ECF 657 at 20:12–25:9. Thus, the government has not—because it cannot—tie any profit or loss to any alleged fraudulent conduct, meaning any

Sentencing Guideline calculation associated with the alleged conduct would suggest little to no jail time. *See* Sentencing Guidelines at § 2B1.1. This is a significant distinction from a typical securities fraud case and weighs in favor of dismissal with prejudice.

Further, even though the Fifth Circuit ultimately reversed, the fact that an experienced federal judge concluded that the government had not alleged a crime here is a strong indication that the allegations are not serious. *See* ECF 628.

### ii. The facts leading to dismissal.

The facts leading to dismissal weigh in favor of dismissal with prejudice. "Regarding the facts and circumstances leading to the dismissal, we look to whether the Government sought the resultant delays for ulterior purposes as well as whether the Government's failure to meet deadlines was repetitive, regular, and frequent with respect to this defendant." *United States v. Blevins*, 142 F.3d 223, 226 (5th Cir. 1998). "Delay attributable to the trial court, just as delay attributable to the government, weighs in favor of dismissal with prejudice." *United States v. Blevins*, 755 F.3d 312, 318 (5th Cir. 2014). Delay caused by a "neutral reason such as negligence or overcrowded courts . . . must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531.

Here, there is no question that Mr. Hennessey is not the reason for delay. Mr. Hennessey has consistently and repeatedly requested the earliest possible trial date. On the other hand, the government's "failure to meet deadlines was repetitive, regular, and frequent." *See Blevins*, 142 F.3d at 226. As detailed above, after indicting this case, the government failed to produce discovery for *a month* (*see* ECF 128 at 2), refused to disclose the stocks at issue for more than *three months* (*see* Ex. A), and only disclosed the alleged false statements at issue more than *six months* after indictment (*see* Ex. B). The government's repeated delays caused the trial date to be pushed back multiple times to April 1, 2024, a year and four months after Mr. Hennessey was indicted. The

government's delay was calculated and deliberate, and thus, should weigh heavily against the government. *See Doggett*, 505 U.S. at 656.

The government's delay has continued. Even after the last mandate issued on November 10, 2025, the government waited nearly four months to renew its motion for a status conference, and when it did so, it waived that motion by failing to comply with the Local Rules. *See* ECF 736.

The government still has not produced revised exhibits to address Judge Hanen's rulings at the pretrial conference. Nor has the government produced any additional discovery since the Superseding Indictment was dismissed.

These facts weigh strongly in favor of dismissal with prejudice. *See, e.g.*, *Doggett*, 505 U.S. at 656 ("[Defendant] would prevail if he could show that the Government had intentionally held back in its prosecution of him to gain some impermissible advantage at trial."); *Barker*, 407 U.S. at 531 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.").

### iii. The impact of reprosecution.

The impact of reprosecution also weighs in favor of dismissal with prejudice. This factor encompasses three concerns: (1) the defendant's right to a timely trial; (2) the deterrent effect of a prejudicial dismissal on the government's repeated violations of the speedy trial requirements; and (3) the public's interest in bringing the accused to trial. *See United States v. Mancia-Perez*, 331 F.3d 464, 469 (5th Cir. 2003).

First, Mr. Hennessey did not receive a timely trial. He has already been waiting over three and a half years to clear his name before a jury, and with the May 2027 trial setting, he will have to wait yet another year.

Second, dismissal with prejudice would result in a deterrent effect that would impress upon the government that it must respect a defendant's right to a speedy trial. *See Johnson*, 29 F.3d at

**MITCHELL HENNESSEY'S MOTION TO DISMISS DUE TO**
**<u>VIOLATIONS OF THE SPEEDY TRIAL ACT AND SIXTH AMENDMENT – PAGE 14</u>**

946 (noting that "dismissal with prejudice is more likely to cause the government and the courts diligently to comply with the Act's requirements").

The government's conduct since dismissal demonstrates that it is not taking Mr. Hennessey's right to a speedy trial seriously. The government has done nothing in the two years and two months since dismissal to prepare this case for trial. It has produced no discovery nor has it produced revised exhibits to address Judge Hanen's serious concerns. Thus, we are in the same place we were on March 20, 2024, when, after a day and a half of reviewing the government's exhibits and listening to the defendants' objections, Judge Hanen declared, "I'm concerned whether we're ready for trial." ECF 657 at 92:24–25. The government was not ready for trial then, and more than two years later, it still is not ready for trial. Thus, there is a serious risk that if the government is allowed to reindict Mr. Hennessey, he will be subject to several more years of delay given the government's persistent pattern of delay.

Third, it is not in the public's interest to allow the government to violate the Speedy Trial Act and then simply get a chance to start over by reindicting Mr. Hennessey after more than three and a half years have passed. The government is responsible for the delay. Allowing the government to reindict would deprive the Speedy Trial Act of any meaning. The Superseding Indictment, riddled with false factual allegations, has been hanging over Mr. Hennessey's head for more than three and a half years—precisely the type of harm the Speedy Trial Act was designed to prevent. Thus, it is not in the public's interest to allow the government to violate the Speedy Trial Act and then just reindict Mr. Hennessey and further prolong his prosecution.

### iv.  Mr. Hennessey has suffered substantial prejudice.

Dismissal with prejudice is appropriate given the prejudice Mr. Hennessey has suffered.

> [O]ne of the major purposes of the [speedy trial] provision is to guard against inordinate delay between public charge and trial, which, wholly aside from possible prejudice to a defense on the

**MITCHELL HENNESSEY'S MOTION TO DISMISS DUE TO**
**VIOLATIONS OF THE SPEEDY TRIAL ACT AND SIXTH AMENDMENT – PAGE 15**

> merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends."

*Barker*, 407 U.S. at 537 (quoting *United States* v. *Marion*, 404 U.S. 307, 320 (1971)).

This prolonged prosecution has restricted Mr. Hennessey's liberty. For more than a year, he was forced to wear an ankle monitor, he was prohibited from traveling outside New Jersey without advance permission, and he was prohibited from posting on social media about securities. ECF 186. In addition, for more than a year, Mr. Hennessey was not allowed to leave the country. ECF 659 at 34:3–6. The government now seeks to once again restrict Mr. Hennessey's liberty while he is forced to wait yet another year to go to trial. *See* ECF 753.

Mr. Hennessey is a young man in his twenties, and what should have been the foundational years of Mr. Hennessey's professional career have been spent under indictment and litigating this case. This case has severely disrupted his ability to gain and maintain employment. Further, the government's prolonged prosecution and piecemeal disclosures have drained Mr. Hennessey's financial resources. Mr. Hennessey's associations have been curtailed throughout the pendency of this case, and he and his family and friends have suffered significant anxiety. The government's allegations against Mr. Hennessey garnered national news coverage and produced unsubstantiated conclusions about Mr. Hennessey.[4] He has been forced to live for over three and a half years

---

[4] *See, e.g.*, Luke Barr, *Social Media Stock Influencers Accused of $114M 'Pump and Dump' Scheme*, ABC NEWS (Dec. 14, 2022) https://abcnews.go.com/Business/social-media-stock-influencers-accused-114m-pump-dump/story?id=95285011; Livia Albeck-Ripka, *'FinTwit' Influencers Face Charges in $100 Million Scheme*, NEW YORK TIMES (Dec. 14, 2022) https://www.nytimes.com/2022/12/14/business/sec-influencers-twitter-discord-fintwit.html; Jennifer Calfas, *DOJ, SEC Charge Eight Social-Media Influencers for Alleged Securities Fraud*, WALL STREET JOURNAL (Dec. 14, 2022) https://www.wsj.com/articles/sec-charges-eight-influencers-in-100-million-securities-fraud-11671031747.

**MITCHELL HENNESSEY'S MOTION TO DISMISS DUE TO**
**VIOLATIONS OF THE SPEEDY TRIAL ACT AND SIXTH AMENDMENT – PAGE 16**

"under a cloud of anxiety, suspicion, and often hostility." *See Barker*, 407 U.S. at 533.

The passage of time has impaired Mr. Hennessey's defense. Depletion of Mr. Hennessey's financial resources combined with the curtailment of his employment have impaired his ability to hire an expert witness to testify in his defense at trial. Further, potential witnesses' memories have certainly faded in the intervening three and a half years, so Mr. Hennessey's ability to call fact witnesses to support his defense has been impaired. The delay has afforded the government the advantage of continuing its investigation while simultaneously prejudicing Mr. Hennessey.

The circumstances surrounding the violation of Mr. Hennessey's right to a speedy trial weigh in favor of dismissing the Superseding Indictment with prejudice.

### D. The Sixth Amendment requires dismissal with prejudice.

The Sixth Amendment also requires dismissal with prejudice. All four factors courts consider when evaluating a Sixth Amendment claim weigh in favor dismissal: (1) "length of delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right," and (4) "prejudice to the defendant." *Molina-Solorio*, 577 F.3d at 304 (quoting *Barker*, 407 U.S. at 530).

First, the length of delay is already three and a half years (42 months), and trial is not set until May 2027, which will be nearly four and a half years (53 months) after indictment. This factor weighs heavily in favor of Mr. Hennessey because it is more than the 30 months required for this factor to strongly favor the defendant. *See, e.g.*, *Amos v. Thornton*, 646 F.3d 199, 206–07 (5th Cir. 2011) ("The bare minimum required to trigger a *Barker* analysis is one year. A delay must persist for at least eighteen months over and above that bare minimum for this factor to strongly favor the accused."); *Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th Cir. 2008) ("[G]iven that the delay was more than double the minimum necessary to trigger the *Barker* analysis, the state appeals court reasonably weighed this factor heavily in [the

defendant's] favor."); *United States v. McCoy*, 786 F. Supp. 2d 1216, 1227 (S.D. Tex. 2011) (finding presumptive prejudice when a three year delay was combined with the government's "carelessness and lack of diligence" and the defendant's prompt assertion of his rights).

Second, the cause for the delay weighs heavily against the government. The government's significant delays in producing discovery and disclosing the allegations that the defendants must defend against caused a substantial delay of a year and four months at the outset.

This pattern of delay has continued. While the government filed a motion for a status conference on October 31, 2025, it waived that motion by failing to comply with the Local Rules. Further, the government did nothing for nearly four months after the last mandate issued on November 10, 2025. When the government did finally renew its motion for a status conference on March 5, 2026, it waived that motion by again failing to comply with the Local Rules.

Further, the government has apparently done nothing in the intervening two years and two months since the March 2024 dismissal to prepare the case for trial. It has not corrected the issues Judge Hanen identified with the government's exhibits. Nor has the government produced any discovery. The government was not ready for trial in March 2024, and it is not ready now.

Third, Mr. Hennessey has consistently and vigorously asserted his right to a speedy trial for the last three and a half years, so this factor weighs heavily in his favor. *See Amos*, 646 F.3d at 208 (holding that a defendant's "diligent, non dilatory request for a speedy trial weighs strongly in his favor.") Mr. Hennessey filed a motion for a speedy trial in January 2023 (ECF 124), the month after he was arrested, and he has repeatedly requested that he be allowed to go to trial on the charges against him. Mr. Hennessey consistently requested the first possible trial date despite the government's excessive delays in producing discovery and disclosing the allegations. He opposed a continuance of his trial date (ECF 326) and filed a motion to sever so he could go to

trial even though his co-defendants could not be prepared for trial due the government's delays (ECF 365).

Fourth, as detailed above, Mr. Hennessey has suffered prejudice due to the delay. Because all three of the first three factors weigh heavily in Mr. Hennessey's favor, prejudice is presumed. *See Molina-Solorio*, 577 F.3d at 304. But even if prejudice is not presumed, the delay has actually prejudiced Mr. Hennessey. Mr. Hennessey's liberty has been restricted. His ability to gain employment has been impaired. His financial resources have been drained, his associations curtailed, and this lingering case has created anxiety in him, his family and his friends. *See Barker*, 407 U.S. at 537. The government's delay has caused Mr. Hennessey and his family to live for over three and a-half years "under a cloud of anxiety, suspicion, and often hostility." *Id.* at 533.

All of these factors demonstrate that Mr. Hennessey's Sixth Amendment right to a speedy trial has been violated, and the Superseding Indictment must be dismissed with prejudice.

## CONCLUSION

Mr. Hennessey respectfully requests that the Court dismiss the Superseding Indictment with prejudice.

Respectfully submitted,

**JACKSON WALKER LLP**

*/s/ Laura M. Kidd Cordova*
Laura M. Kidd Cordova
State Bar No. 24128031
lcordova@jw.com
1401 McKinney St, Suite 1900
Houston, Texas 77010
(713) 752-4449
(713) 752-4221 (Facsimile)

**ATTORNEY FOR DEFENDANT**
**MITCHELL HENNESSEY**

**CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with counsel for the government about the relief requested herein on June 5, 2026. The government is opposed to the requested relief.

*/s/ Laura M. Kidd Cordova*
Laura M. Kidd Cordova

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2026 a true and correct copy of the foregoing was served electronically on all persons via the Court's CM/ECF system.

*/s/ Laura M. Kidd Cordova*
Laura M. Kidd Cordova